UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH D. PETERSON,
Personal Representative of the Estate of
James C. Knipple (Dec.) et al.,

Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN, et al.

Defendants.

Case No. 10 CIV 4518 (BSJ)

**AFFIDAVIT OF ALI ASGHAR MASSOUMI**

**CHAFFETZ LINDSEY LLP**
1350 Avenue of the Americas, 8th Floor
New York, NY 10019-4702
Tel. (212) 257-6960
Fax (212) 257-6950
www.chaffetzlindsey.com

*Attorneys for Defendant Bank Markazi*





شماره ۱۵۵۴۱۲ سری ق
ردیف دفتر ثبت

محسن میرمحمدصادقی، مترجم رسمی قوه قضائیه، عضو جامعه مترجمان رسمی ایران،
تهران، ضلع شمال شرقی میدان انقلاب، شماره ۱۱۲۵، طبقه ۴
تلفن: ۶۶۹۵۱۶۰۱؛ ۶۶۹۵۱۶۰۲؛ ۶۶۴۹۹۸۹۶ ؛ دورنگار: ۶۶۹۵۱۶۰۲
Mohsen M. M. Sadeghi, Certified Official Translator,
Member of Iranian Association of Official Translators,
4th Floor, Nobovat Complex, 1125, Enghelab Square, Tehran, Iran,
Tel: 00 98 21 6649 98 96; 6695 16 01; Tel/Fax: 00 98 21 6695 16 02

***Official Translation***

*THE JUDICIARY*

*STATE ORGANIZATION FOR REGISTRATION OF DEEDS AND REAL ESTATES*

NOTARY PUBLIC NO.: 180, TEHRAN

***TYPE OF DEED: AFFIDAVIT***

*Registration Date: October 17, 2010* *Registration No.: 74936*
*Folio: 115, Page: 102* *Deed No.: 0214814 S/88*

On the date hereof, appeared before this notary public, **Mr. Ali Asghar Massoumi**, father's name: Esmaeil, ID card No. 123 issued by Tehran (Iran) Personal Status Registry, National Code: 004-634724-0, of 15 Sahel Alley, Dr. Shariati Avenue, Tehran 1948913713 Tehran, Iran, Tel: 009821 2284 69 44, and after attendance stated as follows:

"I, Ali Asghar Massoumi, , being duly sworn, declare under penalty of perjury pursuant to Iranian Civil Procedure Law, in particular articles 236,240 and other related articles, as follows:

1. I am the Head of Foreign Exchange Negotiable Securities Section at Bank Markazi Jomhouri Islamic Iran, the Central Bank of the Islamic Republic of Iran ("Bank Markazi" or ''Central Bank"). I am 51 years of age.
2. I submit this affidavit in support of Bank Markazi's (i) motion to intervene in this matter for the limited purpose set out therein and (ii) motion to vacate restraining notices issued in this proceeding and served upon Citibank N.A. ("Citibank'')and Clearstream Banking S.A.("Clearstream''). The restraining notices relate to twenty debt securities worth approximately US$1.75 billion ("Restrained Securities") that are the sole property of Bank Markazi and held for its own account.
3. The statements in this affidavit are based upon my personal knowledge and upon information that I obtained from records kept in the ordinary course of Bank Markazi's business and within the scope of my duties at the bank. The statements in this affidavit are true and correct.
4. I have held my position as the Head of Foreign Exchange Negotiable Securities Section at Bank Markazi since September 1997. Before September 1997, I held several other positions at the bank from when I joined in May 1989, including positions in the Foreign Purchases Section of the Supply Department. I also held positions in the Oil Receipts Section, Research Unit, and the Foreign Exchange Section at the International Department.
5. In my position as the Head of Foreign Exchange Negotiable Securities, I have dealt with nearly every bond issue facing the bank, including Eurodollar bond issues, since 1997. Nevertheless, my engagement in the foreign bond transactions goes back to 1993, i.e. a couple of years before Clearstream opened a custody account for the Central Bank. I am also aware of the bank's detailed discussions with Clearstream and other banks the occurred while I worked at the bank but before taking my current position. I was personally involved in negotiations with Clearstream and Unione delle Banche Arabe ed Europee ("UBAE") with respect to the issues in this proceeding during the period between September 2007 and February 2008. Based on personal Knowledge and the information that I have learned from records kept in the ordinary course of the bank's business, I am able to testify about the matters in this affidavit.

**The Restrained Securities are Bank Markazi's Exclusive Property**

6. The Restrained Securities are the following, identified by their International Security Identification Numbers("ISIN"):






شماره ۱۵۵۴۱۳ سری ق
ردیف دفتر ثبت

جمهوری اسلامی ایران
قوه قضائیه _ اداره مترجمین رسمی

Mohsen M. M. Sadeghi, Certified Official Translator,
Member of Iranian Association of Official Translators,
4th Floor, Nobovat Complex, 1125, Enghelab Square, Tehran, Iran,

7. Bank Markazi is the sole beneficial owner of the Restrained Securities.

**Origin of the Funds Used to Acquire the Restrained Securities**

8. The Restrained Securities were all purchased with funds generated by the sale of Iranian light and heavy crude oil. The revenue was collected from National Iranian Oil Company (NIOC) controlled by Iranian Ministry of Petroleum.
9. Sale of crude oil, regarded as national wealth, is the main source of foreign exchange in Iran. Export of oil is handled by NIOC, which signs various contracts with oil purchasers throughout the world. Under the payment terms of such contracts, NIOC instructs oil purchasers to remit oil export proceeds in different currencies to foreign currency accounts of Bank Markazi held with various correspondent banks around the globe.
10. Once oil export proceeds are credited to Bank Markazi's foreign currency accounts, Bank Markazi in turn credits Iranian Government Treasury accounts maintained in its books with the local currency counter-value. From this point on, Bank Markazi effectively becomes the sole beneficial owner of such foreign currency amounts. A major portion of such currencies are in turn sold to the commercial banks in the Iranian foreign exchange interbank market as part of Bank Markazi's daily operations to satisfy foreign currency needs of the market, and to stabilize the exchange rate under the managed float exchange rate regime of Iran.
11. The surplus foreign exchange, representing the difference between what Bank Markazi has purchased from the Government and what has been sold by Bank Markazi in the Iranian foreign exchange interbank market, constitutes reserves of Bank Markazi, which will be invested according to investment criteria approved by Bank Markazi's top management. Bank Markazi, like many other central banks in the region and elsewhere, invests its reserves in different currencies and instruments, namely, gold, fixed-term bank deposits, and fixed-income debt instruments. The Restrained Securities are examples of the type of bonds in which Bank Markazi invests part of its reserves. Such investments are not linked to any specific project and simply form part of the total reserves used to instill market confidence, and promote central bank's primary objective of price stability.

**The Bank's Exercise of its Discretion to Purchase Securities on its own Account**

12. Pursuant to Iranian Law, as the Central Bank of Iran, Bank Markazi is responsible for managing the Republic's foreign exchange reserves. It therefore has experience with placing foreign denominated

CERTIFIED OFFICIAL TRANSLATOR MOHSEN M.M. SADEGHI



funds in accounts in various foreign financial institutions. Bank Markazi does not make any investments in the United States.

13. In order to maintain the value of its reserves, the Bond Section of the bank has only invested in bonds issued by supra-nationals and top-rated sovereigns or explicitly guaranteed by such sovereigns.
14. Bank Markazi also restricted its investments in its bond portfolio to bond offerings of at least USD1 billion or its equivalent in other currencies and limited its investment to more than 10% of any one offering. The bank felt that investment in the larger offerings by up to 10% of each individual bond would be more prudent in terms of liquidity risk.

**Clearstream's Dominant Market Role**

15. Clearstream Banking S.A. ("Clerstream"), a licensed European bank, Specializes in custody and settlement operations. Its creation was accomplished in July 2002 through the merger of Cedel International and Deutsche Borse. Clearstream operates from and is based in Luxembourg.
16. Clearstream's main role in the global financial market is to act as a bank for other banks in that it offers settlement and custody operations for transactions between banks. Clearstream records transactions between the accounts of different banks, and uses that information to determine their relative financial positions with regard to each other. For example, Bank A can order a transaction between its own account and Bank B's account by merely transmitting an order to Clerstream to debit/credit its own account and Bank B's account. This general system is in use between banks around the world. Other major players in this market are Euroclear Brussels. And Depository Trust Company (DTC), which operates out of New York.
17. Clerarstream and Euroclear dominate the management, custody and settlement of certain bonds including the "Eurodollar bonds", which are USD denominated debt instruments issued by debtors who have no seat in US. According to the U.S. Federal Reserve, about two-thirds of U.S. currency was held abroad as Eurodollars by the 1990s.

**Bank Markazi's Dealings with Clearstream**

18. Before opening the custody account with Clearstream, Bank Markazi purchased bonds and put those bonds in accounts at Clearstream (or Euroclear), indirectly through the intermediation of European banks. Bank Markazi purchased bonds because the bank had to diversify its investment in different instruments rather than limit itself to primarily short-term money market instruments. Investment in the credit risk-free instruments like European treasury bonds is what many other central banks do as part of their reserve management. Since the above main custodians had not initially agreed to open a custody account for Bank Markazi, and pending completion of formalities, Bank Markazi was obliged to hold its bond portfolio in the way described earlier in this paragraph.
19. In December 1994, Clearstream allowed Bank Markazi to have accounts directly with Clearstream without the need to have another bank to purchase and place the securities with Clearstream on Bank Markazi's behalf. In this way, Bank Markazi started to benefit from efficient services of Clearstream not readily available by other European banks. Efficient services would cover access to the pre-settlement information as well provision of risk-free bond derivatives transactions like bond lending and borrowing Clearstream could provide for Bank Markazi.
20. The following year, however, the U.S. enacted new sanctions in an attempt to restrict Iranian access to U.S. dollar markets. The relevant executive order provided, among other things, that Iranian banks could not have direct dealings with U.S. banks. Bank Markazi and others successfully avoided the most harmful portion of these new sanctions through the use of so-called "U-turn" transactions. The U-turn transaction exemption allowed U.S. banks to indirectly process transactions involving Iran or the Iranian Government if they began and ended with a non-Iranian bank and only passed through the U.S. financial system on their way between the two offshore non-Iranian financial institutions.

CERTIFIED OFFICIAL TRANSLATOR
MOHSEN M.M. SADEGHI

شماره ۱۵۵٤۱۵ سری ق

ردیف دفتر ثبت

جمهوری اسلامی ایران

قوه قضائیه - اداره مترجمین رسمی

محسن میرمحمدصادقی، مترجم رسمی قوه قضائیه، عضو جامعه مترجمان رسمی ایران،
تهران، ضلع شمال شرقی میدان انقلاب، شماره ۱۱۲۵، طبقه ٤
تلفن: ۶۶۹۵۱۶۰۱؛ ۶۶۹۵۱۶۰۲؛ ۶۶٤۹۹۸۹۶؛ دورنگار: ۶۶۹۵۱۶۰۲

Mohsen M. M. Sadeghi, Certified Official Translator,
Member of Iranian Association of Official Translators,
4th Floor, Nobovat Complex, 1125, Enghelab Square, Tehran, Iran,
Tel: 00 98 21 6649 98 96; 6695 16 01; Tel/Fax: 00 98 21 6695 16 02

21. These U-turn transactions allowed Bank Markazi to continue to conduct business directly with Clearstream and have indirect access to dollar services. The legality of these transactions did not change until November 2008, when OFAC abolished the U-turn exemption.
22. However, as early as late 2007, well before the November 2008 change in the U.S. regulations, Clearstream informed Bank Markazi that it was being pressured by OFAC not to do business of any kind with Bank Markazi. As a result of that pressure, Bank Markazi had a very short period of time in the first months of 2008 to shift the Restrained Securities away from Clearstream and to another custodial agent.

**The Restrained Securities were Deposited by Bank Markazi with a Custodian Bank Based in Italy**

23. On January 17, 2008, Bank Markazi contacted a bank based in Italy, Unione delle Banche Arabe ed Europee("UBAE"), in order to open an account for the primary purpose of investing and holding in custody government, government guaranteed and supranational bonds issued in US Dollars ("USD"), Euros ("EUR"), British Pounds ("GBP"), Swiss Francs ("CHF"), Japanese Yen ("JPY"), and Canadian Dollars ("CAD").
24. On or about January 23, 2008, UBAE advised Bank Markazi it had opened the following account in Bank Markazi's name:(i) EUR account (number 8039000 98); (ii) USD account ( number 8039000 91); (iii) JPY account (number 8039000 71); (iv) CAD account (number 8039000 12); (v) CHF account (number 8039000 3); (vi) GBP account (number 8039000 2) as well as (vii) a custody account (number 1000006)(the "Account").
25. By letter dated February 19, 2008, UBAE wrote to Bank Markazi and confirmed that (i) UBAE had opened in their books a custody account number 1000006 where all bond-related activities would be effected; (ii) UBAE had a corresponding account with Clearstream; and (iii) Bank Markazi's custody account number 1000006 would be subject to an additional margin over the tariffs and fees applied by Clearstream to its customers.
26. In February 2008, in several tranches, Bank Markazi transferred the would-be Restrained Securities from its custody account 80726 with Clearstream to account 13061 UBAE had opened with Clearstream. UBAE in turn credited Bank Markazi's custody account 1000006 held with UBAE with the transferred bonds.
27. At the time of the transfer to UBAE, I did not know of the *Peterson* Judgment. In addition, I do not believe anyone else in my bond group knew of the *Peterson* judgment and certainly did not know that any judgment might have an impact on these securities. My bond team had only four members and we worked together closely every business day. This topic was never raised in my presence at the time we were transferring the securities to UBAE and I believe that it would have been impossible for the others to have considered it without my becoming aware of it. I understand that the *Peterson* plaintiffs have claimed that we moved the securities to avoid the judgment and in doing so committed fraud. This simply is not true as it was only in June 2008 that Bank Markazi was advised by UBAE that the Restrained Securities had been frozen pursuant to an order of the New York federal court.
28. I also wish to add that both Clearstream and UBAE are located outside the United States and therefore under either scenario, the custodian of the securities was not located in the United States.

**Use of the Income Generated by the Restrained Securities**

29. The income generated by the Restrained Securities, whether before or after the securities were restrained, has been part of the total reserves of Bank Markazi in the same way the income from other bonds and bank deposits enhance the total size of Bank Markazi's reserves. Bank Markazi maintains sufficient reserves at all times and employs its reserves solely for central banking purposes. These include proper conduct of monetary policy with a view to promoting national economic goals.
30. Today, no party other than Bank Markazi has a legitimate interest in the Restrained Securities or in the assets in the Account.

CERTIFIED OFFICIAL TRANSLATOR MOHSEN M.M. SADEGHI

مترجم رسمی قوه قضائیه

شماره پروانه: ۶۱۵۸۰



شماره ۱۵۴۰۲۷ سری ق
ردیف دفتر ثبت

جمهوری اسلامی ایران
قوه قضائیه _ اداره مترجمین رسمی

Mohsen M. M. Sadeghi, Certified Official Translator,
Member of Iranian Association of Official Translators,
4th Floor, Nobovat Complex, 1125, Enghelab Square, Tehran, Iran.
Tel: 00 98 21 6649 98 96; 6695 16 01; Tel/Fax: 00 98 21 6695 16 02

I swear under penalty of perjury under Iranian Civil Procedure Law, in particular articles 236, 240 and other related articles, that the foregoing is true and correct."

Ali Asghar Massoumi (signed.)

Deed Serial Nos.: 0214813- 0214840; 0214819- 0214820, 0214825- 0214826; 0214829- 0214830, Series S/88

Registration Fee in the amount of 5,000 Rials, Writing Fee, and Papers price in the amount of 381,000 Rials, and VAT in the amount of 450 Rials were received; and Writing Fee Receipt No. 667536 was issued and submitted.

Date: October 17, 2010

Having established true identities of the parties, the whole matter was done before me.

Notary Public No. 180, Tehran (signed and sealed.)

*This is a true translation from the original text in Persian language. December 20, 2010*

Affidavit of **Mr. Ali Asghar Massoumi**

CERTIFIED OFFICIAL TRANSLATOR
MOHSEN M.M. SADEGHI

Department of official Translators Affairs of the Judiciary of the Islamic Republic of Iran
Only the authenticity of the seal and signature of the Official Translator is certified. This certification does not include confirmation of the accuracy of the translation and the authenticity of the translated document. Department of Official Translators' Affairs of the Judiciary of the Islamic Republic of Iran

For Charlotte Lindsey
New York

EMBASSY OF SWITZERLAND
U.S. INTERESTS SECTION

Seen for authentication of the seal of the Iranian Ministry of Foreign Affairs and the signature of Amirhamzeh Rezaei Farahabad government official of the Iranian Ministry of Foreign Affairs

This authentication concerns only the seal and the signature and not the contents of the document.

CHF 4.– = IRR 440'500.– / A 1 11 / 1-1 GVO

Tehran, January 24, 2011

For the Ambassador of Switzerland

Hans-Ulrich Glauser
Attache

ISLAMIC REPUBLIC OF IRAN
MINISTRY OF FOREIGN AFFAIRS
AUTHENTICATION DEPARTMENT
The authenticity of the seal & signature marked (X) is certified without any consideration to the contents.
3 JAN 2011
029914

EMBASSY OF SWITZERLAND U.S. INTERESTS SECTION TEHRAN

این سند در صفحه ... دفتر جلد ۱۱۵ ... سر دفتر

تحت شماره ... دفتر اسناد رسمی ... شماره ...

تاریخ ... حوزه ثبتی ... ثبت شده است.

این برگه فقط اختصاص به مصرف دردفتر اسنادرسمی ۱۸۰ تهران ... ریال و بدون مهر برجسته دفتر خانه مذکور فاقد هرگونه اعتبار است.

۰۲۱۴۸۱۴

کد(۱۹)... (۱-۸۴) ت

سازمان ثبت اسناد و املاک کشور

برگ معاملات یک برگی

نوع سند ...

وجوهیکه طبق مقررات برای تنظیم این سند دریافت شده بشرح زیر است

درآمد حق الثبت ... ریال

حق التحریر ... ریال

بهای اوراق و قبوض اقساطی ... ریال

... ریال

... ریال

جمع کل ... ریال

① محل امضای دفتریار و مهر دفتر خانه

دفتر اسناد رسمی شماره ۱۸۰ حوزه ثبتی تهران

تذکر : تبصره ۳ ماده ۳۴ قانون اصلاح قانون ثبت ـ در کلیه اسناد رسمی اقامتگاه متعاملین بطور وضوح در سند قید شود.

اقامتگاه متعاملین همان است که در سند قید شده و مادام که تغییر اقامتگاه خود را قبل از صدور اجرائیه بدفترخانه و قبل از ابلاغ به اجرا با نشانی صحیح و ذکر شماره پلاک محل اقامت اعم از خانه و مهمانخانه و غیره که بتوان اجرائیه را به آنجا ابلاغ کرد اطلاع ندهند کلیه برگها و اخطاریههای اجرائی بمحلی که در سند قید شده ابلاغ میشود و متعهد نمی تواند بعذر عدم اطلاع متعذر گردد.

دفاتر اسناد رسمی مکلفند پس از صدور اجرائیه مراتب را به آخرین نشانی متعهد از طریق پست سفارشی باو اطلاع دهند و برگ اجرائیهرا به ضمیمه قبض پست سفارشی جهت ابلاغ اجرائیه و عملیات اجرائی به ثبت محل ارسال دارند.

هرگاه محل اقامت متعهد در سند قید نشده و یا بجهات دیگر احراز محل اقامت میسر نباشد ثبت محل موضوع اجرائیه را بطور اختصار یکنوبت در یکی از جراید کثیرالانتشار محل یا نزدیکتر بمحل آگهی خواهد نمود.

این سند در صفحه ـــ دفتر جلد ـــ ثبت دفتر
تحت شماره ـــ دفتر اسناد رسمی ـــ شماره ـــ
حوزه ثبت ـــ ثبت شده است

این برگه فقط برای مصرف در دفتر اسناد رسمی ...
۲۰۰۰ ریال
و بدون مهر برجسته دفترخانه مذکور فاقد هرگونه اعتبار است

AAC ۰۲۱۳۸۲۰

کد(۹)اختصاصی(۸۳-۱)ت

محل امضای دفتریار و مهر دفترخانه

قوه قضائیه
سازمان ثبت اسناد و املاک کشور
برگ معاملات یک برگی

نوع سند ـــ

دفتر اسناد رسمی شماره ۱۸۰ حوزه ثبتی ـــ

وجوهیکه طبق مقررات برای تنظیم این سند دریافت شده بشرح زیر است

| | |
|---|---|
| درآمد حق الثبت | ریال |
| حق التحریر | ریال |
| بهای اوراق و نرخ السلطنی | ریال |
| | ریال |
| | ریال |

جمع کل ـــ ریال

Depository Trust Company (DTC)

تذکر : تبصره ۳ ماده ۲۳ قانون اصلاح قانون ثبت - در کلیه اسناد رسمی بایستی اقامتگاه متعاملین بطور وضوح در سند قید شود.
اقامتگاه متعاملین همان است که در سند قید شده و مادام که تغییر اقامتگاه خود را قبل از صدور اجرائیه بدفترخانه و قبل از ابلاغ به اجرا با نشانی صحیح و ذکر شماره پلاک محل اقامت اعلام ... و غیره که بتوان اجرائیه را به آنجا ابلاغ کرد اطلاع ندهند کلیه برگها و اخطاریه‌های اجرائی بمحلی که در سند قید شده ابلاغ میشود و متعهد نمی‌تواند بعذر عدم اطلاع متعذر گردد.
دفاتر اسناد رسمی مکلفند پس از صدور اجرائیه مراتب را به آخرین نشانی متعهد از طریق پست سفارشی بتوسط اطلاع ... و برگ اجرائیه را به ضمیمه قبض پست سفارشی جهت ابلاغ اجرائیه و عملیات اجرائی به ثبت محل ارسال دارند
هرگاه محل اقامت متعهد در سند قید نشده و یا بجهات دیگر احراز محل اقامت میسر نباشد ثبت محل موضوع اجرائیه را بطور اختصار یکنوبت در یکی از جراید کثیرالانتشار محل یا نزدیکتر بمحل آگهی خواهد نمود

این سند در صفحه ــــ دفتر جلد ــــ سر دفتر

تحت شماره ــــ دفتر اسناد رسمی ــــ شماره ــــ

تاریخ ــــ

حوزه ثبتی ــــ ثبت شده است

این برگه فقط اختصاص به مصرف در دفتر اسناد رسمی ۱۸۰ تهران ... و بدون مهر برجسته دفترخانه ... فاقد هرگونه اعتبار است

کد(۱۹)اختصاصی(۱-۸۱)ات

محل امضای دفتریار و مهر دفتر خانه

سازمان ثبت اسناد و املاک کشور

برگ معاملات یک برگی

نوع سند

دفتر اسناد رسمی شماره ۱۸۰ حوزه ثبتی

وجوهیکه طبق مقررات برای تنظیم این سند دریافت شده بشرح زیر است

درآمد حق الثبت ــــ ریال

حق التحریر ــــ ریال

بهای اوراق و قبوض اقساطی ــــ ریال

ــــ ریال

ــــ ریال

جمع کل ــــ ریال

... OFAC ...

... Unione delle Banche Arabe ed Europee (UBAE) ...

تذکر : تبصره ۴ ماده ۳۴ قانون اصلاح قانون ثبت ـ در کلیه اسناد رسمی بایستی اقامتگاه متعاملین بطور وضوح درسند قید شود.

اقامتگاه متعاملین همانی است که در سند قید شده و مادام که تغییر اقامتگاه خود را قبل از صدور اجرائیه بدفترخانه و قبل از ابلاغ به اجرا با نشانی صحیح و ذکر شماره پلاک محل اقامت اعم از خانه و مهمانخانه و غیره که بتوان اجرائیه را به آنجا ابلاغ کرد اطلاع ندهند کلیه برگها و اخطاریه های اجرائی بمحلی که در سند قید شده، ابلاغ میشود و متعهد نمی تواند بعذر عدم اطلاع متعذر گردد.

دفاتر اسناد رسمی مکلفند پس از صدور اجرائیه مراتب را به آخرین نشانی متعهد از طریق پست سفارشی یاو اطلاع دهند و برگ اجرائیه را به ضمیمه قبض پست سفارشی جهت ابلاغ اجرائیه و عملیات اجرائی به ثبت محل ارسال دارند هرگاه محل اقامت متعهد در سند قید نشده و یا بجهات دیگر احراز محل اقامت میسر نباشد ثبت محل مرقوم اجرائیه را بطور اختصار یکنوبت در یکی از جراید کثیرالانتشار محل یا نزدیکتر بمحل آگهی خواهد شود.

این سند در صفحه [illegible] دفتر جلد [illegible] سر دفتر
تحت شماره [illegible] دفتر اسناد رسمی شماره [illegible]
حوزه ثبتی [illegible] ثبت شده است.

این برگه فقط اختصاص به مصرف در دفتر اسناد رسمی ۱۸۰ تهران [illegible] و بدون مهر برجسته دفتر [illegible] فاقد هرگونه اعتبار است.

۲۱۳۸۳۰ ۸۸/ن

کد(۱۹)اختصاصی(۱-۸۴)ت

(۴) محل امضای دفتریار و مهر دفترخانه

توضیحات
سازمان ثبت اسناد و املاک کشور
## برگ معاملات یک برگی

نوع سند [illegible]

دفتر اسناد رسمی شماره ۱۸۰ حوزه ثبتی [illegible]

وجوهیکه طبق مقررات برای تنظیم این سند دریافت شده بشرح زیر است

درصد حق الثبت [illegible] ریال
حق التحریر [illegible] ریال
بهای اوراق و قبوض اقساطی [illegible] ریال
[illegible] ریال
ریال

جمع کل ______ ریال

۱- [illegible] ۲- نام و نام خانوادگی [illegible] ۳- امضاء و مهر سردفتر [illegible]

[illegible] UBAE
[illegible]
[illegible]
[illegible]
UBAE [illegible] UBAE
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible] UBAE [illegible]
[illegible]

[illegible] ۲۸۱۰۰
[illegible] ۶۶۷۵۲۷ [illegible]

[illegible] ۱۳۸۹ [illegible]

تذکر : تبصرهٔ ۲ مادهٔ ۳۴ قانون اصلاح قانون ثبت ـ در کلیه اسناد رسمی بایستی اقامتگاه متعاملین بطور وضوح درسند قید شود.
اقامتگاه متعاملین همان است که در سند قید شده و مادام که تغییر اقامتگاه خود را قبل از صدور اجرائیه بدفترخانه و قبل از ابلاغ به اجرا با نشانی صحیح و ذکر شمارهٔ پلاک محل اقامت اعم از خانه و مهمانخانه و غیره که بتوان اجرائیه را به آنجا ابلاغ کرد اطلاع ندهند کلیه برگها و اخطاریه‌های اجرائی بمحلی که در سند قید شده ابلاغ میشود و متعهد نمی‌تواند بعذر عدم اطلاع متعذر گردد.
دفاتر اسناد رسمی مکلفند پس از صدور اجرائیه مراتب را به آخرین نشانی متعهد از طریق پست سفارشی باز اطلاع دهند و برگ اجرائیه را به ضمیمه قبض پست سفارشی جهت ابلاغ اجرائیه و عملیات اجرائی به ثبت محل ارسال دارند.
هرگاه محل اقامت متعهد در سند قید نشده و یا بجهات دیگر احراز محل اقامت میسر نباشد ثبت محل موضوع اجرائیه را بطور اختصار یکنوبت در یکی از جراید کثیرالانتشار محل یا نزدیکتر محل آگهی خواهد نمود.