**OFFERING CIRCULAR**

# U.S.$3,000,000,000



# United Kingdom

## 2.25 per cent. Notes due 2008

The issue price of the Notes is 99.941 per cent. of their principal amount.

The Notes will mature on 8 July 2008 and are not redeemable prior thereto.

Interest on the Notes, which will be payable annually in arrear on 8 July in each year, beginning on 8 July 2004, will accrue at the rate of 2.25 per cent. per annum as described under "*Terms and Conditions of the Notes – Interest*".

Application has been made to the Financial Services Authority in its capacity as competent authority under the Financial Services and Markets Act 2000 (the "**UK Listing Authority**") for the Notes to be admitted to the Official List of the UK Listing Authority (the "**Official List**") and to the London Stock Exchange plc (the "**London Stock Exchange**") for such Notes to be admitted on the London Stock Exchange's market for listed securities.

## *Joint Lead Managers*

| | |
|---|---|
| **Citigroup** | **Deutsche Bank** |
| **Goldman Sachs International** | **Morgan Stanley** |

### *Senior Co-Managers*

| | | |
|---|---|---|
| **Barclays Capital** | **BNP PARIBAS** | **HSBC** |

### *Co-Managers*

| | | |
|---|---|---|
| **ABN AMRO** | **Credit Suisse First Boston** | **JPMorgan** |
| **Lehman Brothers** | **Merrill Lynch & Co.** | **UBS Investment Bank** |

The date of this Offering Circular is 4 July 2003.

No person is authorised to give any information or to make any representation not contained in this Offering Circular – and any information or representation not contained in this Offering Circular must not be relied upon as having been authorised by or on behalf of The Lords Commissioners of Her Majesty's Treasury ("**H.M. Treasury**") on behalf of the Government of the United Kingdom of Great Britain and Northern Ireland or the financial institutions named under "Subscription and Sale" (the "**Managers**"). The delivery of this Offering Circular at any time does not imply that the information contained herein is correct at any time subsequent to its date.

This Offering Circular includes particulars given in compliance with the listing rules made under Section 74 of the Financial Services and Markets Act 2000 by the UK Listing Authority for the purpose of giving information with regard to the issue by H.M. Treasury of the Notes.

This Offering Circular does not constitute an offer of, or an invitation by or on behalf of H.M. Treasury or the Managers to subscribe for or purchase, any of the Notes.

The Notes have not been and will not be registered under the U.S. Securities Act of 1933, as amended (the "**Securities Act**"), or with any securities regulatory authority of any State or other jurisdiction of the United States and, subject to certain exceptions, may not be offered or sold within the United States.

The Notes are being offered and sold only outside the United States to non-U.S. Persons in reliance on Regulation S under the Securities Act ("**Regulation S**") and within the United States to "qualified institutional buyers" in reliance on Rule 144A under the Securities Act ("**Rule 144A**"). Potential investors are hereby notified that sellers of the Notes may be relying on the exemption from the provisions of Section 5 of the Securities Act provided by Rule 144A. For a description of these and certain further restrictions on offers, sales and transfers of the Notes, and the distribution of this Offering Circular, see "*Transfer Restrictions*" and "*Subscription and Sale*'

The Notes have not been approved or disapproved by the U.S. Securities and Exchange Commission, any State securities commission in the United States or any other U.S. regulatory authority, nor have any of the foregoing authorities passed upon or endorsed the merits of the offering of the Notes or the accuracy or adequacy of this Offering Circular. Any representation to the contrary is a criminal offence in the United States.

The Notes will be issued, on or about 8 July 2003, initially in the form of global notes in registered form without interest coupons attached (the "**Global Notes**"). Notes sold to investors in reliance on Rule 144A will be represented by one or more restricted global notes (the "**Rule 144A Global Notes**"). Notes sold to investors in reliance on Regulation S will be represented by a single unrestricted global note (the "**Regulation S Global Note**"). The Regulation S Global Note will be deposited with, and registered in the name of a nominee for, a common depositary for Euroclear Bank S.A./N.V., as operator of the Euroclear System ("**Euroclear**"), and Clearstream Banking, société anonyme ("**Clearstream, Luxembourg**"). The Rule 144A Global Note will be deposited with a custodian on behalf of The Depository Trust Company ("**DTC**") and registered in the name of Cede & Co. as nominee for DTC. Ownership of beneficial interests in the Global Notes will be limited to persons that have accounts with Euroclear, Clearstream, Luxembourg or DTC or persons that may hold interests through such accountholders. Beneficial interests in the Global Notes will be shown on, and transfers thereof will be effected only through, records maintained in book-entry form by Euroclear, Clearstream, Luxembourg or DTC and their accountholders, as applicable. The Global Notes will be exchangeable in whole, but not in part, in certain limited circumstances described therein, for definitive Notes in registered form, serially numbered in the denomination of U.S.$1,000 each or integral multiples thereof.

**NOTICE TO NEW HAMPSHIRE RESIDENTS: NEITHER THE FACT THAT A REGISTRATION STATEMENT OR AN APPLICATION FOR A LICENCE HAS BEEN FILED UNDER CHAPTER 421-B OF THE NEW HAMPSHIRE REVISED STATUTES WITH THE STATE OF NEW HAMPSHIRE NOR THE FACT THAT A SECURITY IS EFFECTIVELY REGISTERED OR A PERSON IS LICENSED IN THE STATE OF NEW HAMPSHIRE CONSTITUTES A FINDING BY THE SECRETARY OF STATE OF STATE OF NEW HAMPSHIRE THAT ANY DOCUMENT FILED UNDER RSA 421-B IS TRUE, COMPLETE AND NOT MISLEADING. NEITHER ANY SUCH FACT NOR THE FACT THAT AN EXEMPTION OR EXCEPTION IS AVAILABLE FOR A SECURITY OR A TRANSACTION MEANS THAT THE SECRETARY OF STATE HAS PASSED IN ANY WAY UPON THE MERITS OR QUALIFICATIONS OF, OR RECOMMENDED OR GIVEN APPROVAL TO, ANY PERSON, SECURITY OR TRANSACTION. IT IS UNLAWFUL TO MAKE, OR CAUSE TO BE MADE, TO ANY PROSPECTIVE PURCHASER, CUSTOMER OR CLIENT ANY REPRESENTATION INCONSISTENT WITH THE PROVISIONS OF THIS PARAGRAPH.**

Pursuant to the Crown Proceedings Act 1947, an action can be brought in the English courts against H.M. Treasury in respect of a default by H.M. Treasury in the performance of its obligations under the Trust Deed (as defined below) or in respect of the Notes. In proceedings against H.M. Treasury before the English courts, the court has no power to grant an injunction or to make an order for specific performance, but may instead make an order declaratory of the rights of the parties. No process of execution lies for enforcing satisfaction by H.M. Treasury of any judgment.

The distribution of this Offering Circular and the offering of the Notes in certain jurisdictions may be restricted by law. Persons into whose possession this Offering Circular comes are required by H.M. Treasury and the Managers to inform themselves about and to observe any such restrictions. For a further description of certain restrictions on offering and sale of Notes and on distribution of this Offering Circular, see "*Subscription and Sale*" and the Subscription Agreement referred to therein.

## TABLE OF CONTENTS

| | Page |
|---|---|
| Terms and Conditions of the Notes | 4 |
| Use of Proceeds | 10 |
| United Kingdom Taxation | 11 |
| United States Taxation | 12 |
| Subscription and Sale | 13 |
| Transfer Restrictions | 14 |
| Book-Entry Clearance Procedures | 16 |
| General Information | 20 |

**In connection with the issue and distribution of any Notes, Morgan Stanley & Co. International Limited, or any person acting for it, may over-allot or effect transactions with a view to supporting the market price of the Notes at a level higher than that which might otherwise prevail for a limited period. However, there may be no obligation on Morgan Stanley & Co. International Limited or any of its agents to do this. Such stabilising, if commenced, may be discontinued at any time and must be brought to an end after a limited period.**

## TERMS AND CONDITIONS OF THE NOTES

*The following, subject to alteration, completion and amendment and save for this paragraph in italics, are the terms and conditions of the Notes which will be incorporated by reference into the Global Notes and will be endorsed on each Note in definitive form (if issued):*

The U.S.$3,000,000,000 2.25 per cent. Notes due 2008 (the "**Notes**" which expression shall in these Terms and Conditions (the "**Conditions**"), unless the context otherwise requires, include any further notes issued pursuant to Condition 13 and consolidated and forming a single series therewith) of The Lords Commissioners of Her Majesty's Treasury ("**H.M. Treasury**") on behalf of the Government of the United Kingdom of Great Britain and Northern Ireland are constituted by a trust deed (the "**Trust Deed**") dated 8 July 2003 and made between H.M. Treasury and The Law Debenture Trust Corporation p.l.c. (the "**Trustee**" which expression shall include all persons for the time being the trustee or trustees under the Trust Deed) as trustee for the holders of the Notes. Holders of the Notes (the "**Noteholders**") are entitled to the benefit of, and are bound by, and are deemed to have notice of, all the provisions of the Trust Deed and are deemed to have notice of those provisions applicable to them of the agency agreement dated 8 July 2003 (the "**Agency Agreement**") made between H.M. Treasury, the Trustee and The Bank of New York as principal paying agent (the "**Principal Paying Agent**", which expression includes any successor Principal Paying Agent, and together with the other paying agents appointed pursuant to the Agency Agreement or any successor thereto, the "**Paying Agents**") and as registrar (the "**Registrar**", which expression includes any successor registrar appointed pursuant to the Agency Agreement). The statements set out in these Conditions are summaries of, and are subject to, the provisions of the Trust Deed. The Trust Deed includes the forms of the Notes.

Copies of each of the Trust Deed and the Agency Agreement are available for inspection at the specified offices of the Trustee (being at the date hereof at Fifth Floor, 100 Wood Street, London EC2V 7EX) and the Paying Agents.

### 1.    Form and Denominations

The Notes are in registered form, in the denomination of U.S.$1,000 or integral multiples thereof (an "**Authorised Denomination**") without interest coupons attached.

### 2.    Status

The Notes are direct, unsecured, unconditional and general obligations of H.M. Treasury and will rank *pari passu* with all other unsecured indebtedness of H.M. Treasury from time to time outstanding and without any preference one over the other, by reason of priority of date of issue or otherwise. "Indebtedness" means all indebtedness of H.M. Treasury in respect of moneys borrowed by H.M. Treasury and guarantees given by H.M. Treasury for moneys borrowed by others.

### 3.    Interest

The Notes bear interest from and including 8 July 2003 (the "**Interest Commencement Date**") at the rate of 2.25 per cent. per annum and, subject to Condition 5, such interest will be payable in arrear on 8 July (each an "**Interest Payment Date**") in each year. The first payment of interest will be made on the first Interest Payment Date next following the Interest Commencement Date.

Interest will be paid subject to and in accordance with the provisions of Condition 5. Interest will cease to accrue on each Note on the due date for redemption thereof unless, upon due presentation thereof, payment of principal is improperly withheld or refused in which event interest will continue to accrue on overdue principal (as well after as before any judgment) until whichever is the earlier of (a) the day on which all sums due in respect of overdue principal are received by or on behalf of the holder of such Note and (b) the day on which the Trustee or the Principal Paying Agent has notified the holder thereof (either in accordance with Condition 14 or individually) of receipt of all sums due in respect of the overdue principal. Interest in respect of a period of less than one year will be calculated on the basis of a 360 day year consisting of 12 months of 30 days each.

**4.   Redemption and Purchase**

(a)  **Final Redemption**

Unless previously purchased and cancelled, H.M. Treasury will redeem the Notes at their principal amount on 8 July 2008.

(b)  **Purchases**

H.M. Treasury may at any time purchase Notes in the open market, by tender available to all Noteholders alike or by private treaty, in each case at any price.

(c)  **Cancellation**

All Notes redeemed as aforesaid will be cancelled. Any Notes purchased by or on behalf of H.M. Treasury may, if H.M. Treasury so elects, be cancelled. Any Notes so cancelled may not be reissued or resold.

**5.   Payments**

(a)  Payments in respect of the Notes on the due date shall be paid to the person shown on the Register at the close of business on the fifteenth day before the due date for payment thereof (the "**Record Date**") and in the case of principal against presentation and surrender of the relevant Notes at the specified office of any of the Paying Agents or of the Registrar. Payments shall be made in U.S. dollars by cheque drawn on a bank in New York City and mailed to the holder (or to the first named of joint holders) of such Notes at its address appearing in the Register. Upon application by the holder to the specified office of the Registrar before the Record Date, such payment may be made by transfer to a U.S. dollar account maintained by the payee with a bank in New York City.

(b)  All payments are subject in all cases to any applicable fiscal or other laws and regulations, but without prejudice to the provisions of Condition 6. No commissions or expenses shall be charged to the Noteholders in respect of such payments.

(c)  If the due date for redemption of any Note is not an Interest Payment Date, the interest accrued from the preceding Interest Payment Date (or the Interest Commencement Date, as the case may be) shall be payable only against presentation of the relevant Note.

(d)  If any day for payment of principal or interest in respect of any Note is not a day on which banks are open for business and carrying out transactions in U.S. dollars in New York City and London and in the place where it is presented for payment and in the place where payment is to be made, no payment shall be made and no credit or transfer instructions shall be given in respect thereof until the next following such day in each such place and the holder shall not be entitled to any interest or other sums in respect of such postponed payment.

(e)  The names of the initial Paying Agents and Registrar and their specified offices are set out below. H.M. Treasury reserves the right at any time with the approval of the Trustee to vary or terminate the appointment of the Principal Paying Agent and Registrar, provided that there will at all times be a Principal Paying Agent and a Registrar, or to approve any change in the office through which the Principal Paying Agent or Registrar acts. H.M. Treasury may with the approval of the Trustee vary or terminate the appointment of any Paying Agent or appoint additional or other Paying Agents or approve any change in the offices through which any Paying Agent acts, provided that (i) there will at all times be a Paying Agent in a European city outside the United Kingdom and in New York City, (ii) it will maintain a Registrar and (iii), so long as the Notes are listed on the Official List of the Financial Services Authority in its capacity as competent authority under the Financial Services and Markets Act 2000 (the "**UK Listing Authority**") and admitted to trading on the London Stock Exchange plc's market for listed securities, in London. Any variation, termination, appointment or removal shall only take effect (other than in the case of insolvency, when it shall be of immediate effect) after not more than 45 nor less than 30 days' prior notice thereof shall have been given by H.M. Treasury to the Noteholders in accordance with Condition 14.

**6.   Taxation**

All payments of principal of and interest on the Notes will be made without withholding or deduction for or on account of any present or future taxes or duties of whatsoever nature imposed or levied by or on behalf of the United Kingdom or by any political subdivision or taxing authority thereof or therein unless H.M. Treasury is compelled by law to withhold or deduct any such taxes or duties. In that event, H.M.

Treasury shall pay such additional amounts as may be necessary in order that the amounts received by the holders of the respective Notes net of such withholding or deduction shall equal the respective amounts of principal and interest which would have been received in the absence of such withholding or deduction, except that no such additional amounts shall be payable with respect to any Note:

(a) to or for a holder who is resident or ordinarily resident in the United Kingdom or who is carrying on a trade or business in the United Kingdom through a branch, agency or permanent establishment in the United Kingdom with which the receipt of the principal or interest on such Note is effectively connected or who is liable to such taxes or duties in respect of such Note by reason of his having some connection with the United Kingdom other than the mere holding of the Note;

(b) presented for payment (where presentation is required) more than 30 days after the Relevant Date, except to the extent that the holder thereof would have been entitled to such additional amounts on presenting the same for payment on the last day of such period of 30 days; or

(c) where such withholding or deduction is imposed on a payment to an individual and is required to be made pursuant to European Council Directive 2003/48/EC on the taxation of savings income in the form of interest payments or any law implementing or complying with, or introduced in order to conform to, that Directive.

As used herein, the "Relevant Date" in respect of any payment means the date on which such payment first becomes due, but, if the full amount of the money payable has not been received by the Principal Paying Agent or the Trustee on or prior to such due date, it means the date on which, the full amount of such money having been so received, notice to that effect shall have been duly published in accordance with Condition 14.

Any reference in these Conditions and the Trust Deed to principal or interest with respect to the Notes shall be deemed also to refer to any additional amounts which may be payable under this Condition 6.


### 7.   Events of Default

If any of the following events (each an "**Event of Default**") occurs and is continuing, the Trustee may at its discretion, and if so requested in writing by holders of at least 25 per cent. in principal amount of the Notes then outstanding or if so directed by an Extraordinary Resolution (as defined in the Trust Deed) shall, (subject in each case to being indemnified to its satisfaction), give notice to H.M. Treasury that the principal amount of each Note shall mature and become immediately due and payable, together with accrued interest:

(a) H.M. Treasury shall default for a period of seven days or more in the payment on the due date of any principal due on the Notes or any of them or for a period of 15 days or more in the payment on the due date of any interest due in respect of the Notes or any of them; or

(b) H.M. Treasury shall default in the performance of any other covenant contained in the Notes or the Trust Deed which default is incapable of remedy or, if in the opinion of the Trustee capable of remedy, is not in the opinion of the Trustee remedied 30 days after written notice thereof shall have been given to H.M. Treasury by the Trustee,

provided that in the case of an event falling within paragraph (b), the Trustee shall have certified that in its opinion such event is materially prejudicial to the interests of Noteholders.


### 8.   Meetings of Noteholders, Modification and Waiver

The Trust Deed contains provisions for convening meetings of the Noteholders to consider any matter affecting their interests including any modification by Extraordinary Resolution of the Notes (including the Conditions). An Extraordinary Resolution to approve a Reserved Matter (as defined below) shall require the approval of holders of at least 75 per cent. in principal amount of the Notes then outstanding. An Extraordinary Resolution to approve any other matter shall require the approval of holders of at least 66.67 per cent. in principal amount of the Notes then outstanding. An Extraordinary Resolution may be passed at a meeting or in writing. An Extraordinary Resolution duly passed shall be binding on all the Noteholders, whether present or not and whether they voted in favour or not.

For the purposes of determining the principal amount of the Notes outstanding, the Trust Deed provides that Notes held directly or indirectly by H.M. Treasury or any public body owned or controlled, directly or indirectly, by H.M. Treasury shall be disregarded and deemed not to be outstanding.

"Reserved Matters" means any proposal to (a) postpone the date of maturity of any of the Notes or any date for payment of interest thereof, (b) reduce or cancel the principal amount of the Notes, (c) reduce the rate of interest payable in respect of the Notes, (d) vary the currency or place of payment in which any payment in respect of the Notes is to be made, (e) amend the status of Notes under Condition 2, (f) amend the obligation of H.M. Treasury to pay additional amounts under Condition 6 and the Trust Deed, (g) amend the Events of Default set out in Condition 7, (h) amend the law governing the Notes and the Trust Deed referred to in Condition 17, (i) modify the provisions contained in Schedule 3 to the Trust Deed concerning the quorum required at any meeting of the Noteholders or any adjournment thereof or concerning the majority required to pass an Extraordinary Resolution or the percentage of votes required for the taking of any action, (j) change the definition of "outstanding" in the Trust Deed, (k) authorise the Trustee, on behalf of all Noteholders, to exchange or substitute the Notes for, or convert the Notes into, other obligations or securities of H.M. Treasury or any other person, (l) instruct the Trustee, on behalf of all Noteholders, to withdraw, settle or compromise any proceeding or claim asserted by the Trustee pursuant to Condition 7, (m) give to any person or group of persons, other than the Trustee or the Appointee, the exclusive right to enforce any provision of the Trust Deed or the Notes on behalf of all Noteholders after the Noteholders have become entitled to proceed directly against the Issuer in accordance with Clause 8.2 of the Trust Deed and Condition 9, (n) confer upon any committee or committees appointed to represent the interests of the Noteholders in any discussions with H.M. Treasury or any other creditors of H.M. Treasury in connection with any proposed restructuring of the Notes or other indebtedness of H.M. Treasury, any powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution and (o) amend this definition in any manner.

The Trustee may agree without the consent of the Noteholders to any modification to the Conditions or to the provisions of the Trust Deed or the Agency Agreement which (a) in its opinion is of a formal, minor or technical nature or is made to correct a manifest error or (b) which (i) is made to comply with mandatory provisions of law or (ii) any other modification provided that (in each of (i) and (ii)) such modification is not in the opinion of the Trustee materially prejudicial to the interests of the Noteholders. The Trustee may also agree without the consent of the Noteholders to the waiver or authorisation of any breach or proposed breach of any of the provisions of the Trust Deed or of the Conditions which is not in the opinion of the Trustee materially prejudicial to the interests of the Noteholders.

Any such modification, waiver or authorisation shall be binding on the Noteholders and any such modification, unless the Trustee otherwise requires, shall be notified by H.M. Treasury to the Noteholders in accordance with Condition 14 as soon as practicable thereafter.

In connection with the exercise of its powers, trusts, authorities or discretions (including but not limited to those in relation to any proposed modification, waiver, authorisation or substitution as aforesaid) the Trustee shall not have regard to the consequences of such exercise for individual Noteholders resulting from their being for any purpose domiciled or resident in, or otherwise connected with, or subject to the jurisdiction of, any particular territory and the Trustee shall not be entitled to require, nor shall any Noteholder be entitled to claim from H.M. Treasury or the Trustee, any indemnification or payment in respect of any tax consequence of any such exercise upon individual Noteholders or in substitution therefor pursuant to the Trust Deed.

## 9.   Enforcement

At any time after the Notes become due and payable, the Trustee may, at its discretion and without further notice, institute such proceedings against H.M. Treasury as it may think fit to enforce the terms of the Trust Deed and the Notes, but it need not take any such proceedings unless (a) it shall have been so directed by an Extraordinary Resolution or so requested in writing by Noteholders holding at least 25 per cent. in principal amount of the Notes outstanding and (b) it shall have been indemnified to its satisfaction. Any net proceeds obtained by the Trustee as a result of such proceedings will be distributed to Noteholders *pro rata* after the payment of any costs, charges, expenses and liabilities incurred in connection therewith, and subject to, and in accordance with, the provisions of the Trust Deed. No Noteholder may proceed directly against H.M. Treasury unless the Trustee, having become bound so to proceed, fails to do so within 90 days and such failure is continuing.

## 10.   Indemnification

The Trust Deed contains provisions for the indemnification of the Trustee and for its relief from responsibility. The Trustee is entitled to enter into business transactions with H.M. Treasury without accounting for any profit.

**11.   Replacement of Notes**

In case any Note shall at any time become mutilated, defaced, destroyed, stolen or lost, it may be replaced at the cost of the owner at the specified office of the Principal Paying Agent (or at such other office of the Principal Paying Agent as the Principal Paying Agent and H.M. Treasury may from time to time decide and notify to Noteholders in accordance with Condition 14), upon provision of evidence satisfactory to the Principal Paying Agent and H.M. Treasury that such Note (if such was the case) was destroyed, stolen or lost, together with an indemnity if required. Mutilated or defaced Notes must be surrendered before replacements will be issued.

**12.   Title, Registration and Transfer**

(a)   Title to the Notes will pass by transfer and registration as described below.

H.M. Treasury, the Trustee, the Principal Paying Agent, the Registrar and any Paying Agent may treat the holder of any Note as the absolute owner thereof (whether or not such Note shall be overdue and notwithstanding any notice of ownership or writing thereon or any notice of previous loss or theft thereof or trust or other interest therein) for the purpose of making payments and for all other purposes. In these Conditions, ''Noteholder'' and ''holder'' means the person in whose name a Note is registered in the Register.

(b)   H.M. Treasury will cause a register (the "**Register**") to be kept at the specified office of the Registrar on which will be entered the names and addresses of the holders of the Notes and the particulars of the Notes held by them and of all transfers and redemptions of Notes. Holders of Notes will be entitled to receive only one Note in respect of their entire holdings.

(c)   Notes may, subject to the terms of the Agency Agreement and to the succeeding paragraphs of this Condition, be transferred in whole or in part in an Authorised Denomination by lodging the relevant Note (with the form of application for transfer in respect thereof duly executed and duly stamped where applicable) at the specified office of the Registrar or any Paying Agent.

No transfer of a Note will be valid unless and until entered on the Register. A Note may be registered only in the name of, and transferred only to, a named person (or persons, not exceeding four in number).

The Registrar will, within seven business days (being a day (other than a Saturday or Sunday) on which commercial banks are open for business in the place of the specified office of the Registrar), of any duly made application for the transfer of a Note, deliver a new Note to the transferee (and, in the case of a transfer of part only of a Note, deliver a Note for the untransferred balance to the transferor) at the specified office of the Registrar, or (at the risk and, if mailed at the request of the transferee or, as the case may be, the transferor otherwise than by ordinary mail, at the expense of the transferee or, as the case may be, the transferor) mail the Note by uninsured mail to such address as the transferee or, as the case may be, the transferor may request.

Such transfer will be effected without charge subject to (i) the person making such application for transfer paying or procuring the payment of any taxes, duties and other governmental charges in connection therewith, (ii) the Registrar being satisfied with the documents of title and/or identity of the person making the application and (iii) such other reasonable requirements as H.M. Treasury may from time to time agree with the Registrar and the Trustee.

Neither H.M. Treasury nor the Registrar will be required to register the transfer of any Note (or part thereof) (i) during the period of 15 days immediately prior to any date fixed for redemption of the Notes or (ii) during the period of 15 days ending on (and including) any Record Date (as defined in Condition 5(a)) in respect of any payment of interest on the Notes.

**13.   Further Issues**

H.M. Treasury may from time to time, without the consent of the Noteholders, create and issue further notes, bonds or debentures (either ranking *pari passu* with the Notes in all respects or in all respects except for the first payment of interest on such further notes, bonds or debentures) which may be consolidated and form a single series with the outstanding Notes.

Any further notes, bonds or debentures forming a single series with the outstanding notes, bonds or debentures of any series (including the Notes) constituted by the Trust Deed or any deed supplemental to it shall, and any other notes, bonds or debentures may, with the consent of the Trustee, be constituted by a trust deed supplemental to the Trust Deed.

**14.   Notices**

All notices to Noteholders will be given by publication thereof in at least one leading daily newspaper printed in the English language and with general circulation in London or, if that is impracticable, in an English language newspaper having general circulation throughout Europe. It is expected that publication of such notices will normally be made in the *Financial Times*. Any such notice shall be deemed to have been given on the date of publication, or, if so published more than once or on different dates, on the date of the first such publication.

**15.   Prescription**

Claims in respect of Notes will become prescribed unless presented for payment as required by Condition 5 within ten years (in the case of principal) and five years (in the case of interest), from the due date for payment thereof.

**16.   Contracts (Rights of Third Parties) Act 1999**

The Notes confer no rights on any person pursuant to the Contracts (Rights of Third Parties) Act 1999 to enforce any term of the Notes but this does not affect any right or remedy which exists or is available apart from that Act.

**17.   Governing Law**

The Trust Deed and the Notes are governed by, and shall be construed in accordance with, the laws of England.

**USE OF PROCEEDS**

The net proceeds of the issue of the Notes, amounting to U.S.$2,995,230,000, will contribute to the official foreign currency reserves of the Government of the United Kingdom of Great Britain and Northern Ireland.

## UNITED KINGDOM TAXATION

**The comments below represent a summary of a general nature based upon current United Kingdom law and practice and relate only to the position of persons who are the absolute beneficial owners of their Notes.**

1. Interest on the Notes will be paid without withholding or deduction for or on account of United Kingdom income tax pursuant to a direction of H.M. Treasury under Section 50 of the United Kingdom Income and Corporation Taxes Act 1988.

2. The interest has a United Kingdom source and accordingly may be chargeable to United Kingdom tax by direct assessment. However, the interest will not be chargeable to United Kingdom tax in the hands of Noteholders who are not resident in the United Kingdom at any time in the relevant tax year, except where such persons carry on a trade, profession or vocation in the United Kingdom through a United Kingdom branch or agency (or possibly for Noteholders who are companies, if legislation published in the current Finance Bill is enacted, through a United Kingdom permanent establishment, as regards accounting periods commencing on or after 1 January 2003) through or from which the interest arises or to which the Notes are attributable, in which case (subject to exemptions for certain categories of agent) tax may be assessed on the United Kingdom branch or agency (or, as the case may be, permanent establishment).

3. Noteholders should be aware that the provisions relating to payment of additional amounts referred to in "*Terms and Conditions of the Notes – Taxation*" would not apply as a consequence of the Inland Revenue seeking directly to assess the person entitled to the interest to United Kingdom tax in respect of the interest. However, for Noteholders who are resident outside the United Kingdom, exemption from or reduction of such United Kingdom tax liability might be available under an applicable double taxation treaty.

4. For Noteholders within the charge to United Kingdom corporation tax, profits and gains arising from, and from fluctuations in the value of, the Notes will be subject to tax as income. Such Noteholders will generally be charged in each accounting period by reference to interest and any profit or loss which in accordance with an authorised accounting method is allocated to that accounting period. Such Noteholders will also generally be charged in each accounting period by reference to any profit or loss attributable to fluctuations in currency value.

5. Other Noteholders may be subject to United Kingdom taxation on income (including accrued income) and chargeable gains on a disposal of Notes if at any time in the relevant tax year they are resident or ordinarily resident in the United Kingdom or if at any time in the relevant tax year they carry on a trade, profession or vocation in the United Kingdom through a branch or agency to which the Notes are attributable.

6. The Notes will not constitute "gilt-edged securities" for the purposes of Section 115 of the United Kingdom Taxation of Chargeable Gains Act 1992.

7. The issue and transfer of Notes are free of United Kingdom stamp duties and will not give rise to a charge to stamp duty reserve tax.

8. On 3 June 2003 the Council of the European Union adopted a new Directive regarding the taxation of savings income. Subject to a number of important conditions being met, Member States will be required from 1 January 2005 to provide to the tax authorities of another Member State details of payments of interest or other similar income paid to or secured for an individual resident in that other Member State. Exceptionally (and for a transitional period only which will end after agreement on exchange of information is reached between the European Union and certain non-European Union States) Belgium, Luxembourg and Austria will instead be required to withhold tax from such payments unless the investor authorises the person making the payment to report the payment or presents a certificate from the relevant taxing authority to allow the interest payment to be made gross.

Prospective Noteholders who are in any doubt as to their tax position should consult their professional advisers.

## UNITED STATES TAXATION

The following discussion is a general summary based upon present law of certain U.S. federal income tax considerations relevant to the purchase, ownership and disposition of the Notes. This discussion addresses only U.S. Holders (as defined below) that purchase Notes in the original offering at the initial offering price, hold the Notes as capital assets and use the U.S. dollar as their functional currency. It does not address the tax treatment of U.S. Holders subject to special rules, such as banks, dealers, traders that elect mark-to market accounting, insurance companies, tax-exempt entities, persons liable for the alternative minimum tax or persons holding the Notes as part of a hedge, straddle, conversion or other integrated financial transaction. It is not tax advice.

Prospective purchasers are urged to consult their own tax advisers about the U.S. federal, state, and local tax consequences to them of purchasing, holding and disposing of the Notes.

As used here, "U.S. Holder" means a holder that for U.S. federal income tax purposes is (i) a citizen or resident of the United States, (ii) a corporation, partnership or other business entity organized under the laws of the United States, (iii) a trust subject to the control of a U.S. person and the primary supervision of a U.S. court or (iv) an estate the income of which is subject to U.S. federal income taxation regardless of its source.

1.  Interest on the Notes will be included in the income of a U.S. Holder as ordinary income in accordance with the holder's regular method of tax accounting. Interest will be treated as ordinary income from sources outside the United States.

2.  A U.S. Holder generally will recognise gain or loss on a sale, exchange or retirement of a Note in an amount equal to the difference between the amount realised (less any accrued but unpaid interest, which will be taxable as interest income to the extent not previously included in income) and the U.S. Holder's adjusted tax basis in the Note. The gain or loss will be capital gain or loss, will be long-term capital gain or loss if the Note was held by a U.S. Holder for more than one year, and generally will be from sources within the United States.

3.  Further notes subsequently issued as part of the same series as the Notes are unlikely to be treated as part of the same issue as the Notes for U.S. federal income tax purposes.

4.  Payments of interest and proceeds from the sale, exchange or retirement of the Notes may be reported to the U.S. Internal Revenue Service unless the holder (i) is a corporation, (ii) provides a properly executed Internal Revenue Service Form W-8BEN or (iii) otherwise establishes a basis for exemption. Backup withholding tax may apply to amounts subject to reporting if the holder fails to provide an accurate taxpayer identification number. A holder can claim a credit against its U.S. federal income tax liability for the amount of any backup withholding tax and a refund of any excess amounts.

## SUBSCRIPTION AND SALE

Pursuant to a subscription agreement (the "**Subscription Agreement**") dated 4 July 2003 between H.M. Treasury and Citigroup Global Markets Limited, Deutsche Bank AG London, Goldman Sachs International, Morgan Stanley & Co. International Limited, Barclays Bank PLC, BNP PARIBAS, HSBC Bank plc, ABN Amro Bank N.V., Credit Suisse First Boston (Europe) Limited, J.P. Morgan Securities Ltd., Lehman Brothers International (Europe), Merrill Lynch International and UBS Limited (together, the "**Managers**"), the Managers have jointly and severally agreed to subscribe and pay for the Notes at a price equal to 99.941 per cent. of their principal amount. H.M. Treasury will pay to the Managers a combined management and underwriting commission of 0.10 per cent. of such principal amount. The Subscription Agreement may be terminated in certain circumstances prior to payment being made to H.M. Treasury.

The Notes have not been and will not be registered under the Securities Act or with any securities regulatory authority of any other State or jurisdiction of the United States and subject to certain exceptions, may not be offered or sold within the United States. The Notes are being offered and sold outside the United States in reliance on Regulation S. The Subscription Agreement provides that the Managers may through their respective U.S. broker-dealer affiliates arrange for the offer and resale of Notes within the United States only to qualified institutional buyers (as defined in Rule 144A) in reliance on Rule 144A.

In addition, until 40 days after the commencement of the offering of the Notes, an offer or sale of the Notes within the United States by any dealer (whether or not participating in the offering) may violate the registration requirements of the Securities Act if such offer or sale is made otherwise than in compliance with Rule 144A.

Each Manager has represented and agreed that it has complied and will comply with all applicable provisions of the Financial Services and Markets Act 2000 with respect to anything done by it in relation to the Notes in, from or otherwise involving the United Kingdom.

**TRANSFER RESTRICTIONS**

*Prospective purchasers of the Notes are advised to consult legal counsel prior to making any purchase, offer, resale, pledge or transfer of interests in the Notes.*

Each purchaser of Notes within the United States pursuant to Rule 144A, by accepting delivery of this Offering Circular and the Notes, will be deemed to have represented, agreed and acknowledged that:

(1) It is (a) a "qualified institutional buyer" within the meaning of Rule 144A (a "**QIB**"), (b) acquiring such Notes for its own account or for the account of a QIB and (c) aware, and each beneficial owner of such Notes has been advised, that the sale of such Notes to it is being made in reliance on Rule 144A. If it is acquiring an interest in the Notes for the account of one or more QIBs, it represents that it has sole investment discretion with respect to each such account and that it has full power to make the foregoing acknowledgements, representations and agreements on behalf of each such account.

(2) It understands that the Notes have not been and will not be registered under the Securities Act or with any securities regulatory authority of any other State or jurisdiction of the United States and may not be offered, sold, pledged or otherwise transferred except (a) in accordance with Rule 144A to a person that it and any person acting on its behalf reasonably believe is a QIB purchasing for its own account or for the account of a QIB, (b) in an offshore transaction in accordance with Rule 903 or Rule 904 of Regulation S or (c) pursuant to an exemption from registration under the Securities Act provided by Rule 144 thereunder (if available), in each case in accordance with any applicable securities laws of any State of the United States.

(3) It understands that the Notes, unless agreed between H.M. Treasury and the Trustee in accordance with applicable law, will bear a legend to the following effect:

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**") OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OR OTHER JURISDICTION OF THE UNITED STATES. THE HOLDER HEREOF, BY PURCHASING THIS NOTE, AGREES FOR THE BENEFIT OF THE LORDS COMMISSIONERS OF HER MAJESTY'S TREASURY (THE "**ISSUER**") THAT THIS NOTE MAY BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS AND ONLY (A)(1) TO THE ISSUER, (2) IN COMPLIANCE WITH RULE 144A UNDER THE SECURITIES ACT ("**RULE 144A**") TO A PERSON WHO THE SELLER AND ANY PERSON ACTING ON ITS BEHALF REASONABLY BELIEVE IS A QUALIFIED INSTITUTIONAL BUYER (AS DEFINED IN RULE 144A) PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER WHO THE SELLER HAS INFORMED, IN EACH CASE, THAT THE OFFER, SALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (3) IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 903 OR 904 OF REGULATION S UNDER THE SECURITIES ACT OR (4) PURSUANT TO AN EXEMPTION FROM REGISTRATION IN ACCORDANCE WITH RULE 144 UNDER THE SECURITIES ACT (IF AVAILABLE), OR (B) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT, AND IN EACH OF SUCH CASES IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES. NO REPRESENTATION CAN BE MADE AS TO THE AVAILABILITY OF THE EXEMPTION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT FOR RESALES OF THIS NOTE. THE HOLDER HEREOF, BY PURCHASING THIS NOTE, REPRESENTS AND AGREES FOR THE BENEFIT OF THE ISSUER THAT IT WILL NOTIFY ANY PURCHASER OF THIS NOTE FROM IT OF THE RESALE RESTRICTIONS REFERRED TO ABOVE.

(4) It understands that H.M. Treasury, the Managers and others will rely upon the truth and accuracy of the foregoing acknowledgements, representations and agreements and agrees that, if any of the acknowledgements, representations and agreements deemed to have been made by its purchase of an interest in the Notes are no longer accurate, it shall promptly notify the Managers.

**Prospective purchasers are hereby notified that sellers of the Notes may be relying on the exemption from the provisions of Section 5 of the Securities Act provided by Rule 144A.**

**Other Provisions Regarding Transfers**

Interests in a Rule 144A Global Note may be transferred to a person whose interest is subsequently represented by an interest in the Regulation S Global Note only upon receipt by the Registrar of a written certification (in the form provided in the Trust Deed) from the transferor to the effect that, among other things, such transfer is being made in accordance with Regulation S. Interests in the Regulation S Global Note may be transferred to a person whose interest is subsequently represented by an interest in a Rule 144A Global Note only upon receipt by the Registrar of a written certification (in the form provided in the Trust Deed) from the transferor to the effect that, among other things, such transfer is being made in accordance with Rule 144A. Any interest in one of the Global Notes that is transferred to a person whose interest in such Global Note is subsequently represented by an interest in the other Global Note will, upon transfer, cease to be an interest in the first Global Note and, accordingly, will thereafter be subject to all transfer restrictions and other procedures applicable to such other Global Note for so long as it remains such an interest.

## BOOK-ENTRY CLEARANCE PROCEDURES

*The information set out below has been obtained from sources that H.M. Treasury believes to be reliable, but prospective investors are advised to make their own enquiries as to such procedures. In particular, such information is subject to any change in or interpretation of the rules, regulations and procedures of DTC, Euroclear or Clearstream, Luxembourg (together, the "**Clearing Systems**") currently in effect and investors wishing to use the facilities of any of the Clearing Systems are therefore advised to confirm the continued applicability of the rule, regulations and procedures of the relevant Clearing System. None of H.M. Treasury, the Trustee, the Managers or any Agent party to the Agency Agreement (or any affiliate of any of the above, or any person by whom any of the above is controlled for the purposes of the Securities Act), will have any responsibility for the performance by the Clearing Systems or their respective direct or indirect participants or accountholders of their respective obligations under the rules and procedures governing their operations or for the sufficiency for any purpose of the arrangements described below.*

## EUROCLEAR, CLEARSTREAM, LUXEMBOURG AND DTC

Custodial and depositary links have been established between Euroclear and Clearstream, Luxembourg and DTC to facilitate the initial issue of the Notes and cross-market transfers of the Notes associated with secondary market trading. See "*Settlement and Transfer of Notes*" below.

## EUROCLEAR AND CLEARSTREAM, LUXEMBOURG

Euroclear and Clearstream, Luxembourg each hold securities for their customers and facilitate the clearance and settlement of securities transactions through electronic book-entry transfer between their respective accountholders. Indirect access to Euroclear and Clearstream, Luxembourg is available to other institutions which clear through or maintain a custodial relationship with an accountholder of either system. Euroclear and Clearstream, Luxembourg provide various services including safekeeping, administration, clearance and settlement of internationally-traded securities and securities lending and borrowing. Euroclear and Clearstream, Luxembourg also deal with domestic securities markets in several countries through established depositary and custodial relationships. Euroclear and Clearstream, Luxembourg have established an electronic bridge between their two systems across which their respective customers may settle trades with each other. Investors may hold their interests in such Global Notes directly through Euroclear or Clearstream, Luxembourg if they are accountholders ("**Direct Participants**") or indirectly ("**Indirect Participants**" and together with Direct Participants, "**Participants**") through organisations which are accountholders therein.

## DTC

DTC has advised H.M. Treasury as follows: DTC is a limited purpose trust company organised under the laws of the State of New York, a "banking organisation" under the laws of the State of New York, a member of the U.S. Federal Reserve System, a "clearing corporation" within the meaning of the New York Uniform Commercial Code and a "clearing agency" registered pursuant to the provisions of Section 17A of the U.S. Securities Exchange Act of 1934 (the "**Exchange Act**"). DTC was created to hold securities for its participants and facilitate the clearance and settlement of securities transactions between Participants through electronic computerised book-entry changes in accounts of its participants, thereby eliminating the need for physical movement of certificates. Participants include securities brokers and dealers, banks, trust companies, clearing corporations and certain other organisations. Indirect access to DTC is available to others, such as banks, securities brokers, dealers and trust companies, that clear through or maintain a custodial relationship with a DTC direct participant, either directly or indirectly.

Investors may hold their interests in a Rule 144A Global Note directly through DTC if they are participants ("**Direct Participants**") in the DTC system, or indirectly through organisations which are Direct Participants in such system ("**Indirect Participants**" and, together with Direct Participants, "**Participants**").

DTC has advised H.M. Treasury that it will take any action permitted to be taken by a holder of Notes only at the direction of one or more Direct Participants and only in respect of such portion of the aggregate principal amount of the relevant Rule 144A Global Notes as to which such participant or participants has or have given such direction.

**BOOK-ENTRY OWNERSHIP**

**Euroclear and Clearstream, Luxembourg**

The Regulation S Global Note will be registered in the name of a nominee for, and deposited with The Bank of New York, London Branch as common depositary on behalf of, Euroclear and Clearstream, Luxembourg.

**DTC**

Each Rule 144A Global Note will be deposited with The Bank of New York, as custodian (the "**Custodian**") for and registered in the name of Cede & Co. as nominee of, DTC. The Custodian and DTC will electronically record the principal amount of the Notes held within the DTC System.

**Relationship of Participants with Clearing Systems**

Each of the persons shown in the records of Euroclear, Clearstream, Luxembourg or DTC as the holder of a Note represented by a Global Note must look solely to Euroclear, Clearstream, Luxembourg or DTC (as the case may be) for his share of each payment made by H.M. Treasury to the holder of such Global Note and in relation to all other rights arising under the Global Note, subject to and in accordance with the respective rules and procedures of Euroclear, Clearstream, Luxembourg or DTC (as the case may be). H.M. Treasury expects that, upon receipt of any payment in respect of Notes represented by a Global Note, the common depositary by whom such Note is held, or nominee in whose name it is registered, will immediately credit the relevant participants' or accountholders' accounts in the relevant clearing system with payment in amounts proportionate to their respective beneficial interest in the principal amount of the relevant Global Note as shown on the records of the relevant clearing system or its nominee. H.M. Treasury also expects that payments by Direct Participants in any Clearing System to owners of beneficial interests in any Global Note held through such Direct Participants in any clearing system will be governed by standing instructions and customary practices. Save as aforesaid, such persons shall have no claim directly against H.M. Treasury in respect of payments due on the Notes for so long as the Notes are represented by such Global Note and the obligations of H.M. Treasury will be discharged by payment to the registered holder, as the case may be, of such Global Note in respect of each amount so paid. None of H.M. Treasury, the Trustee or any Agent will have any responsibility or liability for any aspect of the records relating to or payments made on account of ownership interests in any Global Note or for maintaining, supervising or reviewing any records relating to such ownership interests.

**SETTLEMENT AND TRANSFER OF NOTES**

Subject to the rules and procedures of each applicable Clearing System, purchases of Notes held within a Clearing System must be made by or through Direct Participants, which will receive a credit for such Notes on the Clearing System's records. The ownership interest of each actual purchaser of each such Note (the "**Beneficial Owner**") will in turn be recorded on the Direct and Indirect Participant's records. Beneficial Owners will not receive written confirmation from any Clearing System of their purchase, but Beneficial Owners are expected to receive written confirmations providing details of the transaction, as well as periodic statements of their holdings, from the Direct or Indirect Participant through which such Beneficial Owner entered into the transaction. Transfers of ownership interests in Notes held within the Clearing System will be effected by entries made on the books of Participants acting on behalf of Beneficial Owners. Beneficial Owners will not receive certificates representing their ownership interests in such Notes unless, and until, interests in any Global Note held within a Clearing System are exchanged for Definitive Notes.

No Clearing System has knowledge of the actual Beneficial Owners of the Notes held within such Clearing Systems and their records will reflect only the identity of the Direct Participants to whose accounts such Notes are credited, which may or may not be the Beneficial Owners. The Participants will remain responsible for keeping account of their holdings on behalf of their customers. Conveyance of notices and other communications by the Clearing Systems to Direct Participants, by Direct Participants to Indirect Participants, and by Direct Participants and Indirect Participants to Beneficial Owners will be governed by arrangements among them, subject to any statutory or regulatory requirements as may be in effect from time to time.

The laws of some States in the United States require that certain persons take physical delivery in definitive form of securities. Consequently, the ability to transfer interests in a Global Note to such persons may be limited. Because DTC can only act on behalf of Direct Participants, who in turn act on behalf of Indirect Participants, the ability of a person having an interest in a Rule 144A Global Note to

pledge such interest to persons or entities that do not participate in DTC, or otherwise take actions in respect of such interest, may be affected by a lack of a physical certificate in respect of such interest.

**Trading between Euroclear and Clearstream, Luxembourg Participants**

Secondary market sales of book-entry interests in the Notes held through Euroclear or Clearstream, Luxembourg to purchasers of book-entry interests in the Notes held through Euroclear or Clearstream, Luxembourg will be conducted in accordance with the normal rules and operating procedures of Euroclear and Clearstream, Luxembourg and will be settled using the procedures applicable to conventional eurobonds.

**Trading between DTC Participants**

Secondary market sales of book-entry interests in the Notes between DTC participants will occur in the ordinary way in accordance with DTC rules and will be settled using the procedures applicable to United States corporate debt obligations in DTC's Same-Day Funds Settlement ("**SDFS**") system in same-day funds.

**Trading between DTC seller and Euroclear/Clearstream, Luxembourg purchaser**

When book-entry interests in Notes are to be transferred from the account of a DTC participant holding a beneficial interest in a Rule 144A Global Note to the account of a Euroclear or Clearstream, Luxembourg accountholder wishing to purchase a beneficial interest in the Regulation S Global Note (subject to the certification procedures provided or referred to in the Agency Agreement), the DTC participant will deliver instructions for delivery to the relevant Euroclear or Clearstream, Luxembourg accountholder to DTC by 12 noon, New York time, on the settlement date. Separate payment arrangements are required to be made between the DTC participant and the relevant Euroclear or Clearstream, Luxembourg participant. On the settlement date, the custodian of the Rule 144A Global Notes will instruct the Registrar to (i) decrease the amount of Notes registered in the name of Cede & Co, and evidenced by the relevant Rule 144A Global Note and (ii) increase the amount of Notes registered in the name of the nominee of the common depositary for Euroclear and Clearstream, Luxembourg and evidenced by the Regulation S Global Note. Book-entry interests will be delivered free of payment to Euroclear or Clearstream, Luxembourg, as the case may be, for credit to the relevant accountholder on the first business day following the settlement date.

**Trading between Euroclear/Clearstream, Luxembourg seller and DTC purchaser**

When book-entry interests in the Notes are to be transferred from the account of a Euroclear or Clearstream, Luxembourg accountholder to the account of a DTC participant wishing to purchase a beneficial interest in a Rule 144A Global Note (subject to the certification procedures provided or referred to in the Agency Agreement), the Euroclear or Clearstream, Luxembourg participant must send to Euroclear or Clearstream, Luxembourg delivery free of payment instructions, one business day prior to the settlement date by the time specified by the relevant clearing system. Euroclear or Clearstream, Luxembourg, as the case may be, will in turn transmit appropriate instructions to the common depositary for Euroclear and Clearstream, Luxembourg and the Registrar to arrange delivery to the DTC participant on the settlement date. Separate payment arrangements are required to be made between the DTC participant and the relevant Euroclear or Clearstream, Luxembourg accountholder, as the case may be. On the settlement date, the common depositary for Euroclear and Clearstream, Luxembourg will (a) transmit appropriate instructions to the custodian of the Rule 144A Global Notes who will in turn deliver such book-entry interests in the Notes free of payment to the relevant account of the DTC participant and (b) instruct the Registrar to (i) decrease the amount of Notes registered in the name of the nominee of the common depositary for Euroclear and Clearstream, Luxembourg and evidenced by the Regulation S Global Note and (ii) increase the amount of Notes registered in the name of Cede & Co. and evidenced by the relevant Rule 144A Global Note.

Although DTC, Clearstream, Luxembourg and Euroclear have agreed to the foregoing procedures in order to facilitate transfers of beneficial interests in Global Notes among participants and accountholders of DTC, Clearstream, Luxembourg and Euroclear, they are under no obligation to perform or to continue to perform such procedures, and such procedures may be discontinued at any time. None of H.M. Treasury, the Trustee or any Agent will have any responsibility for the performance by DTC, Clearstream, Luxembourg or Euroclear or their respective Direct or Indirect Participants of their respective obligations under the rules and procedures governing their operations.

**Pre-issue Trades Settlement**

It is expected that delivery of Notes will be made against payment therefor on the Closing Date (as defined in the Subscription Agreement) thereof, which could be more than three business days following the date of pricing. Under Rule 15c6-1 of the U.S. Securities and Exchange Commission under the Exchange Act, trades in the United States secondary market generally are required to settle within three business days (T+3), unless the parties to any such trade expressly agree otherwise. Accordingly, purchasers who wish to trade Notes in the United States on the date of pricing or the next succeeding business days until three days prior to the relevant Closing Date will be required, by virtue of the fact the Notes initially will settle beyond T+3, to specify an alternate settlement cycle at the time of any such trade to prevent a failed settlement. Settlement procedures in other countries will vary. Purchasers of Notes may be affected by such local settlement practices and purchasers of Notes who wish to trade Notes between the date of pricing and the relevant Closing Date should consult their own adviser.

## GENERAL INFORMATION

The listing of the Notes on the Official List will be expressed as a percentage of their principal amount (excluding accrued interest). It is expected that such listing of the Notes on the Official List and admission of the Notes to trading on the London Stock Exchange's market for listed securities will be granted on or about 7 July 2003, subject only to the issue of the Global Notes. Prior to official listing and admission to trading, however, dealings will be permitted by the London Stock Exchange in accordance with its rules. Transactions in the Notes will normally be effected for settlement in U.S. dollars for delivery on the third working day after the date of the relevant transaction.

The Notes represented by the Regulation S Global Note have been accepted for clearance through Clearstream, Luxembourg and Euroclear. The CUSIP is G92435NBI, the Common Code is 017174096 and the ISIN is XS0171740961.

The Notes represented by the Rule 144A Global Notes have been accepted for clearance through the facilities of DTC, Clearstream, Luxembourg and Euroclear. The CUSIP is 910768AD2, the Common Code is 017173952 and the ISIN is US910768AD23.

Copies of the following documents will be available for inspection during usual business hours on any weekday (Saturdays and public holidays excepted) at the offices of Freshfields Bruckhaus Deringer, 65 Fleet Street, London EC4Y 1HS during the period of 14 days from 4 July 2003:

(i)   the Subscription Agreement; and

(ii)  drafts (subject to modification) of the Trust Deed (incorporating the forms of Global Notes and the definitive Notes) and the Agency Agreement.

**PRINCIPAL PAYING AGENT**

**The Bank of New York**
One Canada Square
London E14 5AL

**REGISTRAR**

**The Bank of New York**
101 Barclay Street
New York, NY 10286

**TRUSTEE**

**The Law Debenture Trust Corporation p.l.c.**
Fifth Floor
100 Wood Street
London EC2V 7EX

**PAYING AGENTS**

**The Bank of New York**
Avenue des Arts, 35
Kunstlaan
1040 Brussels

**The Bank of New York**
101 Barclay Street
New York, NY 10286

**LEGAL ADVISERS**

*To H.M. Treasury:*

**The Solicitor for the affairs of H.M. Treasury**
1 Horse Guards Road
London SW1A 2HQ

**Freshfields Bruckhaus Deringer**
65 Fleet Street
London EC4Y 1HS

*To the Managers and the Trustee:*

**Linklaters**
One Silk Street
London EC2Y 8HQ

**AUTHORISED ADVISER**

**The Bank of England**
Threadneedle Street
London EC2R 8AH

Printed by Royle Financial Print