UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEBORAH D. PETERSON, *et al.*,

                           Plaintiffs,

            v.

ISLAMIC REPUBLIC OF IRAN; BANK
MARKAZI a/k/a CENTRAL BANK OF IRAN;
BANCA UBAE SpA; CLEARSTREAM
BANKING, S.A.; and JP MORGAN CHASE
BANK, N.A.,

                           Defendants.

13-cv-9195 (LAP)

---

**PLAINTIFFS' ERRATUM TO THEIR LOCAL RULE 56.1 STATEMENT OF
MATERIAL FACTS AND RESPONSE TO BANK MARKAZI'S LOCAL RULE 56.1
STATEMENT OF ADDITIONAL MATERIAL FACTS**

**I.**

**ERRATUM TO PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACT**

Plaintiffs, by their undersigned attorneys, respectfully re-submit herewith paragraph 87 of

their Local Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment

dated August 12, 2020 (ECF # 232) to correct typographical errors, as indicated.  References in

this document in the format "¶___" are to paragraphs in the Declaration of Liviu Vogel executed

on August 12, 2020 (ECF # 233) (with Exhibits 1-81); references to "Reply ¶__" are to

paragraphs in the Reply Declaration of Liviu Vogel executed on October 2, 2020 (filed

contemporaneously herewith, with Exhibits 82-96); references in the format "Ex. ___" are to

Exhibits to Mr. Vogel's two declarations.

| ¶# | UNDISPUTED MATERIAL FACT | EVIDENCE |
|---|---|---|
| 87. | Clearstream has stated that Markazi is the sole owner of the Eurobonds that generated the Bond Proceeds | ¶ 92, Ex. 70<br><br>¶¶ 70, 74, 84 and 93 and Ex. 47, Ex. 48, Ex. 51 at p. 2, Ex. 52 at pp. 2, 4, Ex. 61 at ¶¶ 4, 7-9 |

## II.

## PLAINTIFFS' RESPONSE TO BANK MARKAZI'S LOCAL RULE 56.1 STATEMENT OF ADDITIONAL MATERIAL FACTS

Plaintiffs, by their undersigned attorneys, pursuant to Local Rule 56.1, and without conceding the relevance or materiality of any portion thereof for any purpose, hereby respond to Defendant Bank Markazi's Statement of Additional Material Facts (ECF # 245) as follows:

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 1. | Under Iranian law, Bank Markazi was established as a distinct legal entity separate from the Iranian government with all the attributes of an autonomous juridical person. Kry Decl. Ex. A (Arabieh Aff.) ¶ 13. | Undisputed that Bank Markazi is incorporated under Iranian law.  The Iranian government is its sole shareholder.  Bank Markazi is tightly subject to government economic control, its profits go to the Iranian government, Iranian government officials closely manage Bank Markazi with a hand in the bank's daily affairs, and the government of Iran is the real beneficiary of Bank Markazi's conduct. | Ex. 96 (Clawson Declaration) at ¶¶ 14-66 |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 2. | Bank Markazi has financial and administrative independence from the Iranian government and is not subject to the administrative and management rules and controls applicable to the public sector in Iran.  Kry Decl. Ex. A (Arabieh Aff.) ¶ 14. | Disputed.  Bank Markazi is tightly subject to government economic control, its profits go to the Iranian government, Iranian government officials closely manage Bank Markazi with a hand in the bank's daily affairs, and the government of Iran is the real beneficiary of Bank Markazi's conduct. | Ex. 96 (Clawson Declaration) at ¶¶ 14-66 |
| 3. | Bank Markazi is governed by Iran's generally applicable corporate law. Kry Decl. Ex. A (Arabieh Aff.) ¶ 14. | Disputed.  The evidence cited by Bank Markazi states:  "Bank Markazi is a legal entity that is *sui generis* as a matter of Iranian law but unless where provided in Monetary and Banking Law is bound by ***some of*** the rules and regulations applicable to joint stock companies in Iran."  (Emphasis added).  Bank Markazi is governed by the 1972 Monetary and Banking Law.  Post-revolutionary Iranian laws related to banking do not apply to Bank Markazi. | Ex. 23 (Arabieh Aff.) at ¶ 14; Ex. 96 (Clawson Decl.) at ¶17. |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 4. | As an independent legal entity, Bank Markazi can exercise the usual powers associated with corporations, including the ability to own and sell property in its own name, establish and maintain bank accounts in its own name, and sue and be sued in its own name. Kry Decl. Ex. A (Arabieh Aff.) ¶ 15. | Undisputed, except to note that Bank Markazi does not operate independently of the Iranian government. | Ex. 96 (Clawson Declaration) at ¶¶ 14-66 |
| 5. | Bank Markazi is managed by an Executive Board, a Supervisory Board, and other management organs constituted pursuant to Iranian law.  Kry Decl. Ex. A (Arabieh Aff.) ¶¶ 16-26. | Undisputed, except to note that the various management organs of Bank Markazi are composed of Iranian government ministers, their appointees, and other government officials.  Iranian Presidents and their cabinets routinely dictate Bank Markazi's monetary policy including interest rates; and replace the Bank's most senior executive, its Governor, if he does not follow their instruction. | Ex. 96 (Clawson Declaration) at ¶¶ 19-22, 29-31, 35-38, 46 |
| 6. | Bank Markazi often invests in bonds issued by foreign sovereigns or supranational entities. Kry Decl. Ex. B (Massoumi Aff.) ¶¶ 12-13. | Undisputed | |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 7. | In 1994, Bank Markazi opened an account with Clearstream Banking, N.A., in Luxembourg. Kry Decl. Ex. B (Massoumi Aff.) ¶¶ 15, 19. | Undisputed | |
| 8. | Clearstream dominates the market for so-called "Eurodollar" bonds – debt instruments issued by foreign sovereigns or other entities that have no seat in the United States but which are denominated in U.S. dollars. Kry Decl. Ex. B (Massoumi Aff.) ¶ 17. | Undisputed | |
| 9. | This case involves proceeds from several U.S.-dollar-denominated bonds issued by foreign sovereigns or supranational entities. Vogel Decl. Exs. 53, 72. | Undisputed | |
| 10. | In early 2008, Bank Markazi transferred its securities entitlements to an Italian bank, Banca UBAE SpA, which then held them in its own account at Clearstream in Luxembourg. Kry Decl. Ex. B (Massoumi Aff.) ¶¶ 23-28. | Undisputed, except to clarify that (1) the securities entitlements transferred included Bank Markazi's entitlements to the Eurodollar bonds that produced the approximately $1.68 billion at issue in this litigation; and (2) the transfers were made "free of payment" (that is, with no corresponding incoming payment). | ¶¶ 68, 70, 71 and Ex. 45 (Massoumi Aff.) at ¶¶ 23-26, Ex. 47 at ¶ 3, Ex. 81 at Art. 12 |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 11. | UBAE became the legal owner of those securities entitlements, although Bank Markazi retained an indirect beneficial interest through its own account at UBAE. Kry Decl. Ex. B (Massoumi Aff.) ¶¶ 26, 30; Kry Decl. Ex. C (U.C.C. § 8-112(c) & cmt. 3); Kry Decl. Ex. D (7A William D. Hawkland *et al.*, *Uniform Commercial Code Series* § 8-112:01 (2013)). | Undisputed that Bank Markazi retained beneficial ownership of the securities entitlements that it transferred to the UBAE/Markazi Account free of payment.  The securities entitlements were transferred to the UBAE/Markazi Account in order to evade U.S. sanctions and Iran's judgment creditors.  Whether UBAE is a legal owner of those securities entitlements is a legal question to which no response is required. | ¶¶ 67, 68, 84<br>Ex. 45, (Massoumi Aff.) at ¶¶ 26-30, Ex. 44, Ex. 61 |
| 12. | Clearstream processed interest and principal payments on the bonds at issue in this case through a correspondent account it maintained at JPMorgan in New York. Vogel Decl. Ex. 75. | Undisputed | |
| 13. | Bank Markazi had no control over Clearstream's correspondent bank accounts, no access to Clearstream's correspondent accounts, and no role in managing or operating those correspondent accounts. Massoumi Supp. Decl. ¶ 4. | Undisputed | |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 14. | Bank Markazi had no right to demand that Clearstream use a particular correspondent bank account to process payments on a bond. Massoumi Supp. Decl. ¶¶ 4-5. | Undisputed, except to note that Bank Markazi knew that Clearstream was using a U.S. bank to process the Bond Proceeds. | ¶¶ 66-68, 71 and Ex. 45 (Massoumi Aff.) at ¶¶ 13-19, 22-26, Ex. 81 at Art. 24; Reply at ¶¶ 2-3 and Ex. 82 |
| 15. | When Bank Markazi wanted to purchase a Eurodollar bond, it would approach a financial institution like UBS in Zurich and would discuss matters such as the issuer, the maturity, the coupon rate, the rating, and the price for the nominal amount Bank Markazi intended to buy. Massoumi Supp. Decl. ¶ 5. | Undisputed. | |
| 16. | In its discussions with financial institutions about the purchase of Eurodollar bonds, Bank Markazi would not inquire into the depository where the bonds would be kept or the correspondent banks that would be used to process the principal or interest payments on the bonds. Massoumi Supp. Decl. ¶ 5. | Undisputed, except to note that Bank Markazi had no reason to inquire of a seller of USD-denominated Eurodollar bonds as to which correspondent bank Clearstream would use to process payments because Bank Markazi knew Clearstream would use a U.S. bank. | ¶¶ 66-68, 71 and Ex. 45 (Massoumi Aff.) at ¶¶ 13-19, 22-26, Ex. 81 at Art. 24; Reply at ¶¶ 2-3 and Ex. 82 |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 17. | Clearstream's General Terms and Conditions contain no provisions about how Clearstream will process bond payments for customers or what correspondent banks it might use. Vogel Decl. Ex. 81 art. 20. | Disputed.  Articles 20 and 23 of Clearstream's General Terms and Conditions describe how Clearstream will process payments related to securities entitlements. Clearstream's website reflects that Clearstream only maintains USD correspondent accounts in New York. | ¶¶ 71 and Ex. 81 at Art. 24; Reply at ¶¶ 2-3 and Ex. 82 |
| 18. | Clearstream's General Terms and Conditions give no control to customers over how it will process their bond payments. Vogel Decl. Ex. 81 art. 20. | Disputed.  Clearstream's General Terms and Conditions allow customers to give Clearstream instructions including payment instructions.  Bank Markazi controlled the decisions to invest in USD-denominated Eurodollar bonds and to continue to hold such bonds after U.S. sanctions precluded Clearstream from providing Markazi with indirect access to U.S. banks. | ¶ 68 and Ex. 45 (Massoumi Aff.) at ¶¶ 12-26<br><br>Ex. 64, 65<br><br>Kaminetzky Decl., Ex. E at Art. 6 |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 19. | While certain bond prospectuses indicate that issuers may make principal or interest payments *from* a U.S. bank, they do not dictate how a securities intermediary like Clearstream processes those payments. Vogel Decl. Ex. 64 § 5(a), Ex. 65 at 4. | Disputed.  The bond prospectuses stipulated that "payments of principal [and interest] shall be made  . . . at the Specified Office of any Paying Agent outside the United States by U.S. dollar cheque drawn on, or by transfer to a U.S. dollar account maintained by the payee with, a bank in New York City." | ¶¶ 89, 90 and Ex. 64 at ¶ 5(a), Ex. 65 at ¶¶ 5(a) and (b); Reply ¶ 4 |
| 20. | U.S.-dollar-denominated transactions need not clear through a United States bank; they can be processed through correspondent banks elsewhere in the world. *See Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013); *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 724-25, 733 (S.D.N.Y. 2010). | No response to this statement is required because Bank Markazi cites only inadmissible hearsay in support.  *See* Fed. R. Evid. 801. Bank Markazi knew that Clearstream used U.S. banks to process the Bond Proceeds. | |
| 21. | Plaintiffs' counsel drafted Section 502 of the Iran Threat Reduction and Syria Human Rights Act of 2012, Pub. L. No. 112-158, 126 Stat. 1214 (codified as amended at 22 U.S.C. § 8772). Kry Decl. Ex. E. | No response to this statement is required because Bank Markazi cites only inadmissible hearsay in support.  *See* Fed. R. Evid. 801. | |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 22. | Plaintiffs' counsel and their lobbyists lobbied Congress to enact Section 502 of the Iran Threat Reduction and Syria Human Rights Act of 2012, Pub. L. No. 112-158, 126 Stat. 1214 (codified as amended at 22 U.S.C. § 8772). Kry Decl. Exs. E, F, G. | No response to this statement is required because Bank Markazi cites only inadmissible hearsay in support. *See* Fed. R. Evid. 801. | |
| 23. | Plaintiffs' counsel have drafted other legislation to facilitate terrorism claims against foreign sovereigns. Kry Decl. Ex. G. | No response to this statement is required because Bank Markazi cites only inadmissible hearsay in support. *See* Fed. R. Evid. 801. | |
| 24. | Plaintiffs' counsel and their lobbyists have lobbied Congress to enact other legislation to facilitate terrorism claims against foreign sovereigns. Kry Decl. Exs. G, H. | No response to this statement is required because Bank Markazi cites only inadmissible hearsay in support. *See* Fed. R. Evid. 801. | |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 25. | Given their history of drafting and lobbying for other legislation to facilitate terrorism claims against foreign sovereigns, it is reasonable to infer that plaintiffs' counsel and their lobbyists drafted and/or lobbied Congress to enact Section 1226 of the National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, 133 Stat. 1198 (2019) (amending 22 U.S.C. § 8772). Kry Decl. Exs. E, F, G, H. | No response to this statement is required because (1) it is not a statement of fact, and (2) Bank Markazi cites only inadmissible hearsay in support. *See* Fed. R. Evid. 801. | |
| 26. | On January 14, 2016, a group of 102 plaintiffs including Tara Bane and Fiona Havlish tried to attach the assets at issue in Luxembourg. Gaicio Decl. ¶ 2 & Ex. A. | Undisputed. | |
| 27. | On April 1, 2020, the Luxembourg Court of Appeal vacated the Bane/Havlish restraints on the basis of a Luxembourg statute that prohibits attachment of assets held by a financial clearing agency like Clearstream. Gaicio Decl. ¶ 2 & Ex. A. | Undisputed. | |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 28. | On March 22, 2017, Stephen Flatow tried to attach the assets at issue in Luxembourg. Gaicio Decl. ¶ 3 & Ex. B. | Undisputed. | |
| 29. | On July 10, 2019, the Luxembourg Court of Appeal rejected Flatow's attachment on the basis of the same statute. Gaicio Decl. ¶ 3 & Ex. B. | Undisputed. | |
| 30. | On March 22, 2017, Arline Duker and Leonard Eisenfeld tried to attach the assets at issue in this proceeding in Luxembourg. Gaicio Decl. ¶ 4 & Ex. C. | Undisputed. | |
| 31. | On July 10, 2019, the Luxembourg Court of Appeal rejected the Duker and Eisenfeld attachment on the basis of the same statute. Gaicio Decl. ¶ 4 & Ex. C. | Undisputed. | |
| 32. | On December 18, 2019, Stephen Flatow served another attachment in Luxembourg. Gaicio Decl. ¶ 5 & Ex. D. | Undisputed. | |
| 33. | On June 30, 2020, a Luxembourg court rejected Flatow's second attachment on the basis of the same statute. Gaicio Decl. ¶ 5 & Ex. D. | Undisputed. | |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 34. | On March 27, 2020, a group of 201 plaintiffs including Alice Hoglan tried to attach the assets at issue in this proceeding in Luxembourg. Gaicio Decl. ¶ 6 & Ex. E. | Undisputed. | |
| 35. | On May 13, 2020, a Luxembourg court rejected the Hoglan plaintiffs' attachment on the basis of the same statute. Gaicio Decl. ¶ 6 & Ex. E. | Undisputed. | |
| 36. | On March 22, 2016, the 102 Bane/Havlish plaintiffs brought a proceeding in Luxembourg to recognize a terrorism judgment they obtained in the United states against Iran and various agencies or instrumentalities, including Bank Markazi. Gaicio Decl. ¶ 7 & Ex. F. | Undisputed. | |
| 37. | On March 27, 2019, a Luxembourg court refused to recognize the Bane/Havlish plaintiffs' judgment, concluding that Bank Markazi was entitled to sovereign immunity. Gaicio Decl. ¶ 7 & Ex. F. | Undisputed. | |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 38. | After Congress enacted the 2020 NDAA, Bank Markazi brought a declaratory action against Clearstream in March 2020 seeking an order prohibiting Clearstream from complying with an order directing it to transfer the Luxembourg assets to the United States without first obtaining recognition of that order in Luxembourg. Gaicio Decl. ¶ 8. | Undisputed. | |
| 39. | The initial declaratory action related only to the Peterson plaintiffs in this case. Gaicio Decl. ¶ 8. | Undisputed, except to clarify that (1) the "initial declaratory action" referenced in this paragraph is the action referenced in paragraph 38 above and in paragraphs 8 and 9 of Plaintiffs' Statement of Material Fact; and (2) that action remains pending before the Luxembourg District Court which has scheduled a hearing on November 26, 2020. | Ex. 95 (Moyse Decl.) at ¶ 13. |

| ¶# | MARKAZI'S STATEMENT and EVIDENCE CITATION | PLAINTIFFS' RESPONSE | PLAINTIFFS' EVIDENCE |
|---|---|---|---|
| 40. | After learning that the Havlish and Hoglan plaintiffs had obtained their own writs of execution against the same assets, Bank Markazi brought a second declaratory action in June 2020, which was similar to the first one but applied to other cases as well.  Gaicio Decl. ¶ 9. | Undisputed. | |

Dated:  October 2, 2020

Respectfully submitted,

_____/s/ Liviu Vogel_____
Liviu Vogel (LVogel@salonmarrow.com)
SALON MARROW DYCKMAN NEWMAN
    & BROUDY LLC
10 East 40th Street
New York, New York 10016
(646) 843-1909

FLEISCHMAN BONNER & ROCCO LLP
James P. Bonner (jbonner@fbrllp.com)
Patrick L. Rocco (procco@fbrllp.com)
Susan M. Davies (sdavies@fbrllp.com)
81 Main Street, Suite 515
White Plains, New York 10601
(908) 516-2066

*Counsel for Plaintiffs*