# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

DEBORAH D. PETERSON, Personal
Representative of the Estate of James C. Knipple
(Dec.), *et al.*,

                    Plaintiffs,

      v.

ISLAMIC REPUBLIC OF IRAN; BANK
MARKAZI a/k/a CENTRAL BANK OF IRAN;
BANCA UBAE SpA; CLEARSTREAM
BANKING, S.A.; and JP MORGAN CHASE
BANK, N.A.,

                  Defendants.

13-cv-9195 (LAP)

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO BANCA UBAE S.P.A.'S MOTION TO DISMISS

SALON MARROW DYCKMAN NEWMAN
   & BROUDY LLC
Liviu Vogel (lvogel@salonmarrow.com)
10 East 40th Street
New York, New York 10016
(646) 843-1909

FLEISCHMAN BONNER & ROCCO LLP
James P. Bonner (jbonner@fbrllp.com)
Patrick L. Rocco (procco@fbrllp.com)
Susan M. Davies (sdavies@fbrllp.com)
81 Main Street, Suite 515
White Plains, New York 10601
(914) 278-5100

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

THE RELEVANT FACTS .............................................................................................. 1

ARGUMENT ................................................................................................................. 6

THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER UBAE........................... 6

A.   The Operative Pleading Standard ...................................................................... 6

B.   The Circumstances That Permit Courts
     to Exercise Specific Personal Jurisdiction ......................................................... 7

C.   The Court May Exercise Personal Jurisdiction Over UBAE
     Pursuant to CPLR § 302(a)(1) Because UBAE Conducted
     Business in New York Through Its Agent, Clearstream,
     and Plaintiffs' Claims Relate to That Conduct ................................................... 7

     1.   The CPLR § 302(a) Jurisdictional Requirements ........................................ 7

     2.   UBAE Transacted Business in New York
          Through Its Agent and Co-Conspirator, Clearstream ................................. 9

     3.   Plaintiffs' Claims Arise From the Substantial Activity That
          Clearstream Undertook in New York at UBAE's Direction ...................... 13

D.   No Due Process Obstacle Exists to
     Exercising Personal Jurisdiction Over UBAE ................................................... 17

CONCLUSION............................................................................................................ 20

TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*A.I. Trade Fin., Inc. v. Petra Bank*,
   989 F.2d 76 (2d Cir. 1993) ........................................................................ 7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   305 F.3d 120 (2d Cir. 2002) .............................................................. 17, 19

*Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*,
   821 F.3d 297 (2d Cir. 2016) .................................................................... 9

*Berry v. Wells Fargo Bank, N.A.*,
   865 F.3d 880 (7th Cir. 2017) ................................................................. 10

*Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*,
   90 F. Supp. 2d 431 (S.D.N.Y. Mar. 31, 2000) ............................... 11

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
   137 S. Ct. 1773 (2017)............................................................... 14, 15, 16

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .......................................................................... 18, 19

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018) ........................................... 11, 12, 18, 19

*Chew v. Dietrich*,
   143 F.3d 24 (2d Cir. 1998) .................................................................... 19

*Chloé v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010) ............................................... 6, 14, 17, 18

*CIBC Mellon Trust Co. v. HSBC Guyerzeller Bank AG*,
   56 A.D.3d 307 (1st Dep't 2008) .......................................................... 11

*Contant v. Bank of Am. Corp.*,
   385 F. Supp. 3d 284 (S.D.N.Y. 2019) ............................................... 12

*CutCo Indus. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986) .................................................................. 8

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................... 20

*Dixon v. Mack*,
   507 F. Supp. 345 (S.D.N.Y. 1980) .................................................... 12

*Doane v. Espy*,
   26 F.3d 783 (7th Cir. 1994) ................................................................. 10

*Eades v. Kennedy, PC Law Offices*,
  799 F.3d 161 (2d Cir. 2015) ...................................................................... 8, 14

*Fertilizantes Fosfatados Mexicanos, S.A. v. Chen*,
  1992 U.S. Dist. LEXIS 12277 (S.D.N.Y. July 22, 1992) ................................ 17

*Gahagan v. United States Citizenship & Immigration Servs.*,
  911 F.3d 298 (5th Cir. 2018) ......................................................................... 12

*Golden Ring Int'l, Inc. v. Cullen*,
  2019 U.S. Dist. LEXIS 144444 (N.D.N.Y. Aug. 26, 2019) ........................... 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ......................................................................................... 7

*HSH Nordbank AG New York Branch v. Street*,
  2012 U.S. Dist. LEXIS 99830 (S.D.N.Y. Jul. 18, 2012) ................................ 11

*In re European Gov't Bonds Antitrust Litig.*,
  2020 U.S. Dist. LEXIS 130724 (S.D.N.Y. July 23, 2020) ............................. 15

*Kirschner v. KPMG LLP*,
  15 N.Y.3d 446 (2010) ...................................................................................... 9

*Kreuter v. McFadden Oil Corp.*,
  71 N.Y.2d 460 (1988) ................................................................................. 8, 11

*Kronisch v. United States*,
  150 F.3d 112 (2d Cir. 1998) ........................................................................... 16

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
  26 F. Supp. 2d 593 (S.D.N.Y. 1998) .............................................................. 12

*Lehigh Valley Indus., Inc. v. Birenbaum*,
  527 F.2d 87 (2d Cir. 1975) ............................................................................. 12

*Licci v Lebanese Can. Bank, SAL*,
  20 N.Y.3d 327 (2012) ................................................................. 8, 13, 14, 15, 16

*Licci v. Lebanese Canadian Bank*,
  732 F.3d 161 (2d Cir. 2013) ................................................................. *passim*

*Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012) ............................................................... 6, 7, 8, 17

*Lyman Commerce Solutions, Inc. v. Lung*,
  2013 U.S. Dist. LEXIS 124689 (S.D.N.Y. Aug. 30, 2013) ........................... 17

*N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*,
  266 F.3d 112 (2d Cir. 2001) ........................................................................ 9, 10

*Norvel Ltd. v. Ulstein Propeller AS*,
    161 F. Supp. 2d 190 (S.D.N.Y. 2001) ............................................................. 16

*Ochoa v. J.B. Martin & Sons Farms*,
    287 F.3d 1182 (9th Cir. 2002) .................................................................... 18

*Pearson Educ. v. ABC Books LLC*,
    2020 U.S. Dist. LEXIS 117040 (S.D.N.Y. June 30, 2020) ............................. 15

*Pearson v. McGraw*,
    308 U.S. 313 (1939) .................................................................................. 10

*Peterson v. Islamic Republic of Iran*,
    2013 U.S. Dist. LEXIS 40470 (S.D.N.Y. Mar. 13, 2013) .......................... 4, 10

*Peterson v. Islamic Republic of Iran*,
    2013 U.S. Dist. LEXIS 73852 (S.D.N.Y. May 20, 2013) .......................... 4, 13

*Rich v. Fox News Network LLC*,
    2020 U.S. Dist. LEXIS 170811 (S.D.N.Y. Sep. 15, 2020) ............................ 15

*Tarsavage v. Citic Trust Co.*,
    3 F. Supp. 3d 137 (S.D.N.Y. 2014) .............................................................. 12

*U.S. Bank Nat'l Ass'n v. Bank of Am. Nat'l Ass'n*,
    916 F.3d 143 (2d Cir. 2019) .................................................................. 17, 18

*United States v. Garcia*,
    291 F.3d 127 (2d Cir. 2002) ...................................................................... 13

*Walden v. Fiore*,
    571 U.S. 277 (2014)........................................................................ 14, 15, 20

*Waldman v. Palestine Liberation Auth.*,
    835 F.3d 317 (2d Cir. 2016) ................................................................. 14, 20

**Statutes & Regulations**

22 U.S.C. § 8772 ....................................................................................... 19, 20

28 U.S.C. § 1605(a)(7) .................................................................................. 19

28 U.S.C. § 1605A ........................................................................................ 19

Terrorism Risk Insurance Act of 2001,
    Pub. L.  No. 107-297 (H.R. 3210) § 201
    (codified as 28 U.S.C. § 1610 (note)) .......................................................... 19

N.Y. CPLR § 302(a)(1) ............................................................................ *passim*

N.Y. CPLR § 302(a)(2) .................................................................................. 11

N.Y. CPLR § 302(a)(3)(ii) ................................................................. 16

N.Y. CPLR § 5222 ............................................................................ 4

N.Y. CPLR § 5225 ............................................................................ 6

N.Y. CPLR § 5227 ............................................................................ 6

N.Y. Debtor & Creditor Law § 273-a,
    *repealed by* Ch. 580, 2019 N.Y. Laws 580 ................................ 5, 17

N.Y. Debtor & Creditor Law § 276,
    *repealed by* Ch. 580, 2019 N.Y. Laws 580 ................................ 5, 17

N.Y. UCC § 8-112 ............................................................................ 6

N.Y. UCC § 8-503 ............................................................................ 5

N.Y. UCC § 8-504 ............................................................................ 4

N.Y. UCC § 8-505 ....................................................................... 3, 4, 9

N.Y. UCC § 8-506 ............................................................................ 3

N.Y. UCC § 8-507 ............................................................................ 3

Iranian Transaction Regulations,
    31 C.F.R. § 560.204(a) (2008) ......................................................... 5

Plaintiffs Deborah Peterson *et al*. respectfully submit this memorandum of law in opposition to the motion to dismiss of Defendant Banca UBAE S.p.A.

## PRELIMINARY STATEMENT

UBAE's motion hinges on two untenable assertions: (a) the actions of its fellow defendant and co-conspirator, Clearstream Banking, S.A., are not attributable to UBAE for personal jurisdiction purposes; and (b) courts may exercise jurisdiction only when defendants cause plaintiffs injury in the forum.  The first contention disregards the existence of the conspiracy in which defendants UBAE, Clearstream and Bank Markazi (collectively, "Defendants") engaged.  It also ignores Clearstream's role as UBAE's agent for the purposes of collecting the interest and principal payments (the "Bond Proceeds") belonging to Markazi that are the subject of this turnover action.

Although collecting the Bond Proceeds for Markazi was the most essential task UBAE had to perform, UBAE could not fulfill that obligation without Clearstream's assistance.  As a result, well-established agency and conspiracy principles render the substantial New York-based activity in which Clearstream engaged at UBAE's direction attributable to UBAE.  That conduct—collecting $1.68 billion in Bond Proceeds over the course of four years—provides an adequate basis for personal jurisdiction under CPLR § 302(a)(1)'s "permissive" standards and the constitutional "minimum contacts" test.

The "in-forum injury" rule on which UBAE bases its due process arguments finds no support in the text of the opinions it cites.  Indeed, courts have continually recognized that *any* in-forum conduct can provide a sufficient basis for personal jurisdiction, irrespective of where the plaintiff suffered injury.  As a result, the Court should deny UBAE's motion in all respects.

## THE RELEVANT FACTS

Beginning in 2007, Plaintiffs secured $3.8 billion in judgments against Iran and Iran's Ministry of Information and Security related to the Iranian-sponsored October 1983 terrorist

attack upon the barracks of the peacekeeping force stationed in Beirut, Lebanon.  ¶¶ 1, 24, 39-45; Decl. ¶¶ 4-15; Exs. 1-10.[1]  Plaintiffs have worked diligently to find Iranian assets against which to enforce their judgments, but billions of dollars remain uncollected because of Iran's determined efforts to evade its payment obligations.  Decl. ¶¶ 4, 65, 81-83.

Markazi is Iran's central bank.  ¶¶ 28; Decl. ¶ 28; Ex. 23 at ¶¶ 1, 8.  Clearstream, which is headquartered in Luxembourg, is one of the world's largest securities depositories and settlement firms.  ¶ 36; Decl. ¶¶ 33-34, 36-38; Exs. 27, 28, 30-32.  UBAE is a small Italian bank primarily engaged in trade finance.  ¶ 32; Decl. ¶ 63; Ex. 80.

Pursuant to the terms of the account agreement that Clearstream entered with Markazi in 1994 (the "Markazi Account Agreement"), Clearstream functioned as Markazi's "securities intermediary."  Ex. 45 at ¶ 19; Opp. Exs. 98 and 99.  Securities intermediaries are integral players in the system of indirect holding of securities adopted by the Uniform Commercial Code and similar legal systems operative in other countries.  Decl. ¶ 88; Ex. 76; *see* New York Uniform Commercial Code ("UCC"), Article 8.  In this system, multiple intermediaries often participate in collecting interest, principal and sales proceeds for the beneficial owners of securities like the bonds that produced the Bond Proceeds (the "Markazi Bonds").  ¶ 56; Decl. ¶ 89; Exs. 64, 65, 76.

Under the UCC and similar provisions of Luxembourg law, each securities intermediary

---

[1]  Plaintiffs employ the following abbreviations.  "¶ __" refers to paragraphs of Plaintiffs' Amended Complaint (ECF #104); "Decl. ¶ __" refers to paragraphs in the Declaration of Liviu Vogel, executed on August 12, 2020 (ECF #233); "Ex. __" refers to Exhibits to the Decl.; "Reply Decl. ¶ __" refers to paragraphs in the Reply Declaration of Liviu Vogel, executed on October 2, 2020 (ECF #261); "Reply Ex. __" refers to Exhibits to the Reply Decl.; "Opp. Decl. ¶ __" refers to paragraphs in the Declaration of Liviu Vogel in Opposition to Banca UBAE S.p.A. Motion to Dismiss, executed on October 13, 2020; "Opp. Ex. __" refers to Exhibits to Opp. Decl.  The Amended Complaint is Opp. Ex. 97.

must follow the instructions of the securities "entitlement holder" immediately below it in the chain.  Ex. 76 at p.7; UCC §§ 8-505 through 8-508.  The beneficial owner of a securities entitlement communicates its purchase, sale and payment instructions to its immediate intermediary, which must then relay that information to any "upper-tier" intermediary that plays a role in implementing those instructions.  UCC §§ 8-505 and 8-507; Ex. 76 at p.7.  The UCC and Luxembourg law obligate a securities intermediary like Clearstream to collect all payments from securities issuers and to credit those payments to its immediate entitlement holder, whether that entitlement holder is itself a securities intermediary or the beneficial owner of the security.  UCC §§ 8-505, 8-506; Ex. 76 at pp. 6-7, Reply Exs. 89, 91.

UBAE's role in connection with the Markazi Bonds arose only after the U.S. Department of Treasury's Office of Foreign Asset Control ("OFAC") requested, in 2007, that Clearstream stop providing Markazi with access to U.S. financial markets.  ¶¶ 128, 151, 159; Decl. ¶ 67; Ex. 45 at ¶¶ 5, 22-26.  That request arose from the government's decision to augment sanctions related to Iran's nuclear proliferation and sponsorship of terrorism.  ¶¶ 153-57.  Rather than comply with that request, Clearstream and Markazi enlisted UBAE to assist in a scheme designed to continue Markazi's access to the U.S. dollars ("USD") Markazi required to facilitate Iran's participation in the international economy.  Decl. at ¶ 63; Ex. 45 at ¶¶ 11, 22-25; Ex. 80.

Pursuant to that scheme, in 2008, UBAE opened an account at Clearstream "to hold the interests of third parties"—that is, to act as a securities intermediary (the "UBAE/Markazi Account").  ¶¶ 169-171; Decl. ¶ 69; Ex. 46 at 32-33.  UBAE had never before maintained such an account at Clearstream.  ¶¶ 171; Decl. ¶ 69; Ex. 46 at 32.  The Clearstream General Terms and Conditions governing the UBAE/Markazi Account mirrored the Markazi Account Agreement's terms.  Decl. ¶ 71; Ex. 41.  UBAE then opened a securities custody account on its

3

books in Markazi's name.  Decl. ¶¶ 69-70; Ex. 46 at ¶¶ 23-25; Ex. 49.  UBAE simply adopted

Clearstream's General Terms and Conditions to govern that account.  For its "services" as

intermediary, UBAE charged Markazi a 10% mark-up on Clearstream's fees.  Decl. ¶ 71; Ex. 49.

Markazi and UBAE instructed Clearstream to transfer all the assets held in Markazi's

Clearstream account to the UBAE/Markazi Account "free of payment."  ¶¶ 173-175; Decl. ¶ 70;

Exs. 47, 48.  Neither Clearstream nor Markazi had any legitimate business need for UBAE to

serve as an intermediary.  ¶¶ 12, 184.  The Defendants took these steps solely to disguise

Markazi's beneficial ownership of the transferred assets.  ¶ 184; Decl. ¶ 72, Ex. 45 at ¶¶ 12-13,

20-22.[2]

In practice, Clearstream's collection of payments related to the Markazi Bonds proceeded

much as it had before the creation of the UBAE/Markazi Account, except that those payments

were collected pursuant to UBAE's instructions to Clearstream on behalf of Markazi.  ¶¶ 141,

174-179; Decl. ¶ 70.  Consistent with the terms of the UBAE/Markazi Account Agreement and

the terms of the Markazi Bonds, all Bond Proceeds payments passed from the bonds' paying

agents, through the U.S. Federal Reserve system, to a USD "correspondent" account Clearstream

maintained at JPMorgan in New York (the "NY Account").  ¶¶ 56-58, 141; Decl. ¶¶ 70, 86, 88-

89; Exs. 48, 64; Reply Decl. ¶¶ 3-4.  Under the UBAE/Markazi Account Agreement, the UCC

and Luxembourg law, Clearstream was obligated to collect and credit those payments to UBAE.

¶ 62; Decl. ¶ 71; Ex. 81 at Art. 20; UCC §§ 8-504, 8-505.

Shortly after Defendants established the UBAE/Markazi Account, certain Plaintiffs

---

[2] *Peterson v. Islamic Republic of Iran*, 2013 U.S. Dist. LEXIS 40470, at *133-34 (S.D.N.Y. Mar. 13, 2013), *reconsideration denied*, 2013 U.S. Dist. LEXIS 73852 (S.D.N.Y. May 20, 2013), *aff'd*, 758 F.3d 185 (2d Cir. 2014), *aff'd, Bank Markazi v. Peterson*, 136 S. Ct. 1310 (2016).

served Clearstream with restraining notices pursuant to CPLR § 5222 (the "Restraints"). The Restraints barred Clearstream from, among other things, engaging in any "interference" with respect to any property in which Markazi held "an interest" that came into Clearstream's possession. ¶¶ 51-53; Decl. ¶ 75; Ex. 54. Under the UCC and similar provisions of Luxembourg law, Markazi maintained an interest in all payments related to the Markazi Bonds at each level of securities intermediary involved in collecting those proceeds. ¶ 62; Decl. ¶ 92; Reply Exs. 89, 91; UCC § 8-503. Even before the Restraints issued, OFAC had adopted Iranian Transaction Regulations ("ITRs") that, among other prohibitions, barred Clearstream from providing any service for Markazi in the U.S. 31 C.F.R. 560.204(a) (2008); ¶¶ 55; *see* Decl. ¶ 84; Ex. 61.

Even after Clearstream received the Restraints, and notwithstanding the ITRs, Clearstream continued to use the NY Account to collect the Bond Proceeds. ¶ 141; Decl. ¶ 74; Ex. 51. Between July 8, 2008 and October 15, 2012, Clearstream collected 62 Bond Proceeds payments totaling $1.68 billion in the NY Account pursuant to the instructions that UBAE relayed to Clearstream on behalf of Markazi. ¶¶ 61-66, 141 and Exhibit D to Amended Complaint; Decl. ¶¶ 78, 90; Exs. 53, 56, 66. Clearstream was not so bold as to deposit those payments in the UBAE/Markazi Account. Instead, Clearstream credited the payments to a blocked account it maintained for the benefit of UBAE and Markazi in Luxembourg (the "Blocked Account"). ¶¶ 55, 61, 144; Decl. ¶¶ 76-77; Ex. 29 at ¶¶ 12-13, Ex. 55.

Based on these facts, Plaintiffs assert fraudulent conveyance claims against UBAE under §§ 276 and 273-a of the N.Y. Debtor & Creditor Law to reverse the transfers of the Markazi Bonds from Markazi's account at Clearstream to the UBAE/Markazi Account. ¶¶ 231-58.[3]

---

[3] Sections 273-a and 276 of the N.Y. Debtor & Creditor Law were repealed on December 6, 2019 but continue to apply to transfers made and obligations incurred on or before April 4, 2020.

Those claims would eliminate any defenses that Defendants assert based upon UBAE's purported status as the "owner" of the Bond Proceeds or as the only proper garnishee in an action to collect those assets. *See* ECF #252 at 34-38 (Clearstream's argument that UBAE owns the Bond Proceeds); UCC § 8-112(c) and (e) (in the typical garnishee proceeding involving securities entitlements, judgment creditors normally collect from the intermediary holding the debtor's account, subject to the exception § 8-112(e) provides).

To address the same purported defenses, Plaintiffs also assert claims against UBAE for turnover pursuant to CPLR § 5225 and § 5227. ¶¶ 259-67. Similarly, Plaintiffs allege a claim for injunctive relief that arises from the Court's equitable powers under UCC § 8-112(e), which empowers courts to facilitate collections of securities entitlements or proceeds where "property cannot readily be reached by other legal process." ¶¶ 283-91.

<u>ARGUMENT</u>

THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER UBAE

**A.     The Operative Pleading Standard**

Because UBAE has filed its motion before the completion of jurisdictional discovery, Plaintiffs need only "'make a prima facie showing that jurisdiction exists.'" *Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 59 (2d Cir. 2012) ("*Licci I*") (citation omitted); Opp. Decl. ¶ 8. In other words, Plaintiffs must only make "'an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *Chloé v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 163 (2d Cir. 2010)).

In considering a jurisdictional motion to dismiss, the Court must "'constru[e] all pleadings and affidavits in the light most favorable to the plaintiff[s] and resolv[e] all doubts in

---

*See* Ch. 580, 2019 N.Y. Laws 580, LEXIS 2019 N.Y. ALS 580. *See* Opp. Decl. ¶¶ 3-4.

the plaintiff[s'] favor.'"  *Id.* (citation omitted).  That permissive standard controls despite efforts

by the moving defendant to controvert the plaintiffs' allegations with factual submissions.  *See,*

*e.g., A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

**B.     The Circumstances That Permit Courts to Exercise Specific Personal Jurisdiction**

Plaintiffs' claims require the Court to exercise "specific" personal jurisdiction over

UBAE.  Specific jurisdiction "'depends on an affiliation between the forum and the underlying

controversy, principally, activity or an occurrence that takes place in the forum State and is

therefore subject to the State's regulation.'"  *Licci I*, 673 F.3d at 60 n.9 (quoting *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Federal courts may exercise

specific personal jurisdiction where: (1) the defendant was properly served; (2) a federal or state

law statutory basis for jurisdiction exists; and (3) exercising personal jurisdiction comports with

constitutional due process.  *Licci I,* 673 F.3d at 59-60.

**C.     The Court May Exercise Personal Jurisdiction Over UBAE Pursuant**
**        to CPLR § 302(a)(1) Because UBAE Conducted Business in New York**
**        Through Its Agent, Clearstream, and Plaintiffs' Claims Relate to That Conduct**

**1.     The CPLR § 302(a)(1) Jurisdictional Requirements**

New York's "long-arm" statute, CPLR § 302, provides the requisite statutory basis for

exercising personal jurisdiction over UBAE.  To assess whether personal jurisdiction exists

under § 302(a)(1), courts "first consider whether the requirements of the statute have been

satisfied before proceeding to address whether the exercise of jurisdiction would comport with

the Due Process Clause."  *Licci I,* 673 F.3d at 61.

Courts may exercise jurisdiction under § 302(a)(1) when a defendant, "in person or

through an agent, . . . transacts any business within the state or contracts anywhere to supply

goods or services in the state" and the plaintiff's cause of action arises from that activity.  CPLR

§ 302(a)(1); *see, e.g., Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 166, 168-69 (2d Cir. 2013) ("*Licci III*").  Where plaintiffs seek to establish personal jurisdiction by citing the actions of a defendant's agent, the "[p]laintiff need not establish a formal agency relationship." *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467 (1988); *accord, e.g., CutCo Indus. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986).  Rather, the plaintiff "need only convince the court that [defendant's agent] engaged in purposeful activities in this State in relation to [plaintiff's] transaction for the benefit of and with the knowledge and consent of the [nondomiciliary] defendant[]." *Kreutter*, 71 N.Y.2d at 467; *accord, e.g., CutCo*, 806 F.2d at 366.

The § 302(a)(1) "transact business" requirement is satisfied where a defendant "purposefully avail[ed] itself of the privilege of conducting activities within New York … thereby invoking the benefits and protections of its laws." *Licci I,* 673 F.3d at 61 (quotation omitted).  Conduct satisfies the § 302(a)(1) "arising from" or "nexus" requirement where "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Id.* at 66 (quotation omitted).  The nexus inquiry "is relatively permissive" and "causation is not required." *Licci v Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 339 (2012) ("*Licci II*") (citation omitted).  Plaintiffs need only demonstrate that their claims are not "completely unmoored from" the relevant transactions. *Id.*

Courts refer to § 302 as a "single act statute" because defendants need only engage in one transaction in New York, or supply goods or services in New York on one occasion, to provide a sufficient basis for jurisdiction. *E.g., Kreutter,* 71 N.Y.2d at 467; *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).  In assessing whether allegations satisfy § 302(a)(1)'s requirements, courts consider "the totality of all defendant's contacts with the forum state." *CutCo*, 806 F.2d at 365; *accord, e.g., Licci I*, 673 F.3d at 62 (even where no single act suffices to

8

support jurisdiction, "an ongoing course of conduct or relationship in the state may").

### 2.  UBAE Transacted Business in New York Through Its Agent and Co-Conspirator, Clearstream

UBAE's arguments that it did not transact business in New York disregard fundamental agency law principles that render the substantial conduct in which Clearstream engaged in this State attributable to UBAE.  "New York common law provides that an agency relationship 'results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act.'"  *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 122 (2d Cir. 2001) (citation omitted).  Moreover, "'a fundamental principle that has informed the law of agency and corporations for centuries' is that 'the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals.'"  *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 318 (2d Cir. 2016) (quoting *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010)).

UBAE consented by means of the UBAE/Markazi Account Agreement and by operation of law to have Clearstream act on behalf of UBAE by collecting the $1.68 billion in Bond Proceeds in the NY Account.  ¶¶ 62, 64-66, 141-43; Decl. ¶ 91; Ex. 29 at 2; Opp. Decl. ¶¶ 5-7; Opp. Exs. 98, 100.  Both the UBAE/Markazi Account Agreement and the provisions of the UCC and Luxembourg law mandated that Clearstream follow UBAE's payment instructions concerning those assets.  Decl. ¶ 71; Ex. 81 at Arts. 20, 21; UCC §§ 8-505 – 8-508.  In addition, the terms of the UBAE/Markazi Account Agreement, the relevant provisions of the UCC and Luxembourg law, and Clearstream's adherence to the payment instructions UBAE delivered on behalf of Markazi all evidence Clearstream's consent to act on UBAE's behalf in New York.

¶¶ 141, 168-83; Decl. ¶ 70; Exs. 47, 48.

Those allegations easily suffice to establish that Clearstream acted as UBAE's agent. *See, e.g., Peterson*, 2013 U.S. Dist. LEXIS 40470, at *83 (§ 302(a)(1) jurisdiction existed because, "[e]ven if UBAE itself was not transacting business in New York, its agents most certainly were"); *N.Y. Marine,* 266 F.3d at 122.  In fact, courts have consistently held that parties that follow other companies' instructions to collect payments qualify as agents.[4]

UBAE mistakenly asserts that it lacks responsibility for Clearstream's New York conduct because Clearstream has deprived UBAE of access to the Bond Proceeds by crediting those funds to the Blocked Account.  This argument ignores that UBAE delivered the instructions to collect the Bond Proceeds in the first place after the Markazi Bonds were transferred to the UBAE/Markazi Account.  ¶¶ 129, 132-34, 141, 143; Decl. ¶ 70.  Because of the Restraints and the ITRs, Clearstream refused to follow the ultimate step of UBAE's instructions—crediting the Bond Proceeds to the UBAE/Markazi Account.  ¶¶ 144-45; Decl. ¶¶ 76-78.  Clearstream's unwillingness to take that final, clearly illegal act does not negate the fact that the Bond Proceeds flowed through the NY Account pursuant to UBAE's instructions.

Once the Court determines that Clearstream acted as UBAE's agent, it follows that Plaintiffs' allegations satisfy § 302(a)(1)'s transacting business requirement.  Conduct far less substantial than using a New York bank to collect 62 separate payments totaling more than $1.68

---

[4] *E.g., Pearson v. McGraw*, 308 U.S. 313, 314 (1939) (recognizing that a "trust company acted as [an investor's] agent in collecting principal and income on" securities the trust company held for the investor); *Berry v. Wells Fargo Bank, N.A.*, 865 F.3d 880, 883 (7th Cir. 2017) ("'Typically, a mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan.'") (citation omitted); *Doane v. Espy*, 26 F.3d 783, 786 (7th Cir. 1994) ("The arrangement between CVBC and the producers bears considerable semblance to that of an agent responsible for its principal's collections.").

billion over four years demonstrates the purposeful availment that § 302(a)(1) requires.[5]

Conspiracy principles provide an alternative means for satisfying the transacting business requirement by attributing Clearstream's New York conduct to UBAE.  To establish "a conspiracy theory of jurisdiction: the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state."  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018).

Plaintiffs allege each of those elements.  UBAE conspired with Clearstream and Markazi to hide Markazi's ownership of the Markazi Bonds by transferring those securities to the UBAE/Markazi Account and recording UBAE as the securities' "owner."  ¶¶ 19-22, 162-67, 172, 176, 183, 184, 187, 189; Decl. ¶¶ 70-74.  Moreover, as discussed above, Clearstream's extensive New York conduct provides the contacts necessary to satisfy § 302(a)(1)'s transacting business requirement.  *See* pp. 9-11, *supra*.  The conspiracy allegations therefore provide an alternative basis for exercising personal jurisdiction over UBAE.[6]

---

[5]  *E.g., Licci III,* 732 F.3d at 171 (causing another financial institution to pass "several million dollars" through a New York correspondent bank satisfied § 302(a)(1)'s transacting business requirement); *Kreutter*, 71 N.Y.2d at 473 ("Jurisdiction over [out-of-state defendant] was properly sustained because [that defendant] used McFadden Company in New York to secure plaintiff's investment, it paid McFadden Company for that service, and it received the balance of the invested funds directly from McFadden Company when it issued a check payable to [the out-of-state defendant]."); *HSH Nordbank AG New York Branch v. Street*, 2012 U.S. Dist. LEXIS 99830, at *13 (S.D.N.Y. Jul. 18, 2012) (alleged fraudulent conveyance of millions of dollars into New York bank accounts "constitutes the 'transaction of business' necessary to satisfy the first requirement of § 302(a)(1)").

[6]  *See, e.g., Best Cellars, Inc. v. Grape Finds at Dupont, Inc*., 90 F. Supp. 2d 431, 445-48 (S.D.N.Y. Mar. 31, 2000) (out-of-state defendants were subject to jurisdiction under § 302(a)(2) in trade dress infringement case where co-conspirators' New York overt acts were limited to visiting a New York store to observe its design and operation); *CIBC Mellon Trust Co. v. HSBC Guyerzeller Bank AG*, 56 A.D.3d 307, 308-09 (1st Dep't 2008) (jurisdiction proper where

The decisions UBAE cites do not undermine that conclusion.  In *Charles Schwab*, for example, the Second Circuit ruled that the plaintiffs could establish jurisdiction by amending their complaint to assert that a co-conspirator took an act in the jurisdiction in furtherance of the conspiracy.  883 F.3d at 88-89.  The remaining conspiracy decisions UBAE cites either found that personal jurisdiction existed or refused to exercise jurisdiction because the plaintiffs failed to allege any conspiracy or New York actions taken in furtherance of the defendants' scheme.[7]

UBAE impermissibly seeks to negate Plaintiffs' conspiracy allegations by asserting that Judge Forrest credited the affidavit of its *current* General Manager, Mario Sabato.  Even putting aside the irrelevance of Judge Forrest's now-vacated decision, the pleading rules applicable to UBAE's motion prohibit any reliance on Mr. Sabato's assertions.  *See* pp. 6-7, *supra*; *see also, e.g., Gahagan v. United States Citizenship & Immigration Servs.,* 911 F.3d 298, 303 n.2 (5th Cir. 2018) ("as an unpublished opinion vacated by the Supreme Court, *Diaz-Esparza* is doubly nonprecedential").  Moreover, the Second Circuit indisputably left open the question whether

---

defendants "participated in a fraudulent conveyance of a New York property interest, acting with and through their New York coconspirators").

[7] *See Lehigh Valley Indus., Inc. v. Birenbaum,* 527 F.2d 87, 93 (2d Cir. 1975) (no conspiracy where "the only factual basis for the conspiracy alleged in the complaint is that Norman was David's brother and business associate"); *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 295 (S.D.N.Y. 2019) (one trader's "chat room" communications with a co-conspirator located in New York sufficed to support jurisdiction, but plaintiffs' failure to allege that other defendants had any knowledge of in-forum acts prevented court from exercising jurisdiction over them); *Tarsavage v. Citic Trust Co.*, 3 F. Supp. 3d 137, 145-46 (S.D.N.Y. 2014) (no allegations of defendant's knowledge of alleged fraud, and complaint acknowledged that defendant was not informed of the concealed information and received no benefit); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 603 (S.D.N.Y. 1998) (no allegations that defendant participated in corrupt agreement where only evidence of misconduct predated defendant's existence); *Dixon v. Mack*, 507 F. Supp. 345, 349 (S.D.N.Y. 1980) (court could exercise jurisdiction over out-of-state defendant because his co-conspirators engaged in acts in furtherance of the conspiracy in New York).

this Court could exercise jurisdiction over UBAE, expressed no opinion regarding whether

Clearstream acted as UBAE's agent, and stated no views regarding the jurisdictional significance

of Clearstream's four-year practice of collecting the Bond Proceeds in the NY Account.[8]

### 3. Plaintiffs' Claims Arise From the Substantial Activity That Clearstream Undertook in New York at UBAE's Direction

Plaintiffs' claims also satisfy the "permissive" § 302(a)(1) nexus requirement because

those causes of action arise from the substantial relevant conduct in which Clearstream engaged

in New York at UBAE's direction.  *Licci II,* 20 N.Y.3d at 339.  UBAE admits as much by

arguing not that Plaintiffs' claims are "unmoored" from Clearstream's New York conduct—the

standard the New York Court of Appeals adopted in *Licci II*—but rather that the *Licci* decisions

have been implicitly overruled by subsequent authority.  *See* UBAE Br. at 15-16.

As UBAE's argument suggests, the conduct that Clearstream undertook in New York at

UBAE's direction is anything but unmoored from Plaintiffs' claims.  Indeed, all of Plaintiffs'

causes of action seek to collect precisely the same $1.68 billion that Clearstream passed through

New York at UBAE's direction.  ¶¶ 126-27, 132-41; Decl. ¶¶ 89-91.  Without that New York

conduct, there would be no assets for Plaintiffs to collect.

Moreover, Clearstream's ability and willingness to utilize the NY Account to collect the

Bond Proceeds was the driving force behind Markazi's relationship with the other Defendants.

Markazi has stated that it maintains the value of Iran's foreign currency reserves by investing in

---

[8] The irrelevance of Mr. Sabato's denials of wrongdoing is underscored by the fact that his employment at UBAE commenced *five years after* the relevant events.  *See* Sabato Decl. at ¶ 1. Thus, his foundationless hearsay lacks any evidentiary value.  *See Peterson*, 2013 U.S. Dist. LEXIS 73852, at *50 (rejecting UBAE's suggestion that "declarations from its corporate representative … are sufficient to defeat jurisdiction" at the pleading stage); *see also, e.g., United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002) (testimony must reflect personal knowledge).

Eurodollar bonds, such as the Markazi Bonds, and that Clearstream "dominate[s] the management, custody and settlement" of such bonds and provides "efficient services . . . not readily available [from] other European banks."  Decl. ¶ 66; Ex. 45 at ¶¶ 11-17, 19.  Clearstream was one of just three entities that could receive payments from the issuers of the Markazi Bonds, and the terms of the bonds required that those payments be made in USD in New York.  ¶ 134; Decl. ¶ 89.

Thus, Plaintiffs' claims are inextricably linked with the actions Clearstream undertook here.  Courts have continually found § 302(a)(1)'s nexus requirement satisfied where parties' New York actions assumed a far less significant role in the relevant events than Clearstream's New York-based conduct plays here.[9]

UBAE's contention that the *Licci* cases have been overruled by decisions like *Waldman v. Palestine Liberation Auth.*, 835 F.3d 317 (2d Cir. 2016), *Walden v. Fiore*, 571 U.S. 277 (2014), and *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773 (2017), finds no support in the text of those decisions and disregards the Second Circuit's continued reliance upon the *Licci* cases as leading personal jurisdiction authorities.  Indeed, *Waldman* itself noted the continued vitality of *Licci* following the Supreme Court's articulation of a "substantial connection" test in *Walden*.  *See Waldman,* 835 F.3d at 327-28, 335.

---

[9] *See, e.g., Eades*, 799 F.3d at 168 (nexus requirement satisfied where defendant mailed one debt collection notice, engaged in one debt collection phone call, and mailed a summons and complaint to the forum); *Licci III*, 732 F.3d at 169 (use of New York correspondent account dozens of times and "not once or twice by mistake" satisfied nexus requirement) (quotation omitted); *Chloé*, 616 F.3d at 169-71 (nexus requirement satisfied with respect to trademark claim against an employee of a corporate defendant that sold *one* $1200 counterfeit handbag in New York); *Licci II*, 20 N.Y.3d at 339-41 (nexus requirement satisfied where defendant caused a New York financial institution to transfer millions of dollars to Lebanon and Hizbollah used those funds to finance rocket attacks on plaintiffs).

Moreover, little daylight exists between the jurisdictional tests *Walden* and *Licci II* propounded.  *Compare Walden*, 571 U.S. at 283-84 ("minimum contacts" must exist between the defendant's actions and the litigation and those minimum contacts exist where "suit-related conduct … create[s] a substantial connection with the forum State") *with Licci II,* 20 N.Y.3d at 339 (under § 302(a)(1), "there must be an articulable nexus or substantial relationship between the business transaction and the claim asserted" and that standard is satisfied where there exists "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former") (quotations omitted).  If anything, *Bristol-Myers* articulated a less stringent test than *Licci II*: "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Bristol-Myers,* 137 S. Ct. at 1780 (quotation omitted).[10]

UBAE also makes an ill-conceived argument that personal jurisdiction is lacking because its actions did not injure Plaintiffs in New York.  UBAE Br. at 10 (claiming that "injury in the forum state is a mandatory constitutional minimum").  That contention ignores the Complaint's allegations.  Plaintiffs, who are American citizens and, in many cases, New York residents, have alleged that the fraudulent transfers of the Markazi Bonds in which UBAE participated injured Plaintiffs by imperiling their collection efforts.  ¶¶ 166, 185, 189, 216, 236-49, 251-58, 289; Opp. Decl. ¶ 9.

In any event, neither § 302(a)(1) nor the Due Process Clause hinges personal jurisdiction

---

[10] Very recent decisions from this District that apply the *Licci II* standard include: *Rich v. Fox News Network LLC*, 2020 U.S. Dist. LEXIS 170811, at *7-8 (S.D.N.Y. Sep. 15, 2020); *In re European Gov't Bonds Antitrust Litig.*, 2020 U.S. Dist. LEXIS 130724, at *18 (S.D.N.Y. July 23, 2020); and *Pearson Educ. v. ABC Books LLC*, 2020 U.S. Dist. LEXIS 117040, at *19-20 (S.D.N.Y. June 30, 2020).

on Plaintiffs' ability to show that UBAE injured Plaintiffs in New York.  For example, the *Licci* plaintiffs were injured by rocket attacks that occurred in Israel.  *E.g., Licci III*, 732 F.3d at 173 ("So long as this in-forum activity sufficiently reflects the defendant's 'purposeful availment' of the privilege of carrying on its activities here, minimum contacts are established, even if the effects of the defendant's entire course of conduct are felt elsewhere."); *Licci II,* 20 N.Y.3d at 339-40 and n.10; *accord, e.g., Kronisch v. United States,* 150 F.3d 112, 130-32 (2d Cir. 1998) (nexus requirement satisfied in *Bivens* action where defendant drugged plaintiff in Paris but regularly visited New York in connection with clandestine LSD-testing scheme).

*Bristol-Myers* also does not support the "injury in the forum" rule UBAE advocates. Indeed, the passage from *Bristol-Myers* that UBAE cites deemed personal jurisdiction inappropriate only because "*all the conduct* giving rise to the nonresidents' claims occurred elsewhere."  137 S. Ct. at 1782 (emphasis added).  Here, Plaintiffs include many New York residents and, more importantly, highly relevant conduct occurred here.[11]

UBAE also mistakenly asserts that Plaintiffs' fraudulent conveyance claims cannot satisfy the nexus requirement because its participation in Defendants' scheme to hide Markazi's

---

[11] Other decisions UBAE cites likewise provide no support for the in-forum injury rule it advocates.  *See Golden Ring Int'l, Inc. v. Cullen*, 2019 U.S. Dist. LEXIS 144444, at \*17, 27 (N.D.N.Y. Aug. 26, 2019) (finding jurisdiction lacking under the Due Process Clause and CPLR § 302(a)(3)(ii), which, in contrast to § 302(a)(1), statutorily requires "injury to person or property within the state" because the plaintiffs suffered no in-state injury and "made no allegations whatsoever as to purposeful contacts on defendants' part with the State of New York"); *Norvel Ltd. v. Ulstein Propeller AS*, 161 F. Supp. 2d 190, 206-207 (S.D.N.Y. 2001) (finding that conduct of a Norwegian company satisfied the due process minimum contacts test where that defendant attended three meetings in Ohio regarding the products the plaintiffs claimed were defective, but concluding that exercising jurisdiction over that defendant would not be reasonable where all plaintiffs were foreign corporations, only one maintained an office in the U.S., no policy reasons supported exercising jurisdiction, and the U.S. forum was inconvenient).

ownership of the Markazi Bonds pre-dated Plaintiffs' registration of their judgments in this

District.  The N.Y. Debtor & Creditor Law does not require the existence of *any* judgment

against the transferor—let alone a judgment registered in the jurisdiction where the defrauded

creditor brings suit—where a transfer is made without fair consideration by a defendant to

pending litigation (§ 273-a) or with "actual intent … to hinder, delay, or defraud either present or

future creditors."  N.Y. Debtor & Creditor Law § 276.[12]

**D.     No Due Process Obstacle Exists to Exercising Personal Jurisdiction Over UBAE**

UBAE also errs when it contends that exercising personal jurisdiction would violate

constitutional due process principles.  Courts frequently divide the due process analysis into two

components: the "'minimum contacts' inquiry and the 'reasonableness' inquiry."  *Licci I,* 673

F.3d at 60.  Those tests are satisfied where (1) the defendant "'purposefully availed itself of the

privilege of conducting activities within the forum State or … purposefully directed its conduct

into the forum State'"; (2) "'the plaintiff's claim … arise[s] out of or relate[s] to the defendant's

forum conduct'"; and (3) exercising jurisdiction is "'reasonable under the circumstances.'"  *U.S.*

*Bank Nat'l Ass'n v. Bank of Am. Nat'l Ass'n,* 916 F.3d 143, 150 (2d Cir. 2019) (citation omitted).

The Second Circuit has emphasized the disjunctive nature of the "arise out of or relate to"

requirement.  *E.g., Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 128

(2d Cir. 2002); *Chloé*, 616 F.3d at 167.

As the *minimum* contacts formulation suggests, due process does not demand extensive

---

[12] *See* Opp. Decl. ¶¶ 3-4; *Lyman Commerce Solutions, Inc. v. Lung*, 2013 U.S. Dist. LEXIS
124689, at *4-5, 12-13 (S.D.N.Y. Aug. 30, 2013) (sustaining § 273-a claims as to transfers made
7 months before Iowa judgment was entered, and 18 months before it was recognized in New
York); *Fertilizantes Fosfatados Mexicanos, S.A. v. Chen*, 1992 U.S. Dist. LEXIS 12277, at *5-6,
14-16 (S.D.N.Y. July 22, 1992) (sustaining §§ 273-a and 276 claims regarding transfers made
before arbitration that resulted in New York judgment had even been commenced).

connections between a defendant and the forum.  Rather, the minimum contacts inquiry hinges

on whether "'the defendant purposefully availed itself of the privilege of doing business in the

forum and could foresee being haled into court there.'"  *Licci III,* 732 F.3d at 170 (citation

omitted); *accord, e.g., Charles Schwab,* 883 F.3d at 82.  Even a single connection between a

defendant and the forum may provide the requisite minimum contacts.  *E.g., Burger King Corp.*

*v. Rudzewicz,* 471 U.S. 462, 475 n.18 (1985) ("So long as it creates a 'substantial connection'

with the forum, even a single act can support jurisdiction.") (citation omitted).

Where the minimum contacts prong of the due process test is satisfied, "jurisdiction is

favored," and defendants can negate that preference only by making "'a compelling case that the

presence of some other considerations would render jurisdiction unreasonable.'"  *Chloé,* 616

F.3d at 165 (quoting *Burger King,* 471 U.S. at 477).  Factors relevant to the reasonableness

inquiry include: (1) burdens that proceeding in the forum state will impose; (2) the forum state's

interests; (3) plaintiffs' interests in securing relief; (4) the judicial system's interest in promoting

efficient claim resolution; and (5) states' shared interest in furthering beneficial policies.  *E.g.,*

*U.S. Bank Nat'l*, 916 F.3d at 151 n.5; *Chloé,* 616 F.3d at 164-65.  Moreover, where the

reasonableness factors strongly favor exercising jurisdiction, courts demand a lesser showing

with respect to the minimum contacts prong.[13]

Plaintiffs' allegations satisfy the due process minimum contacts test for the same reasons

they fulfill § 302(a)(1)'s nexus requirement.  Particularly given the genesis of UBAE's

---

[13] *E.g., Burger King*, 471 U.S. at 477 ("These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."); *accord, e.g., Ochoa v. J.B. Martin & Sons Farms,* 287 F.3d 1182, 1188 n.2 (9th Cir. 2002) ("Jurisdiction may be established with a lesser showing of minimum contacts 'if considerations of reasonableness dictate.'") (citation omitted).

involvement with the Markazi Bonds—a scheme to hide Markazi's ownership of those assets—it was easily foreseeable that UBAE would be "haled into court" to surrender the assets of a state sponsor of terrorism that targeted and murdered 241 American servicemen and then utilized Clearstream's services to pass $1.68 billion through the New York banking system while simultaneously evading terrorism-related judgments. *See Licci III*, 732 F.3d at 170; *Charles Schwab*, 883 F.3d at 82. Courts in the Second Circuit have found the minimum contacts test satisfied in less compelling cases.[14]

The second step of the due process analysis—the reasonableness inquiry—also fully supports exercising jurisdiction over UBAE. In fact, the reasonableness factors weigh so heavily in Plaintiffs' favor that subjecting UBAE to jurisdiction would be appropriate "upon a lesser showing of minimum contact than would otherwise be required." *Burger King*, 471 U.S. at 477.

Applying that principle is appropriate here because UBAE has participated in a scheme designed to frustrate Congress's repeated efforts to provide victims of Iranian terrorism with a means of recovering for the carnage that Iran has caused. *See, e.g.,* 28 U.S.C. §1605(a)(7) (repealed and replaced by 28 U.S.C. § 1605A); 28 U.S.C. § 1610 (note) (TRIA); 22 U.S.C.

---

[14] *E.g., Licci III,* 732 F.3d at 171 (transfer of "several million dollars" through a third-party's New York account satisfied minimum contacts requirement with respect to claims brought by plaintiffs injured in terrorist attacks in Israel); *Chew v. Dietrich*, 143 F.3d 24, 30-31 (2d Cir. 1998) (Rhode Island court could exercise personal jurisdiction over a German yacht owner in connection with claims brought by the executrix of a crewman lost overboard during the vessel's return trip from Bermuda where the defendant's agent recruited the decedent in Rhode Island, the owner intended to return there with certain crew members, and the yacht had been repaired and used exclusively in the U.S. for several months before the voyage); *Bank Brussels,* 305 F.3d at 127-28 (although law firm's maintenance of an apartment in New York, faxing of newsletters to the state, and past work for New York clients did not "directly give[] rise to the plaintiff's [legal malpractice] cause of action," those contacts satisfied the minimum contacts requirement because they helped the firm cultivate its business and, thus, "relate[d] to" the plaintiff's claim).

§ 8772.  Furthermore, each due process reasonableness factor strongly supports exercising jurisdiction over UBAE.  (1) UBAE has asserted no cognizable burden that proceeding in New York will impose upon it.  (2) New York maintains a substantial interest in preventing the use of the state's banking system to pass money to Iranian entities and in facilitating the collection of terrorism-related judgments.  (3) Plaintiffs possess weighty interests in obtaining relief for their injuries and justice for their deceased loved ones.  (4) The *Peterson I* litigation demonstrates that no obstacle exists to resolving this action efficiently in New York.  (5) New York, the U.S., and America's allies share strong interests in preventing terror financing.

No case UBAE cites suggests that exercising jurisdiction here would violate the Due Process Clause.  The plaintiffs in *Waldman,* 835 F.3d at 335-37, elicited no evidence at trial that the defendant PLO had engaged in *any* suit-related conduct in the U.S.  Instead, the plaintiffs relied primarily upon an "effects test" for jurisdiction that applies only in narrow circumstances where a defendant expressly aims purely extra-territorial conduct at the U.S.  *Id.* at 337-39.  UBAE's sweeping assertion that the actions of an agent in a forum cannot suffice to establish minimum contacts disregards the uniform precedent cited above.  *See also, e.g., Daimler AG v. Bauman,* 571 U.S. 117, 135 n.13 (2014) ("Agency relationships, we have recognized, may be relevant to the existence of specific jurisdiction.").  UBAE also misplaces its reliance on *Walden*, 571 U.S. at 288-89, which held only that the Nevada courts could not exercise personal jurisdiction over a defendant with *no contact whatsoever* with that state.

## CONCLUSION

For all of the reasons set forth above, the Court should deny UBAE's motion to dismiss in all respects.

Dated:  October 13, 2020                   Respectfully submitted,

      /s/ Liviu Vogel
_____

Liviu Vogel (LVogel@salonmarrow.com)
Salon Marrow Dyckman Newman & Broudy LLC
10 East 40th Street
New York, New York 10016
(646) 843-1909

FLEISCHMAN BONNER & ROCCO LLP
James P. Bonner (jbonner@fbrllp.com)
Patrick L. Rocco (procco@fbrllp.com)
Susan M. Davies (sdavies@fbrllp.com)
81 Main Street, Suite 515
White Plains, New York 10601
(914) 278-5100

*Counsel for Plaintiffs*

21