## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DEBORAH D. PETERSON, *et al.*,

                Plaintiffs,

      v.

ISLAMIC REPUBLIC OF IRAN; BANK
MARKAZI a/k/a CENTRAL BANK OF
IRAN; BANCA UBAE SpA;
CLEARSTREAM BANKING, S.A.; and
JP MORGAN CHASE BANK, N.A.,

                Defendants.

Case No. 13-cv-9195 (LAP)

## BANK MARKAZI'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Donald F. Luke
JAFFE & ASHER LLP
600 Third Avenue
New York, New York  10016
(212) 687-3000

Robert K. Kry
Lauren M. Weinstein
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W.
Washington, D.C.  20037
(202) 556-2000
rkry@mololamken.com

Lisa W. Bohl (*pro hac vice*)
MOLOLAMKEN LLP
300 N. LaSalle St.
Chicago, Illinois  60654
(312) 450-6700

*Attorneys for Defendant Bank Markazi*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

I.      The Court Lacks Subject-Matter Jurisdiction over Bank Markazi ................................... 1

      A.      Section 8772 Does Not Provide Jurisdiction over *In Personam* Claims
           Against Bank Markazi ................................................................................. 2

      B.      Section 8772 Does Not Abrogate the Time-of-Filing Rule ................................... 3

II.     The Court Lacks Personal Jurisdiction over Bank Markazi ............................................ 4

      A.      Bank Markazi Is Not an Alter Ego of the Iranian Government ............................ 4

           1.      The Clawson Declaration Applies the Wrong Factors ............................ 5

           2.      The Clawson Declaration Does Not Show Alter Ego Status .................... 7

      B.      Asserting Jurisdiction Would Violate Bank Markazi's Due Process Rights .......... 9

           1.      This Turnover Proceeding Is Not the "Underlying Controversy" ............ 10

           2.      Clearstream Was Not Acting as Bank Markazi's Agent When It
              Used Its Own Correspondent Account To Process Bond Payments ......... 11

III.    This Turnover Action Cannot Proceed in Bank Markazi's Absence ............................... 14

      A.      Bank Markazi Is a Required Party ....................................................................... 14

      B.      This Case Cannot Proceed Without Bank Markazi .............................................. 16

IV.     Section 8772 Is Impermissibly Extraterritorial ............................................................... 17

V.      Section 8772 Violates Bank Markazi's Right to a Neutral Decisionmaker ..................... 18

CONCLUSION ................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*4C Foods Corp. v. Package Automation Co.*, No. 14 Civ. 2212,
2014 WL 6602535 (S.D.N.Y. Nov. 18, 2014) ........................................................13

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) ..............................................................18

*Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas County*,
221 F.3d 1211 (11th Cir. 2000) ...........................................................................18

*Bank Markazi v. Peterson*, 136 S. Ct. 1310 (2016) .........................................................19

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017) ......................10

*Brody v. Village of Port Chester*, 345 F.3d 103 (2d Cir. 2003) ......................................15

*Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885 (5th Cir. 1968) ..............15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..................................................14

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) ...............................................19

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018) ....................12

*In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580
(M.D. Pa. 2009) .....................................................................................................6

*Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016
(7th Cir. 1995) .......................................................................................................3

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ...............................................................11

*Degelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*,
No. 06-CV-6346T, 2011 WL 6752565 (W.D.N.Y. Dec. 23, 2011) ......................7

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) ..........................................................9

*EM Ltd. v. Banco Central de la República Argentina*, 800 F.3d 78 (2d Cir. 2015) .............. *passim*

*Farms v. Kuehl Poultry LLC*, No. 19-CV-3040, 2020 WL 2490048
(D. Minn. May 14, 2020) .....................................................................................15

*First Nat'l City Bank v. Banco para el Comercio Exterior de Cuba*,
462 U.S. 611 (1983) ........................................................................................5, 6, 7

*Flatow v. Islamic Republic of Iran*, 308 F.3d 1065 (9th Cir. 202) .................................6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, No. 19-368 (argued Oct. 7, 2020) ....................11

*Gater Assets Ltd. v. AO Gazsnabtranzit*, 413 F. Supp. 3d 304 (S.D.N.Y. 2019) ...........................5

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567 (2004) .................................................3, 4

*GSS Grp. Ltd. v. Nat'l Port Auth. of Liber.*, 822 F.3d 598 (D.C. Cir. 2016) ..................................8

*Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503 (3d Cir. 1994)..................................................6

*Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107 (2d Cir. 2016)......................................................10

*Lauritzen v. Larsen*, 345 U.S. 571 (1953) .....................................................................................18

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) ..........................................................4

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) .............................11

*Marsh v. Rosenbloom*, 499 F.3d 165 (2d Cir. 2007)........................................................................3

*Moll v. U.S. Life Title Ins. Co. of N.Y.*, 654 F. Supp. 1012 (S.D.N.Y. 1987) ...............................15

*N.Y. Marine & Gen. Ins. Co. v. Tradeline (LLC)*, 266 F.3d 112 (2d Cir. 2001) ...........................12

*O'Rourke Marine Servs. L.P., LLP v. M/V COSCO Haifa*, 179 F. Supp. 3d 333
     (S.D.N.Y. 2016)......................................................................................................................13

*Olin Corp. v. Lamorak Ins. Co.*, No. 84 Civ. 1968, 2018 WL 1901634
     (S.D.N.Y. Apr. 18, 2018)..........................................................................................................7

*Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518, 2013 WL 1155576
     (S.D.N.Y. Mar. 13, 2013) .......................................................................................................19

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) .................................................14, 15, 16

*In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................12, 13

*Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018)......................................................2, 5, 6

*Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145 (2013)...............................................................2

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020) .......................................8

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ..................................................................................10, 11

*In re Shulman Transp. Enters., Inc.*, 744 F.2d 293 (2d Cir. 1984)................................................11

*Shurtleff v. United States*, 189 U.S. 311 (1903)..............................................................................8

iii

*Spinnerin Yarn Co. v. Apparel Retail Corp.*, 614 F. Supp. 1174 (S.D.N.Y. 1985) ......................13

*Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, No. 1:19-CV-00016,
2019 WL 1597497 (W.D.N.Y. Apr. 15, 2019) ........................................................15

*Transamerica Leasing, Inc. v. La República de Venezuela*, 200 F.3d 843
(D.C. Cir. 2000) .........................................................................................................8

*United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677
(5th Cir. 2013) ............................................................................................................3

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, No. 18 Civ. 1876,
2020 WL 4586729 (S.D.N.Y. Aug. 10, 2020) ..........................................................11

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) ............................9

*Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines*, 965 F.2d 1375
(5th Cir. 1992) ............................................................................................................6

*Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010) ...............................2

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

U.S. Const. amend. I .......................................................................................................19

12 U.S.C. § 242 ................................................................................................................8

12 U.S.C. § 1454 ..............................................................................................................8

12 U.S.C. § 1717 ..............................................................................................................8

20 U.S.C. §§ 1071 *et seq.* ................................................................................................8

22 U.S.C. § 8772 ......................................................................................................*passim*

22 U.S.C. § 8772(a) .........................................................................................................2

22 U.S.C. § 8772(b)(2) ...................................................................................................17

22 U.S.C. § 8772(d)(3) ...................................................................................................10

28 U.S.C. § 1330 .........................................................................................................2, 3

28 U.S.C. § 1330(a) .....................................................................................................2, 3

28 U.S.C. § 1610(g) ...................................................................................................5, 6, 7

28 U.S.C. § 1610(g)(1)(B) ...............................................................................................6

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 .........................2, 10

National Defense Authorization Act for Fiscal Year 2020,
    Pub. L. No. 116-92, § 1226, 133 Stat. 1198, 1645 (2019) ..................................................17, 19

Fed. R. Civ. P. 19 ...............................................................................................................1, 15, 16

Fed. R. Civ. P. 19(a) ..............................................................................................................14, 16

Fed. R. Civ. P. 19(a)(1)(B)(i) .......................................................................................................15

Fed. R. Civ. P. 19(b) ....................................................................................................................16

### LEGISLATIVE MATERIALS

154 Cong. Rec. 500 (Jan. 22, 2008) ...............................................................................................6

### OTHER AUTHORITIES

William M. Fletcher, *Cyclopedia of the Law of Corporations* (2020) ...........................................6

## INTRODUCTION

Plaintiffs fail to show any basis for denying Bank Markazi's motion to dismiss. At the outset, the Court lacks subject-matter jurisdiction over the claims against Bank Markazi. Section 8772 states that certain assets are subject to execution and transfer. But it does not grant the Court subject-matter jurisdiction to **order Bank Markazi itself** to transfer the assets.

The Court also lacks personal jurisdiction. Bank Markazi is a juridically separate instrumentality entitled to due process. Bank Markazi has no minimum contacts with the forum that relate to the underlying controversy: the 1983 bombing that forms the basis for plaintiffs' claims. In fact, Bank Markazi has no minimum contacts with the forum **at all** because, contrary to plaintiffs' theory, Clearstream was not acting as Bank Markazi's agent when it used its own correspondent account at JPMorgan to process bond payments in New York.

At a minimum, therefore, the claims against Bank Markazi should be dismissed. The Court should also dismiss this turnover action in its entirety. Under Rule 19, Bank Markazi is a required party in whose absence this turnover action cannot proceed. Section 8772, moreover, is unconstitutional because it is impermissibly extraterritorial and denies Bank Markazi a neutral decisionmaker. The statute therefore cannot strip the Luxembourg assets of immunity, and that immunity independently requires dismissal of this turnover action.

## ARGUMENT

### I. THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER BANK MARKAZI

Plaintiffs do not merely seek an order directing Clearstream to transfer sovereign assets from Luxembourg to the United States. They ask the Court to order **Bank Markazi itself** to transfer the assets. Plaintiffs, however, fail to show that this Court has subject-matter jurisdiction to enter that sort of *in personam* order against a foreign sovereign entity.

### A.    Section 8772 Does Not Provide Jurisdiction over *In Personam* Claims Against Bank Markazi

Plaintiffs claim that § 8772 provides jurisdiction because it applies "notwithstanding any other provision of law."  Pls. Opp. at 2.  But § 8772 says only that particular assets are subject to execution or transfer notwithstanding sovereign immunity.  22 U.S.C. § 8772(a).  It says nothing about ***ordering the sovereign itself*** to transfer the assets.  To justify that sort of *in personam* order against a sovereign entity, the Court would need subject-matter jurisdiction over claims against the sovereign entity itself.  Nothing in § 8772 provides the "clear statement" necessary to create that jurisdiction.  *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013).

Plaintiffs' cases are inapposite.  In *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010), the plaintiffs were not seeking an order against the sovereign entity itself.  They were seeking to appoint a receiver to sell ***property***.  *Id.* at 47.  The court held that the Terrorism Risk Insurance Act "provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings ***against property*** held in the hands of an instrumentality."  *Id.* at 50 (emphasis added).  Moreover, the court's rationale was that, unless TRIA provided jurisdiction over instrumentality property, certain language in the statute would be superfluous.  *Id.* at 49.  There is no similar concern here:  Section 8772 does plenty of work purporting to authorize execution and transfer of sovereign property even if it does not create jurisdiction to enter orders against ***sovereign entities themselves***.  *See also Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018) (addressing only "immunity-abrogating provisions to attach and execute against a relevant property," not *in personam* orders directed against sovereign entities themselves).

Plaintiffs argue in the alternative that the Court has jurisdiction under 28 U.S.C. § 1330.  Pls. Opp. at 4.  Bank Markazi already explained why that is wrong.  Bank Markazi Mem. at 24-25.  Section 1330(a) provides jurisdiction only over claims for which "the foreign state is not

entitled to immunity either **under sections 1605-1607 of this title** or under any applicable international agreement." 28 U.S.C. §1330(a) (emphasis added). Section 8772 does not fit that description. Even plaintiffs' original theory that the FSIA does not apply to assets outside the United States does not fit that description – that is an argument about the scope of immunity, not an argument based on an exception in "sections 1605-1607 of this title." *Id.* By its plain terms, § 1330 does not provide jurisdiction over plaintiffs' claims against Bank Markazi either.

**B.     Section 8772 Does Not Abrogate the Time-of-Filing Rule**

Even if § 8772 provided jurisdiction over claims against foreign sovereigns, plaintiffs cannot invoke that provision here. Plaintiffs do not dispute the settled rule that "the jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004). Plaintiffs did not and could not allege § 8772 as a basis for jurisdiction in their original complaint. Dkt. 1.

Plaintiffs argue that § 8772's "notwithstanding" clause "nullifies 'any other provision of law' that would impede [their] ability to collect the Bond Proceeds," including the time-of-filing rule. Pls. Opp. at 3. That is incorrect. A "notwithstanding" clause "refers only to substantive liability," not "rules on how litigation proceeds." *Marsh v. Rosenbloom*, 499 F.3d 165, 177 (2d Cir. 2007). Courts have thus repeatedly held that notwithstanding clauses do not trump generally applicable procedural rules. *See, e.g.*, *Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016, 1019 (7th Cir. 1995) (notwithstanding clause "does not displace the many ancillary rules that influence how litigation proceeds," such as preclusion rules, summary judgment procedures, and bankruptcy discharges); *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 688 (5th Cir. 2013) (notwithstanding clause does not "trump[] any other law that has the incidental effect of removing funds from the reach of judgment creditors"). On

plaintiffs' theory, §8772's notwithstanding clause would trump even filing deadlines and page limits that stood in their way. That clearly is not the law.

Plaintiffs urge that the time-of-filing rule should not apply because Congress enacted §8772 after they filed the complaint. Pls. Opp. at 4. That is irrelevant. The whole point of the time-of-filing rule is that jurisdiction depends on the state of affairs when the complaint is filed and that subsequent developments are irrelevant. *See, e.g.*, *Grupo Dataflux*, 541 U.S. at 575 (applying time-of-filing rule even though post-filing change in citizenship of one party allegedly cured jurisdictional defect). An exception to the time-of-filing rule for post-filing developments would defeat the fundamental purpose of the rule.

## II.  THE COURT LACKS PERSONAL JURISDICTION OVER BANK MARKAZI

The Court also lacks personal jurisdiction over Bank Markazi. Plaintiffs do not dispute that Bank Markazi is entitled to due process unless it is an alter ego of the Iranian government. Bank Markazi Mem. at 12. Nor do they dispute that due process prohibits the Court from exercising personal jurisdiction unless Bank Markazi has minimum contacts with the forum relating to the underlying controversy. Plaintiffs have not shown any of those things.[1]

### A.  Bank Markazi Is Not an Alter Ego of the Iranian Government

Plaintiffs assert that Bank Markazi is an alter ego of Iran based on a newly submitted declaration from a self-described "expert on the Islamic Republic of Iran," Patrick Clawson. Vogel Reply Decl. Ex. 96 ¶ 1. Plaintiffs acknowledge that Mr. Clawson's declaration is not

---

[1] Plaintiffs argue that §8772 provides "ancillary jurisdiction" because Bank Markazi "is statutorily treated as the sovereign's alter ego." Pls. Opp. at 14-15. Congress, however, cannot override a defendant's constitutional due process rights merely by statutorily defining the defendant to be a different entity. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995). Whatever relevance §8772 may have for statutory purposes, it is irrelevant to Bank Markazi's constitutional due process argument.

properly before the Court on summary judgment and, at most, "raise[s] a material question of fact" on the motion to dismiss.  Pls. Opp. at 23.  In fact, the declaration does not even do that.

### 1. *The Clawson Declaration Applies the Wrong Factors*

The Court should disregard the Clawson declaration in its entirety because it applies the wrong factors.  Mr. Clawson cites four factors supposedly "identified by the Supreme Court in *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 823 (2018)," namely, "(1) the level of economic control by the government; (2) whether the entity's profits go to the government; (3) the degree to which government officials manage the entity or otherwise have a hand in its daily affairs; and (4) whether the government is the real beneficiary of the entity's conduct."  Clawson Decl. ¶ 14.  Those are not the correct factors.

In this Circuit, courts determine alter ego status based on the Second Circuit's holding in *EM Ltd. v. Banco Central de la República Argentina*, 800 F.3d 78 (2d Cir. 2015).  The relevant factors include "whether the sovereign nation: (1) uses the instrumentality's property as its own; (2) ignores the instrumentality's separate status or ordinary corporate formalities; (3) deprives the instrumentality of the independence from close political control that is generally enjoyed by government agencies; (4) requires the instrumentality to obtain approvals for ordinary business decisions from a political actor; and (5) issues policies or directives that cause the instrumentality to act directly on behalf of the sovereign state."  *Id.* at 91.  The "touchstone inquiry" is "whether the sovereign state exercises significant and repeated control over the instrumentality's day-to-day operations."  *Id.*; *see also Gater Assets Ltd. v. AO Gazsnabtranzit*, 413 F. Supp. 3d 304, 315 (S.D.N.Y. 2019) (Preska, J.), *appeal pending*, No. 19-3550 (2d Cir. argued Oct. 20, 2020).

Nothing in *Rubin* abrogates that precedent.  *Rubin* mentioned the so-called "*Bancec* factors" as factors **Congress** identified when it enacted 28 U.S.C. § 1610(g) to direct courts **not**

*to consider them* when adjudicating certain claims.  138 S. Ct. at 823.  *Rubin* never endorsed those factors as a correct description of the law, let alone for **constitutional** purposes.

Congress evidently derived the "*Bancec* factors" from a footnote in a Ninth Circuit decision, *Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1071 n.9 (9th Cir. 2002).  *See* 154 Cong. Rec. 500 (Jan. 22, 2008) (Sen. Lautenberg) (Kry Reply Decl. Ex. L) (sponsor explaining that § 1610(g) was enacted in response to *Flatow*); Kry Decl. Ex. G (identifying Flatow's counsel as a principal lobbyist for the bill).  *Flatow*, however, did not endorse those factors – it merely mentioned them in passing as factors "[a]t least one circuit court has articulated."  308 F.3d at 1071 n.9.  The only authority *Flatow* cited was *Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines*, 965 F.2d 1375, 1380 n.7 (5th Cir. 1992).  *Walter Fuller* did not endorse the factors either:  It mentioned them in a footnote as factors the "district court distilled" while cautioning that *Bancec* did **not** "set forth these factors as part of a 'test' for determining agency status."  *Id.* No other circuit had even mentioned the so-called "*Bancec* factors" at the time Congress enacted § 1610(g) in 2008.

On their face, the § 1610(g) factors are a poor fit for alter ego status.  One factor, for example, is "whether the profits of the [entity] go to the government."  28 U.S.C. § 1610(g)(1)(B).  But shareholders are **always** entitled to a corporation's profits – that is a basic feature of corporate structure, not evidence of alter ego status.  *See* 1 William M. Fletcher, *Cyclopedia of the Law of Corporations* § 41.35 (2020) (fact that "sole shareholder is entitled to all of the corporation's profits" does not show alter ego status); *Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1522 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995); *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 599-600 (M.D. Pa. 2009).  Moreover, § 1610(g) omits other relevant factors, such as whether the sovereign disregards corporate formalities.  *Contrast EM Ltd.*, 800 F.3d at 91.

6

*EM Ltd.*, not § 1610(g), is the relevant standard.  "Expert testimony . . . should be excluded when it applies the wrong legal standard."  *Olin Corp. v. Lamorak Ins. Co.*, No. 84 Civ. 1968, 2018 WL 1901634, at *21 (S.D.N.Y. Apr. 18, 2018); *see also Degelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346T, 2011 WL 6752565, at *8 (W.D.N.Y. Dec. 23, 2011).  Because Mr. Clawson applies the wrong standard, his opinion is irrelevant to Bank Markazi's motion to dismiss.

## 2.    *The Clawson Declaration Does Not Show Alter Ego Status*

Even if § 1610(g) governed, Mr. Clawson fails to show alter ego status.  With respect to the first factor, he urges that the Iranian government owns all of Bank Markazi's shares and appoints its Governor and other officers.  Clawson Decl. ¶¶ 16-23.  His description is erroneous in many respects.  Tayyebi Fard Decl. ¶¶ 34-39.  But his claims are irrelevant regardless.  "[C]ourts have consistently rejected the argument that the appointment . . . of an instrumentality's officers or directors . . . overcomes the *Bancec* presumption" – even where the sovereign owns ***100%*** of the shares and appoints ***all*** the directors.  *EM Ltd.*, 800 F.3d at 92 & n.66.  Board appointments matter only where they "cause[ ] [the sovereign] to interfere in and dictate [the instrumentality's] daily business decisions."  *Id.* at 93.  Mr. Clawson cites no evidence of that whatsoever.

For the second factor, Mr. Clawson urges that the government receives Bank Markazi's profits.  Clawson Decl. ¶¶ 24-25.  That is a fundamental feature of share ownership, not evidence of alter ego status.  Tayyebi Fard Decl. ¶¶ 40-42; p. 6, *supra*.

For the third factor, Mr. Clawson complains that Iran's President removed Bank Markazi's Governor on two occasions.  Clawson Decl. ¶ 29.  He misstates the facts.  Tayyebi Fard Decl. ¶¶ 44-46.  But removal power is irrelevant regardless:  "The hiring ***and firing*** of board members or officers is an exercise of power incidental to ownership, and ownership of an instrumentality by the parent state is not synonymous with control over the instrumentality's

day-to-day operations." *EM Ltd.*, 800 F.3d at 92-93 (emphasis added).  The U.S. President can remove the head of the central bank in this country too.  12 U.S.C. § 242.[2]

Mr. Clawson complains that the Iranian government directs Bank Markazi to lend to specific sectors, such as housing and education.  Clawson Decl. ¶¶ 30, 46.  Those are ordinary exercises of the government's legislative and administrative authority pursuant to Iranian law. Tayyebi Fard Decl. ¶¶ 47-51; *see GSS Grp. Ltd. v. Nat'l Port Auth. of Liber.*, 822 F.3d 598, 606 (D.C. Cir. 2016) (no alter ego status where government was "exercising its regulatory authority" rather than "commandeering the [entity] in a way that erased the separate juridical boundaries"); *Transamerica Leasing, Inc. v. La República de Venezuela*, 200 F.3d 843, 851 (D.C. Cir. 2000) (similar).  The U.S. government routinely pursues similar fiscal policies by directing lending toward housing, education, or other sectors without thereby creating alter ego relationships with the financial institutions implementing those programs.  *See, e.g.*, 12 U.S.C. § 1454 (Freddie Mac); 12 U.S.C. § 1717 (Fannie Mae); 20 U.S.C. §§ 1071 *et seq.* (student loans).

Mr. Clawson points to the Iranian government's involvement in monetary policy. Clawson Decl. ¶¶ 35-37.  The Second Circuit has rejected that argument too:  "[G]overnments and central banks – including the U.S. Government and the U.S. Federal Reserve – often consult and coordinate their actions with respect to monetary policy."  *EM Ltd.*, 800 F.3d at 94. "[C]entral banks ordinarily have a high degree of interaction with their parent foreign governments," and "courts should give significant deference to a foreign government's conduct vis-à-vis its central bank."  *Id.*; *see also* Tayyebi Fard Decl. ¶¶ 52-55.

---

[2] Iran's Monetary and Banking Act now expressly authorizes the President to remove Bank Markazi's Governor, but only for specified causes upon the concurrence of his cabinet.  Tayyebi Fard Decl. ¶¶ 28, 46 & Ex. 1 at 12-13 n.4 §§ 4-5.  Even absent explicit authority, however, a President's removal of his own appointees is wholly unremarkable.  *See Shurtleff v. United States*, 189 U.S. 311, 314-15 (1903) (recognizing President's inherent power to remove his own appointees); *cf. Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197-98 (2020).

For the fourth factor, Mr. Clawson opines that Bank Markazi has "subordinated its statutory objectives to benefit the Iranian government" by financing fiscal deficits rather than reducing inflation.  Clawson Decl. ¶¶ 40-46.  Bank Markazi, however, has **multiple** statutory objectives, which also include promoting economic growth by financing government loans as authorized by law.  Tayyebi Fard Decl. ¶¶ 56-60 & Ex. 1 arts. 10(b), 13.  Mr. Clawson's disagreement over how Bank Markazi prioritizes those objectives is beside the point.  "Whether [a central bank's monetary] policy is considered by some commentators as too 'inflationary' or 'deflationary' is irrelevant to the question of whether [the government] exercised day-to-day control over [the central bank].  It is not [a court's] role to second-guess monetary policy decisions made by foreign governments."  *EM Ltd.*, 800 F.3d at 94.

Mr. Clawson finally claims that the U.S. government's history of sanctions against Bank Markazi somehow proves that the Iranian government is the real beneficiary of Bank Markazi's conduct.  Clawson Decl. ¶¶ 47-64.  That theory is both baseless and irrelevant.  Tayyebi Fard Decl. ¶¶ 61-62.  Those sanctions have nothing to do with whether the Iranian government "exercises significant and repeated control over the instrumentality's day-to-day operations" – the "touchstone inquiry" of alter ego status.  *EM Ltd.*, 800 F.3d at 91.

Piercing the corporate veil is a "rare exception" applicable only in "exceptional circumstances."  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).  Mr. Clawson's declaration comes nowhere close to meeting that demanding standard.

### B.    Asserting Jurisdiction Would Violate Bank Markazi's Due Process Rights

Because Bank Markazi is not an alter ego of the Iranian government, plaintiffs must show that exercising jurisdiction is consistent with due process.  To meet that standard, plaintiffs must prove that Bank Markazi has "minimum contacts" with the forum and that those contacts relate to the "underlying controversy."  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d

Cir. 2016); *see Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017). Plaintiffs claim they meet that standard because **Clearstream** used its correspondent account in New York to process the bond payments that are the subject of this turnover action.   That argument fails for multiple reasons.

### 1.     *This Turnover Proceeding Is Not the "Underlying Controversy"*

Plaintiffs' entire argument rests on the premise that the "underlying controversy" is this turnover action plaintiffs filed to seize the Luxembourg assets.   That premise is wrong.   Where a plaintiff is seeking to collect a judgment, the "underlying controversy" is the ***claims that gave rise to the judgment*** – not the collection proceeding itself.

That principle follows directly from *Shaffer v. Heitner*, 433 U.S. 186 (1977).   In that case, the Supreme Court held that the mere presence of a defendant's property in the forum is not sufficient to support personal jurisdiction over claims unrelated to the property.   *Id.* at 213. Plaintiffs' theory would render *Shaffer*'s holding a dead letter:   A plaintiff could simply file a turnover action against the property and then claim that the turnover action itself is a new "underlying controversy" to which the property relates.   Plaintiffs have no response.

Plaintiffs claim that the Second Circuit rejected this argument in *Kirschenbaum v. 650 Fifth Avenue*, 830 F.3d 107 (2d Cir. 2016).   But *Kirschenbaum* said nothing about personal jurisdiction at all.   The case addressed only ***subject-matter*** jurisdiction under TRIA.   *Id.* at 132.

Plaintiffs also urge that, "under § 8772(d)(3), [Bank Markazi] stands in the same position as Iran."   Pls. Opp. at 21.   But Congress cannot override *Shaffer*'s ***constitutional*** due process protections merely by passing a statute.

Plaintiffs do not dispute that, if Bank Markazi's interpretation of *Shaffer* is correct, plaintiffs cannot establish personal jurisdiction.   Clearstream's processing of bond proceeds through a correspondent account in New York had nothing whatsoever to do with the 1983

Beirut bombing that forms the basis for plaintiffs' claims.  No one contends that Bank Markazi used the Luxembourg bond proceeds to fund that bombing.  *Contrast Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013) (defendant used correspondent account to make "wire transfers . . . in order to further Hizballah's terrorist goals").  Bank Markazi did not even open its account with Clearstream until 1994 – *eleven years* after the 1983 bombing.  Massoumi Aff. ¶19 (Kry Decl. Ex. B).  *Shaffer* thus forecloses plaintiffs' claims.[3]

### 2.    *Clearstream Was Not Acting as Bank Markazi's Agent When It Used Its Own Correspondent Account To Process Bond Payments*

Even if this turnover action were the "underlying controversy," plaintiffs have not shown jurisdiction over Bank Markazi.  Plaintiffs do not dispute that, under cases like *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, No. 18 Civ. 1876, 2020 WL 4586729, at *11-12 (S.D.N.Y. Aug. 10, 2020), Bank Markazi *itself* did not have sufficient contacts with New York to support jurisdiction.  Instead, plaintiffs argue that *Clearstream* engaged in conduct in New York by using its correspondent account to process bond payments, and that those contacts may be imputed to Bank Markazi under an "agency" theory.  Pls. Opp. at 16-21.  That argument fails.

Plaintiffs do not dispute that "the fact that one may be an agent for one purpose does not make him or her an agent for every purpose."  *Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014); *see also In re Shulman Transp. Enters., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984).  The question, therefore, is not whether Clearstream acted as Bank Markazi's agent by holding Bank Markazi's securities account in Luxembourg.  Rather, the question is more specific: whether Clearstream acted as Bank Markazi's agent when Clearstream used its *own* correspondent

---

[3] This Term, the Supreme Court will further consider the necessary connection between jurisdictional contacts and the underlying claim in *Ford Motor Co. v. Montana Eighth Judicial District Court*, No. 19-368 (argued Oct. 7, 2020).  The Court's decision in that case may provide still further support for Bank Markazi's position.

account in New York to process the principal and interest payments on the bonds that are the subject matter of this turnover action.

Plaintiffs have not shown an agency relationship with respect to that function. Plaintiffs admit that an agent must act "subject to [the principal's] control." Pls. Opp. at 16 (quoting *N.Y. Marine & Gen. Ins. Co. v. Tradeline (LLC)*, 266 F.3d 112, 122 (2d Cir. 2001)). That concession is fatal because it is undisputed that "Bank Markazi had no control over Clearstream's correspondent bank accounts, no access to Clearstream's correspondent accounts, and no role in managing or operating those correspondent accounts." Massoumi Supp. Decl. ¶4; Pls. Resp. to SAMF ¶13. Plaintiffs urge that agency does not require "absolute control." Pls. Opp. at 16. But it does require "*some* control" over the specific function at issue. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (emphasis added).

Plaintiffs' theory is apparently that, because Clearstream was acting as Bank Markazi's agent when providing securities account-holding services in Luxembourg, Clearstream was also necessarily acting as Bank Markazi's agent when it obtained services from its *own* counterparties like JPMorgan in New York. That is a non sequitur. A law firm may act as an agent when it represents a client in litigation, but that does not mean the law firm also acts as the client's agent when it purchases paper from the supply store, email service from an IT vendor, electricity from a public utility, or any of the many other products and services it needs to render services to its clients. Those are all independent decisions over which the client has no control.

Courts have refused to find an agency relationship where a counterparty made its own independent decisions about suppliers or subcontractors. In *In re Rezulin Products Liability Litigation*, 390 F. Supp. 2d 319 (S.D.N.Y. 2005), for example, the court found no agency relationship where health-benefit plans engaged a pharmacy-benefit manager, Medco, to acquire

drugs: "[T]he HBPs had no ability to control Medco's conduct with respect to the purchase of Rezulin or otherwise.  Medco was an independent entity that operated its own vast and complex business.  It decided whether to include Rezulin in its formularies and it concluded its own arrangements with suppliers and retail pharmacies."  *Id.* at 331; *see also 4C Foods Corp. v. Package Automation Co.*, No. 14 Civ. 2212, 2014 WL 6602535, at *4 (S.D.N.Y. Nov. 18, 2014) (no agency relationship where parties "agreed to a deal whereby PAC would supply 4C with a Packaging Line – and PAC then turned around and acquired components for the product it sold to 4C from other companies"); *O'Rourke Marine Servs. L.P., LLP v. M/V COSCO Haifa*, 179 F. Supp. 3d 333, 337-38 (S.D.N.Y. 2016), *aff'd*, 730 F. App'x 89 (2d Cir. 2018); *Spinnerin Yarn Co. v. Apparel Retail Corp.*, 614 F. Supp. 1174, 1178-79 (S.D.N.Y. 1985).

This case is no different.  Clearstream made its own independent decisions about where and how to acquire correspondent banking services – just like it decided what staff to hire and what computer equipment to purchase.  That Bank Markazi may have been generally aware of Clearstream's correspondent accounts, and may even have expected Clearstream to use them in the course of its business, is not enough.  Agency requires ***control***.

There is no evidence of that control here.  "Bank Markazi had no control over Clearstream's correspondent bank accounts, no access to Clearstream's correspondent accounts, and no role in managing or operating those correspondent accounts."  Massoumi Supp. Decl. ¶ 4; Pls. Resp. to SAMF ¶ 13.  Nothing in Clearstream's terms of service or the foreign issuers' bond prospectuses gave Bank Markazi ***any*** control over how Clearstream processed principal and interest payments on the bonds it held.  Vogel Decl. Exs. 64, 65, 81.[4]

---

[4] Plaintiffs indiscriminately string-cite a long list of paragraphs from Bank Markazi's Rule 56.1 response to assert that Bank Markazi "admitted" that Clearstream was "acting on Markazi's behalf, for its benefit, and with its consent" when it processed bond payments in New York.  Pls.

Because plaintiffs have not shown that Bank Markazi exercised any control over Clearstream's use of its correspondent account, they have not shown that Clearstream was acting as Bank Markazi's agent when carrying out that function.  As a result, Clearstream's contacts in New York cannot be imputed to Bank Markazi for jurisdictional purposes.[5]

## III.   THIS TURNOVER ACTION CANNOT PROCEED IN BANK MARKAZI'S ABSENCE

Because this Court lacks subject-matter and personal jurisdiction over Bank Markazi, the claims against Bank Markazi should be dismissed.  Under *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008), Bank Markazi is an indispensable party in whose absence this action cannot proceed.  For that reason, dismissal of the claims against Bank Markazi also requires dismissal of this turnover action in its entirety.

### A.   Bank Markazi Is a Required Party

Plaintiffs contend that Bank Markazi is not even a "required party" under Rule 19(a) because Bank Markazi and the Iranian government share "joint liability" and the "same joint interest in the Bond Proceeds."  Pls. Opp. at 26.  That is incorrect.  Bank Markazi, not Iran, is the sole beneficial interest-holder in the bond proceeds.  Massoumi Aff. ¶¶7, 10-11 (Kry Decl. Ex. B).  Plaintiffs admit as much in their brief: "[I]t is obvious that Markazi is the only beneficial

---

Opp. at 17.  None of the cited paragraphs supports that claim, and even if they did, that would not be equivalent to control.  Plaintiffs also assert, without citing any evidence, that it was "singularly unlikely" that Clearstream would receive payments by check rather than electronic transfer to a correspondent account in New York.  Pls. Opp. at 20 n.8.  That unsupported speculation is insufficient to defeat a motion to dismiss.  But it would not establish Bank Markazi's control over the process even if it were true.

[5] Plaintiffs argue that, "where the due process reasonableness factors strongly favor exercising jurisdiction," a "lesser showing with respect to the minimum contacts prong" is required.  Pls. Opp. at 22 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  But a "lesser showing" does not mean "no showing."  Plaintiffs' entire jurisdictional theory rests on the claim that Clearstream was acting as Bank Markazi's agent when it used its correspondent account in New York.  Without that premise, Bank Markazi has *no* minimum contacts with New York.  In any case, Clearstream has already explained why the reasonableness factors weigh against jurisdiction in this case too.  Clearstream Mem. at 31-34.

owner of interest and principal on its bonds." Pls. Opp. at 1. Because Bank Markazi is the sole

beneficial interest-holder in the disputed assets, it is a paradigmatic required party. *See* Fed. R.

Civ. P. 19(a)(1)(B)(i) (party required where it "claims an interest relating to the subject of the

action" and "disposing of the action in the person's absence may . . . impair or impede the

person's ability to protect the interest"); *Brody v. Village of Port Chester*, 345 F.3d 103, 118 (2d

Cir. 2003) ("title holder" of disputed property a required party).

Plaintiffs urge that Congress *defined* "Iran" to include Bank Markazi in § 8772 and

thereby purportedly rendered Bank Markazi liable for Iran's debts. Pls. Opp. at 26. But whether

§ 8772 is a constitutional exercise of Congress's authority is one of the central disputed issues in

this case. Plaintiffs cannot defeat Bank Markazi's status as an interested party merely by

predicting that Bank Markazi will lose on the merits of its claims.

The Supreme Court rejected a similar argument in *Pimentel*. In that case, a sovereign

claimed an interest in an interpleader action, but the Ninth Circuit held that the sovereign did not

have a valid interest under Rule 19 because its claims were time-barred. 553 U.S. at 867. The

Supreme Court reversed. "[T]he Court of Appeals," it held, "should not have proceeded on the

premise that those claims would be determined against the sovereign." *Id.* "[W]here sovereign

immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action

must be ordered where there is a potential for injury to the interests of the absent sovereign." *Id.*

The same reasoning applies here.[6]

---

[6] Even if Bank Markazi were a mere joint owner, it would still be a required party. *See Moll v. U.S. Life Title Ins. Co. of N.Y.*, 654 F. Supp. 1012, 1018 (S.D.N.Y. 1987) ("co-owner" a necessary party); *Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, No. 1:19-CV-00016, 2019 WL 1597497, at *11 (W.D.N.Y. Apr. 15, 2019); *Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885, 887-88 (5th Cir. 1968); *Farms v. Kuehl Poultry LLC*, No. 19-CV-3040, 2020 WL 2490048, at *3 (D. Minn. May 14, 2020) ("joint property owners" are a "typical example of required parties"). Plaintiffs' cases involving joint *tortfeasors* are beside the point. Pls. Opp. at

Plaintiffs also urge that, by asserting sovereign immunity, Bank Markazi is making an "***election*** not to assert its supposed rights in this action."  Pls. Opp. at 27 (emphasis added).  But that was equally true in *Pimentel* too.  Any time a sovereign claims that a suit must be dismissed under Rule 19 because the sovereign is a required party that is immune from jurisdiction, the sovereign is "electing" not to waive its immunity.  If that were enough to defeat required-party status, *Pimentel* would have come out the other way.

### B.      This Case Cannot Proceed Without Bank Markazi

Plaintiffs argue that, even if Bank Markazi is a required party under Rule 19(a), the Court should adjudicate the turnover action in its absence anyway under Rule 19(b).  Pls. Opp. at 28.  That argument is directly contrary to *Pimentel* too.

Plaintiffs first assert that Bank Markazi faces no prejudice from a turnover action in its absence because "[p]laintiffs would prevail on their § 8772 claim against Iran even if Markazi possessed an absolute defense."  Pls. Opp. at 28.  Again, Bank Markazi, not Iran, is the beneficial interest-holder in the assets, so plaintiffs' ability to prevail depends on the constitutionality of Congress's attempt to abrogate Bank Markazi's separate status.   Under *Pimentel*, plaintiffs cannot avoid Rule 19 simply by predicting Bank Markazi will lose.  553 U.S. at 867.

Plaintiffs also assert that a judgment in Bank Markazi's absence would be "adequate" to resolve the entire dispute because Luxembourg courts would treat the judgment as conclusively resolving any claims Bank Markazi may have against Clearstream.  Pls. Opp. at 28.   But *Pimentel* squarely holds that a judgment rendered in the sovereign's absence does not bind the sovereign.  *See* 553 U.S. at 871 ("[T]he Republic and the Commission would not be bound by the judgment in an action where they were not parties.").  Plaintiffs offer no basis to speculate

---

26 n.12.  Bank Markazi is not claiming required-party status on the ground that it is a joint tortfeasor.  Rather, Bank Markazi is the beneficial interest-holder in the assets at issue.

that Luxembourg courts would give greater preclusive effects to a U.S. judgment than U.S. courts themselves would.  The Luxembourg courts have refused to recognize a judgment even where Bank Markazi **was** named as a defendant.  Gaicio Decl. ¶ 7 & Ex. F.

Finally, plaintiffs complain that they have no alternative remedy.  Pls. Opp. at 29.  But plaintiffs can pursue their claims in Luxembourg, just like many other plaintiffs have done. Gaicio Decl. ¶¶ 2-7 & Exs. A-F.  Luxembourg is the obviously appropriate forum for litigation over Luxembourg assets held by a Luxembourg custodian.  Although Luxembourg courts have so far ruled against other plaintiffs' claims, most of those decisions are still on appeal. *Id.*  There is no reason to doubt that plaintiffs would receive a fair hearing there.  For that reason too, this turnover action should be dismissed.

## IV.    SECTION 8772 IS IMPERMISSIBLY EXTRATERRITORIAL

Section 8772 violates Bank Markazi's due process rights because it purports to apply American substantive law to assets overseas with no sufficient connection to the United States. The parties agree that the due process analysis for extraterritorial application of substantive law is "closely related" to the analysis for personal jurisdiction.  Pls. Opp. at 35; Bank Markazi Mem. at 15.  Section 8772 therefore violates Bank Markazi's due process rights for the same reasons the Court cannot exercise personal jurisdiction over Bank Markazi. *See* pp. 4-14, *supra*.

Plaintiffs assert that Bank Markazi "cites **no decision** declaring a statute unconstitutional on 'extraterritoriality' grounds."  Pls. Opp. at 34.  But Bank Markazi cited many cases holding that the application of a forum state's law to a dispute with no sufficient connection to the state violated due process.  Bank Markazi Mem. at 15-16.  The NDAA by its terms applies only to this one case.  22 U.S.C. § 8772(b)(2).  If that application violates Bank Markazi's due process rights, the statute is necessarily unconstitutional in its one and only application.

Plaintiffs concede that courts have found due process violations where a state "had a negligible connection, if any, to the relevant facts." Pls. Opp. at 36-37 & n.21 (collecting cases). That is this case. While plaintiffs invoke *Allstate Insurance Co. v. Hague*, 449 U.S. 302 (1981), the defendant in that case "was at all times present and doing business" in the state, the decedent had worked in the state for fifteen years, and the plaintiff resided in the state at the time of suit. *Id.* at 313-20. Bank Markazi, by contrast, has no connection to New York at all apart from plaintiffs' mistaken theory that Clearstream was acting as Bank Markazi's agent when it used its correspondent account to process bond payments.[7]

## V.   SECTION 8772 VIOLATES BANK MARKAZI'S RIGHT TO A NEUTRAL DECISIONMAKER

Plaintiffs do not dispute their extraordinary role in procuring the recent amendments that purport to dictate the outcome of this litigation. They do not deny that they drafted that legislation and aggressively lobbied Congress to enact it – just like they did on multiple prior occasions. Kry Decl. Exs. E-H; Pls. Resp. to SAMF ¶¶ 22-25.

Plaintiffs urge that Bank Markazi's authorities involve "improper efforts to influence ultimate *judicial* decision-makers." Pls. Opp. at 38. But that is no distinction at all: Plaintiffs drafted and lobbied Congress to enact legislation that instructed this Court to rule in their favor. That was a singularly potent means of "influenc[ing]" a judicial decisionmaker. Plaintiffs cannot explain why, if due process prohibits a party from spending $3 million to elect a state judge that

---

[7] Plaintiffs incorrectly assert that "the Eleventh Circuit found no due process violation" in *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*, 221 F.3d 1211 (11th Cir. 2000). Pls. Opp. at 34-35 n.20. In fact, the court squarely held that "we cannot say that Plaintiffs have sufficient contacts with the County to regulate them under this Ordinance, consistent with due process." 221 F.3d at 1218. Plaintiffs also incorrectly assert that *Lauritzen v. Larsen*, 345 U.S. 571 (1953), "merely considered choice-of-law, not constitutional, questions." Pls. Opp. at 37. The Court expressly rested its analysis on due process considerations, warning that it is "a denial of due process of law when a state of the Union attempts to draw into control of its law otherwise foreign controversies, on slight connections, because it is a forum state." 345 U.S. at 590-91.

will rule in its favor, *see Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), a party can achieve precisely the same result by drafting and then aggressively lobbying Congress to enact legislation that instructs the judge to rule in its favor. Either way, the party denies its adversary due process by manipulating the adjudicatory process to achieve its desired result.[8]

Plaintiffs assert that Congress did not actually dictate the outcome of this case, pointing to language from the Supreme Court's prior decision suggesting there was room for dispute over whether § 8772's statutory requirements were met in *Peterson I*. Pls. Opp. at 37-38. But even if that was true in *Peterson I*, it is not true now. As plaintiffs observe, *Peterson I* squarely resolved those issues, holding that Bank Markazi has a beneficial interest in assets in the Clearstream account and that no other party has a non-custodial or constitutionally protected interest. *Id.* at 29-30. At the time Congress enacted the NDAA last year, therefore, those statutory requirements were indeed foregone conclusions.[9]

Plaintiffs urge that lobbying is "not unusual" and that they have a First Amendment right to lobby Congress. Pls. Opp. at 39. But that does not mean that, having exercised that right, they can then wield the fruits of their lobbying in litigation without regard to their opponent's due process rights. The respondent's president in *Caperton* may have had a First Amendment right to make $3 million in political expenditures to elect a state judge, but that did not stop the Supreme Court from finding a constitutional violation when the result of those efforts infringed the other party's due process rights. The same principle applies here.

---

[8] Plaintiffs observe that "the precise complaints [Bank Markazi] makes here regarding Plaintiffs' counsel's lobbying played a prominent role in Markazi's *Peterson I* briefing." Pls. Opp. at 39 n.24. But the relevant point is that **the Supreme Court** did not attach any weight to those drafting and lobbying efforts, because they were not relevant to the separation-of-powers claim Bank Markazi pursued in *Peterson I*. Bank Markazi Mem. at 23.

[9] In any case, the Supreme Court in *Caperton* did not require that the political expenditures would **guarantee** victory in court – it found only a "probability" that they would affect the outcome. 556 U.S. at 886-87. There is no reason to insist on a greater degree of certainty here.

## **CONCLUSION**

Bank Markazi's motion to dismiss should be granted.


Dated:   October 23, 2020                    Respectfully submitted,
         New York, New York


                                             /s/ Robert K. Kry
Donald F. Luke                             Robert K. Kry
JAFFE & ASHER LLP                          Lauren M. Weinstein
600 Third Avenue                           MOLOLAMKEN LLP
New York, New York  10016                  600 New Hampshire Ave., N.W.
(212) 687-3000                             Washington, D.C.  20037
                                           (202) 556-2000
                                           rkry@mololamken.com

                                           Lisa W. Bohl (*pro hac vice*)
                                           MOLOLAMKEN LLP
                                           300 N. LaSalle St.
                                           Chicago, Illinois  60654
                                           (312) 450-6700

         *Attorneys for Defendant Bank Markazi*

20