**EXHIBIT 1**



WWW.CBI.IR

# THE MONETARY AND BANKING ACT

## (as amended up to May 22nd, 2017)

## Contents

PART ONE – THE CURRENCY ...................................................................................... 2

PART TWO – CENTRAL BANK of the I.R. of IRAN ......................................................... 5

    Chapter 1- General ..................................................................................................... 5

    Chapter 2- Functions and Powers ............................................................................... 5

    Chapter 3- Organization .............................................................................................. 8

    Chapter 4- General Provisions .................................................................................. 16

PART THREE – BANKING ........................................................................................... 17

    Chapter 1- Conditions Governing the Establishment of Banks .................................. 17

    Chapter 2 – Terms and conditions Governing Banking Operations .......................... 19

    Chapter 3- Dissolution and Bankruptcy of Banks ...................................................... 20

    Chapter 4- Penal and Disciplinary Provisions ........................................................... 22



WWW.CBI.IR

# PART ONE – THE CURRENCY

## ARTICLE 1
   a. The Unit of Iranian Currency is the Rial. One Rial is equal to one hundred Dinars.
   b. One Rial is equal to 0.0108055 (zero point zero one zero eight zero five five) grams of fine gold.
   c. Changes in the parity of the Rial in relation to gold shall be effected upon the recommendation of Central Bank of the Islamic Republic of Iran (hereinafter referred to as **CBI**), the agreement of the Minister of Economic Affairs and Finance, the approval of the Council of Ministers, and the ratification of the Finance Committees of the Islamic Consultative Assembly.
   d. The parity of foreign currencies in relation to the Rial, as well as the buying and selling rates of foreign exchange, shall be computed and determined by CBI in compliance with the State's obligations towards the International Monetary Fund.

## ARTICLE 2
   a. The Currency of Iran shall be issued in the form of notes and coins.
   b. Only such notes and coins as are in circulation at the time this Act is passed, or are issued thenceforth under the provisions of this Act, shall have currency and be legal tender.
   c. Undertaking to pay any type of debt or liability can only be made in the currency of the country, unless other arrangements are made between debtor and creditor in conformity with the Foreign Exchange Regulations of the State.
   d. Gold coins shall not be legal tender.
   e. Regulations concerning the import and export of gold and silver shall be adopted upon the recommendation of the Governor of CBI, the agreement of the Minister of Economic Affairs and Finance and the approval of the Council of Ministers.
   f. The denomination, form, material, color, size, design and other specifications of notes and coins in circulation in the country shall be determined upon the recommendation of the Governor of CBI and the approval of the Minister of Economic Affairs and Finance, with due observance of the provisions of this Act. The quantity of the coins shall be determined upon the recommendation of the Governor of CBI and the agreement of the Minister of Economic Affairs and Finance.
   g. Notes shall bear the signature of the Minister of Economic Affairs and Finance and the Governor of CBI.

## ARTICLE ۳



WWW.CBI.IR

a. The right of issuing notes and coins is exclusive to The Government and this right is hereby vested exclusively in CBI Subject to the provisions of this Act.

b. The maximum value to which coins may be used as legal tender, as well as the manner in which notes and coins are called in and the conditions under which they are withdrawn from circulation shall be determined by CBI, upon ratification by the Currency and Credit Council and the approval of the Minister of Economic Affairs and Finance, and shall be communicated to the public through the State official Gazette, at least one of the mass-circulation daily papers of the Capital, and the radio and television networks.

## ARTICLE 4

a. The obligation of CBI in respect of issued notes and coins shall be limited to the payment of value in the currency of the country.

b. CBI shall not be liable or responsible in any manner for any theft, loss, or destruction of notes and coins held by the public.

c. CBI shall, for a period of no less than ten years, replace the notes and coins which are withdrawn from circulation according to Section (b) of Article 3 of this Act and which are no longer legal tender with State currency. Upon the expiry of the said period, CBI shall have no obligation in respect thereof; and notes and coins that have not been replaced shall be credited to the account of the Treasury.

## ARTICLE 5

a. CBI shall at any time have at its disposal the following assets, equivalent to one hundred percent of the notes issued, as backing:

    1- Gold, in accordance with Article 6.

    2- Foreign exchange, in accordance with Article 7.

    3- Securities and bonds in accordance with Articles 8 and 9.

b. The sum total of the assets referred to in Subsections 1 and 2 of Section (a) of this Article shall at no time fall below 25 percent of the total value of the liabilities of CBI on account of the notes issued.

**NOTE-** The assets referred to in this Article shall be evaluated at purchase price if such price is lower than nominal value, or at nominal price if purchase price is higher than nominal value.

**ARTICLE 6-** Gold assets referred to in Subsection (1) of Section (a) of Article 5 shall consist of:

a. Gold bullion, gold coins in the Bank vaults, and gold deposited with foreign banks and international institutions;

b. Gold delivered under Articles of Agreement of the International Monetary Fund, the International Bank for Reconstruction and Development and similar or affiliated institutions as quota or subscription.



**ARTICLE 7-** The foreign exchange assets, referred to in Subsection (2) of Section (a) of Article 5, shall (with due regard to the Note forming part of this Article) consist of:

a. Convertible foreign bank-notes, acceptable to CBI;

b. Foreign exchange claims falling due in not more than six months;

c. Any payments made under relevant statutes to the International Monetary Fund, the International Bank for Reconstruction and Development and similar or affiliated institutions as quota or subscription;

d. Securities issued or guaranteed by official international organizations or their affiliate institutions;

e. Securities issued or guaranteed by foreign States;

f. Receivables from abroad in foreign exchange or Rials convertible to foreign exchange, acquired through the implementation of international agreements for payment and/or barter, within the limits provided in such agreements;

g. Commercial instruments in convertible foreign exchange, falling due in not more than six months, drawn on foreign persons, natural or legal, bearing three credible signatures, one necessarily that of the ceding bank;

h. Foreign bonds and securities convertible to currencies acceptable to CBI;

i. The balance of special Drawing Rights holdings with the International Monetary Fund, in accordance with the relevant laws.

**NOTE-** Foreign exchanges, instruments, and foreign exchange receivables referred to in this Article shall be in convertible currencies acceptable to CBI.

**ARTICLE 8-** Government Securities and bonds referred to in Subsection (3) of Section (a) of Article 5 shall consist of:

a. Treasury Bills and Bonds issued by the Government or guaranteed by the Ministry of Economic Affairs and Finance, provided that legal authorization has been obtained for their issuance or guarantee;

b. CBI's receivables from Ministries, governmental institutions and municipalities and from institutions affiliated to the Government and/or municipalities operating on a commercial basis, provided that such receivables were guaranteed by the Ministry of Economic Affairs and Finance.

**NOTE-** the National Jewelries, subject-matter of the Act passed on November 15, 1937, shall be collateral for all undertakings resulting from the implementation of this Article. Central Bank of the I.R. of Iran is charged with the duty of maintaining and safeguarding the National Jewelries and such jewelries may be used only in accordance with the provisions of this Act and under the supervision of the Note-Reserve Control Board.

**ARTICLE 9-** Non-government instruments referred to in Subsection (3) of Section (a) of Article 5 shall consist of:

a. Pay to order commercial instruments in Rials bearing three credible signatures one necessarily that of the ceding bank, falling due within one year, at the latest;



b. Other short-term receivables in Rial secured by gold bullion, coins or other assets referred to in Article 7 falling due within one year, at the latest.

# PART TWO – CENTRAL BANK of the I.R. of IRAN

## Chapter 1- General

**ARTICLE 10**
a. CBI shall be responsible for the task of formulating and implementing monetary and credit policies on the basis of the general economic policy of the country.
b. The objectives of CBI are to maintain the value of the currency and equilibrium in the balance of payments, to facilitate trade transactions, and to assist the economic growth of the country.
c. CBI enjoys legal personality and shall be subject to the rules and regulations pertaining to joint-stock companies in matters not provided for by this Act.
d. Except where expressly stipulated by Law, CBI shall not be subject to the general laws and regulations relating to ministries, government companies and governmental and government-affiliated institutions, nor to the provisions of the banking part set forth in this Act.
e. The capital of CBI is five thousand million Rials which is fully paid up and wholly owned by the Government and is made up of the Bank's previous capital, the difference arisen from the implementation of Article (1) of this Act, and the Bank's reserves. The Bank's capital may be increased upon recommendation of its General Meeting and the approval of the Council of Ministers;
f. The headquarters of CBI shall be in Tehran but may, should the interests of the country so require, be transferred elsewhere with the approval of the Council of Ministers.
g. CBI may establish branches wherever it deems necessary or delegate to any other banks of the country.
h. CBI may only be dissolved through legislation.

## Chapter 2- Functions and Powers

**ARTICLE 11-** CBI, as the regulatory authority of the monetary and credit system of the country, shall fulfill the following functions;
a. Issuance of notes and coins constituting the currency of the country according to the provisions of this Act;
b. Supervision over banks and credit institutions according to the provisions of this Act;



   c. Adopting regulations pertaining to foreign exchange transactions and payment undertakings and guarantees in foreign exchange with the approval of the currency and credit council, and also exercising control over foreign exchange transactions;

   d. Exercising control over gold transactions and adopting regulations pertaining to such transactions with the approval of the Council of Ministers;

   e. Exercising control over the export and import of foreign exchange and Iranian currency and setting up regulations pertaining thereto with the approval of the Currency and Credit Council.

**ARTICLE 12-** CBI, as the banker to the Government, shall fulfill the following functions:

   a. Keeping accounts of ministries, governmental institutions, institutions affiliated to the government, government companies and municipalities, as well as entities more than half of whose capitals is owned by ministries, governmental institutions, institutions affiliated to the government, government companies or municipalities, and also handling of all their banking transactions inside and outside the country.

   b. Sale of all types of Government Bonds and Treasury Bills and repayment of principal and payment of interest thereof as the agent of the Government, and assigning such agency to individuals and/or other institutions;

   c. Custody of the country's foreign exchange and gold reserves;

   d. Keeping funds in Rials for the International Monetary Fund, the International Bank for Reconstruction and Development, the International Finance Corporation, the International Development Association and entities similar or affiliated to these institutions.

   e. Concluding payments agreements in the execution of monetary, financial, trade and transit agreements between the Government and foreign countries;

**NOTE 1-** Ministries, municipalities, government companies, and entities referred to in Section (a) of this Article shall deposit their funds exclusively with, and conduct their banking transactions through CBI; and shall furnish CBI with such information as it may require in the fulfillment of its functions;

**NOTE 2 -** Ministries, companies, and entities which, under special laws, are authorized to conduct their banking transactions through other banks, shall not be subject to the provision of Section (a) and the first part of Note (1) of this Article.

**ARTICLE 13-** CBI shall be vested with the following powers:

   1- Granting loans and credits to ministries and governmental entities, subject to legal authorization;

   2- Guaranteeing commitments made by the Government, ministries or governmental entities, subject to legal authorization;



WWW.CBI.IR

3- Granting loans and credits to, and guaranteeing loans and credits obtained by government companies and municipalities as well as entities affiliated to the government or municipalities against adequate collateral;

4- Rediscounting drafts and short-term commercial instruments presented by other banks and granting credits to banks against adequate collateral;

5- Purchase and sale of Treasury Bills and Government Bonds as well as bonds issued by foreign governments or accredited international financial institutions;

6- Purchase and sale of gold and silver;

7- Opening and holding current accounts with foreign banks, holding accounts for domestic and foreign banks, carrying out all other authorized banking operations, and obtaining credits inside the country and abroad on its own account or on behalf of domestic banks.

**NOTE 1-** Granting loans and credits to, and guaranteeing loans and credits obtained by ministries and governmental institutions shall be subject to guarantee by the Ministry of Economic Affairs and Finance.

**NOTE 2-** Regulations pertaining to the implementation of this Article shall be approved by the Currency and Credit Council.

**ARTICLE 14-** CBI shall, for the proper implementation of the country's monetary system, have the authority to intervene in and supervise monetary and banking affairs as follows:

1- By determining the official rediscount rate and loan interest rates which may vary according to the type of loan, bill, and instrument.

2- By determining, for different categories of banks according to their operations or on the basis of other criteria at its own discretion, the ratio of the bank's liquid assets to their total assets or to their different types of liabilities.

3- By determining the ratios of, and the rates of interest payable on, the legal deposits of banks at CBI. The said ratios may differ according to the structures and activities of the banks, but shall at no time fall below ten or exceed thirty percent.

4- By determining the maximum and minimum rates of interest and charges receivable or payable by banks.

5- By determining the ratio of the sum-total of paid up capital and reserves of banks to their different types of assets.

6- By determining the relative maximum amount of commitment on the part of banks emanating from opening letters of credit, effecting endorsements or issuing guarantees, as well as the type and amount of collateral for such commitments.

7- By determining the terms and conditions pertaining to hire-purchase transactions financed by banks.

8- By adopting regulations governing the opening of current, savings and other accounts.



9- By determining the types and amounts of prizes and other incentives offered by banks to attract current or savings deposits as well as rules relating to publicity in this respect.

10- By auditing the accounts, documents and instruments, and inspecting the operations of banks and obtaining information and statistics from them with due regard to the requirements of professional secrecy.

11- By limiting the activities of banks to one or more specific areas of operation whether temporarily or permanently;

12- By determining the manner in which savings and similar deposits with banks may be utilized.

13- By determining the maximum aggregate amount of overall loans and credits granted by banks or the maximum amount of their loans and credits in each specific field.

14- By determining the general conditions under which banks may obtain loans from individuals or issue certificates of deposit.

15- By adopting regulations referred to in Sections 1 to 14 of this Article for non-banking credit institutions.

**NOTE -** Application of the authority subject matter of this Article shall be subject to the prior approval of the Currency and Credit Council.

**ARTICLE 15-**The Governor of CBI shall represent the Government at the International Monetary Fund. The liaison between the State and the International Monetary Fund shall be through the CBI, and the fulfilment of all functions and duties and the application of all authority vested in Bank Melli Iran under the law Authorizing Participation of the Government of Iran in the International Monetary Fund being hereby transferred to CBI.

## Chapter 3- Organization

**ARTICLE 16-** CBI is composed of the following organs:
  I. The General Meeting;
 II. The Currency and Credit council;
III. The Executive Board;
IV. The Note Reserve Control Board;
 V. The Supervisory Board.

### I - The General Meeting

**ARTICLE 17**
  a. The General Meeting of the Bank is composed of the Minister of Finance, the Minister of Economy and one other Minister, appointed by the Council of



Ministers, representing the Government. The Minister of Finance shall be the Chairman of the General Meeting[1];

b. Members of the other organs of the Bank shall attend the General Meeting and participate in the discussions without a right to vote;

c. The General Meeting shall have the following functions;
    a. To consider and approve the Balance Sheet of CBI;
    b. To consider reports submitted by the Supervisory Board and to make final decisions in respect therein;
    c. To consider the recommended appropriation of the net profit and decide on it;
    d. To elect the members of the Supervisory Board upon the recommendation of the Minister of Economic Affairs and Finance;
    e. To fulfill other functions entrusted to the General Meeting under the provisions of this Act.

d. The General Meeting shall be held at least once every year at the latest by July 22nd of the next year. It may also convene in other times, at the discretion of the Minister of Economic Affairs and Finance, or upon recommendation of the Governor of CBI and invitation by the Minister of Economic Affairs and Finance;

e. The presence of all voting members and the Governor of CBI, or his Deputy, shall be requisite for any discussions and decisions in General Meetings;

f. Resolutions of the General Meeting shall be adopted with a majority vote.

### II - The Currency and Credit council

**ARTICLE 18**

a. In order to be in a position to consider and decide on the general policy of CBI and to supervise the monetary and banking affairs of the country, the Currency and Credit Council shall have the following duties:
    1- Examine and approve the organization, budget, employment code and internal regulations of CBI;
    2- Review and comment on the Balance Sheet of CBI in order to be propounded in the General Meeting;
    3- Review and approve the regulations mentioned in this Act;

---

1 - This Section has been modified on the basis of article 19 of the Act on Permanent Rules of National Development Plans (ratified in 2017) as follows:
"The General Meeting of the CBI is composed of:
  – The President (the Chairman of the General Meeting);
  – The Ministry of Economic Affairs and Finance;
  – The Head of Managing and Programming Organization; and
  – Two Ministers appointed by the Council of Ministers."



4- Comment on the banking, monetary and credit issues of the country as well as bills concerning loans, credit guarantees, and on any other issues to be referred to the Council by the Government;

5- Give consultative views and advice to the Government on banking, monetary and credit issues which, in the Council's opinion, may bear upon the economic conditions and especially the credit policy of the country;

6- Comment on any other issues to be referred to it within the framework of this Act by the Governor of CBI.

b. The Currency and Credit Council shall be composed of.[2]

1- The Governor of CBI;

2- The Prosecutor General or his deputy;

3- One of the Undersecretaries of the Ministry of Economic Affairs and Finance designated by the Minister of Economic Affairs and Finance;

4- The Deputy of the Management and Planning Organization designated by the relevant Minister;

5- President of the Chamber of Commerce, Industry and Mines;

6- Two experts in financial and monetary matters to be selected and appointed at the discretion of the Minister of Economic Affairs and Finance;

7- One Expert in Banking to be selected and appointed at the discretion of the Governor of CBI;

8- The Undersecretary of the Ministry of Agriculture and Rural Construction designated by the relevant Minister;

9- The Undersecretary of the Ministry of Commerce;

---

2 - This Subsection has been modified on the basis of article 15 of the Sixth Five-Year Development Plan of the I.R. of Iran Act, as follows:

89- The composition of the Currency and Credit Council is determined as follows:
  – The Minister of Economic Affairs and Finance or his deputy;
  – The Governor of the CBI;
  – The Head of the Planning and Budget Organization or his assistant;
  – Two Ministers appointed by the Council of Ministers;
  – The Minister of Industry, Mine and Commerce;
  – Two experts in monetary and banking fields recommended by the Governor of the CBI and confirmed by the President;
  – The Prosecutor General or his assistant;
  – The Chairman of the Chamber of Commerce, Industry and Mines;
  – The Chairman of the Chamber of the Cooperatives;
  – Members of the Parliament from the Finance Committee and the Planning and Budget Committee as observer members appointed by the Islamic Consultative Assembly (one member from each of the committees).

NOTE 1- The Governor of the CBI shall be the Chairman of the Currency and Credit Council.

NOTE 2- The expert's members of the Currency and Credit shall be changed for a period of two years and shall be eligible for reappointment.

The rule prescribed by Article 15 shall prevail over section (b) of article 18 of the Monetary and Banking Act ratified on July 9th, 1972 during the term of the Sixth Five-Year Development Plan (from 2017 to 2021).



WWW.CBI.IR

10- The Undersecretary of the Ministry of Industry designated by the relevant Minister;

11- The Undersecretary of the Ministry of Heavy Industries to be designated by the respective Minister;

12- The Undersecretary of the MINISTRY OF Mines and Metals to be designated by the respective Minister;

13- The Vice-Minister of Construction jihad to be designated by the respective Minister;

14- The Vice-Minister of Cooperation to be designated by the respective Minister

**NOTE 1-** The Governor of CBI will chair the Currency and Credit Council.

**NOTE 2-** The members mentioned in subsections 6, 7 of Section (b) of this Article shall be appointed to the membership of the Council for a period of two years and shall be eligible for reappointment.

**NOTE 3-** In case of resignation, death, disqualification or incapacitation for membership in the Council of any of the members mentioned in Subsections 6, 7 of Section (b) of this Article another person shall be appointed for the remaining term of office in the manner prescribed;

c. The Council shall convene at the invitation of the Governor of CBI or at the request of at least three of its members, and issues raised by the Governor or the requesting members will be propounded;

d. Meeting of the Council shall attain quorum with the presence of seven members, recommendations and decisions becoming effective with a minimum of six votes out of those present[3];

e. The Council may invite qualified persons for consultation;

f. Members of the council and those invited for consultation shall be obliged to preserve the council's information and secrets, save in the instances where they are legally required to divulge information or to bear witness;

g. For attendance at the meetings, members of the Council shall receive an attendance fee the amount of which shall be determined upon the recommendation of the Governor of the Bank and the approval of the General Meeting;

h. Before assuming office, members of the Currency and Credit Council shall take oaths in the General Meeting to exercise utmost care and impartiality in fulfilling

---

3 - Amended by Note to article 17 of the Act Concerning the Delegation of Duties and Powers of the Former Minister of Industry and Mines in Meetings of the Councils, Delegations and Assemblies to the Ministers of Industry, Heavy Industry and Mines and Metals(May 26, 1984) as follows:

"All meetings of the councils, delegations, and assemblies subject matter of this Act shall attain quorum with the presence of Two-thirds of the members, and decisions taken shall become effective with absolute majority."



WWW.CBI.IR

the functions entrusted to the Council, and to the effect that all decisions they take shall be in the interest of the country and that they shall treat as strictly confidential all secrets of the Bank and the Council.

## III - The Executive Board

**ARTICLE 19**

a. The Executive Board of the Bank shall consist of the Governor, the Deputy Governor, the Secretary General, and three Vice Governors each with powers and responsibilities specified in this Act;

b.

1- The Governor of CBI, as the Bank's highest executive and administrative authority, shall be in charge of all the affairs of the Bank excluding such responsibilities as have been entrusted to the other organs of the Bank under the provisions of this Act;

2- The Governor of CBI shall be responsible for the proper conduct of the Bank's affairs and the implementation of this Act and the regulations relating thereto;

3- The Governor of CBI shall represent the Bank before all official bodies, local and foreign, with the power of substitution;

4- The Governor may delegate part of his powers to members of the Executive Board and the Bank's employees and empower them to sign on his behalf;

5- The Governor of CBI shall be appointed to office upon the recommendation of the Minister of Economic Affairs and Finance, Approval of the Bank's general Assembly, and ratification of the Council of Ministers; and the Minister of Economic Affairs and Finance shall be required to issue and deliver his/her letter of appointment within five days[4];

---

4 - Amended by the Directive on Management of CBI ratified on November 15, 2014 by Iran Expediency Council:

1. The qualifications and competencies for appointment as the Governor:
   a) Scientific competence: Having PhD in economic, monetary and financial fields;
   b) Experimental competence: Having seven years of experience at policy making and management levels in economic, monetary and financial spheres, or five years of management experience in specialized areas of Bank Markazi (at the level of Director General and higher);
   c) Having a good reputation and the ability to perform tasks;
   d) Having no record of effective criminal convictions;
   e) Having no major financial offences.

2. Appointment process:
The Governor shall be appointed by the endorsement and decree of the President upon the recommendation of Minister of Economic Affairs and Finance and the approval of the Council of Ministers.

3. Term of Office:
The term of office of the Governor shall be five years and he/she shall be eligible for reappointment.
Note:



WWW.CBI.IR

c. (c) The scope of authority of the Deputy Governor of CBI shall be determined by the Governor and in the case of the Governor's absence, resignation, hiatus or death, the Deputy Governor shall wield all the powers of the Governor5;

d. (d) The Secretary General of the Bank shall be appointed to office upon the recommendation of the Governor of CBI and the approval of the General Meeting and shall also be responsible for the Currency and Credit Council Secretariat. The Secretary General of the Bank shall send the minutes of the Currency and Credit Council meetings to the Minister of Economic Affairs and Finance for his/her information;

e. (e) The Vice Governors of the Bank shall be appointed by the Governor of CBI who shall also determine their duties.

## ARTICLE 20

a. The General Meeting shall determine salary and benefits of the Governor and the Deputy Governor of CBI, to be paid out of the Bank's budget;

b. Salary and benefits of the Secretary General and the Vice Governors of the Bank shall be determined upon the recommendation of the Governor and approval of the General Meeting and shall be paid out of the Bank's budget;

c. Before assuming office, the Governor, Deputy Governor, Secretary General and Vice Governors of the Bank shall take oaths in the General Meeting to keep the Bank's secrets and to perform their statutory duties in the best manner;

---

The Governor of Central of I.R. of Iran who has more than a year left of his term of office, may be changed by the new president in accordance with the procedures set out in this Act.

4. Removal Criteria

In the case of one of the following the Governor of Central of I.R. of Iran shall be removed from office:

1. The loss of one or more of the conditions mentioned and/or the absence, from the beginning, of one or more of the qualifying conditions.

2. The inability or failure to perform legal duties, or to accomplish the objectives of Central of I.R. of Iran.

5. Removal Process

The Governor of Central of I.R. of Iran shall be removed from office by the decree of the President upon the recommendation of the President and after the approval of two-thirds of the members of the Council of Ministers. In case the Governor of Central of I.R. of Iran is inclined, the voting in the Council of Ministers takes place after hearing the views of the Governor.

6. The resignation of the Governor shall be accepted by the President.

Note:

In the event of removal, resignation or death of the Governor of Central of I.R. of Iran, action shall be taken to appoint the Governor according to the process set forth in this Act within a month. Meanwhile, the Deputy Governor shall wield all the powers of the Governor.

5 According to Note 1 of Article 19 of the Act on Permanent Rules of National Development Plans (ratified in 2017):

"The Deputy Governor of the Central Bank of the I.R. of Iran shall be appointed by Presidential decree and after approval of the General Meeting of the Central Bank of the I.R. of Iran, from among reputable experienced monetary, banking and economic experts with a minimum of ten years of work experience and minimum Master Degree in related disciplines.



   d. During their terms of office, members of the Executive Board shall be subject to the Act concerning Non-interference of Ministers, Parliament representatives and Government Employees in Governmental and State Transactions, and shall not own shares in banks or in private credit institutions;

   e. During their terms of office, members of the Executive Board may not hold executive positions in government or private organizations;

   f. The Governor and Deputy Governor of CBI may accept non-executive positions in charitable and philanthropic institutions only and as lecturers at universities or institutes of higher education with the approval of the General Meeting. Other members of the Executive Board may accept similar positions with the approval of the Governor of CBI.

## IV - The Note Reserve Control Board

### ARTICLE 21

   a. The Note Reserve Control Board shall be in charge of supervising the proper execution of the provisions of Article 5 of this Act through taking delivery of and safeguarding newly-printed bank notes, keeping records of the assets referred to in Article 5, maintaining inventories for the National Jewels and formulating regulations pertaining to their exhibition and controlling their transfer in and out of the Bank vaults, and finally supervising the destruction of the notes withdrawn from circulation;

   b. The Note Reserve Control Board shall be composed of:

      1- Two members of the Islamic Consultative Assembly nominated by the aforementioned assembly;

      2- The Governor of CBI or Vice Governor;

      3- The Prosecutor General or his deputy;

      4- The State Treasurer;

      5- The Head of the Government Audit Court;

      6- The Chairman of the Supervisory Board.

**NOTE-** The members of the Islamic Consultative Assembly shall be appointed to the Board for a period determined by the Islamic Consultative Assembly and at any rate shall remain on the Board until such time as their successors are appointed.

   c. Regulations pertaining to the execution of the duties entrusted to the Note Reserve Control Board shall be adopted and put into practice by the Board itself;

   d. Members of the Note Reserve Control Board shall be remunerated for their attendance at Board meetings at a rate to be determined upon the recommendation of the Governor of the Bank and the approval of the General Meeting.



WWW.CBI.IR

## V - The Supervisory Board

**ARTICLE 22**

a. The Supervisory Board shall be responsible for auditing the accounts and commitments of CBI, and shall express its opinion as to the accuracy of the said accounts and commitments;

b. The duties of the Supervisory Board shall be as follows:

    1- To audit the annual Balance Sheet of CBI and to prepare a report thereon for the Annual General Meeting;

    2- To audit the detailed lists of assets and liabilities of the Bank and to audit and certify for publication the summary of its accounts;

    3- To inspect the operations of the Bank in order to verify that they conform to legal requirements.

c. The Supervisory Board shall be composed of a Chairman and four members selected from amongst qualified auditors or persons well versed in accountancy or banking with at least 10 years of experience, appointed for a term of two years on the recommendation of the Minister of Economic Affairs and Finance and the approval of the General Meeting. And their reappointment shall not be prohibited;

d. The Chairman of the Supervisory Board shall, in the capacity of a liaison officer submit required reports on the Bank's activities and current decisions to the Minister of Economic Affairs and Finance.

**NOTE -** The Supervisory Board, in the performance of the aforesaid duties, may inspect all the documents pertaining to the accounts and assets of the Bank, and may have access to all the regulations, decisions and writings of the Bank it deems necessary. The Board may submit views to the Governor of the Central Bank of the I.R. of Iran within the scope of its duties, without interfering in the Bank's current affairs.

**ARTICLE 23**

a. The salaries and benefits payable to members of the Supervisory Board shall be determined by the Minister of Economic Affairs and Finance and shall be payable out of the Ministry of Economic Affairs and Finance budget;

b. Before assuming office, members of the Supervisory Board shall take oaths before the General Meeting to keep the Bank's secrets confidential and to perform their statutory duties in the best manner;

c. Members of the Supervisory Board shall be subject to the Act concerning Non-participation of Ministers, Members of Parliament and Government Employees in Governmental and State Transactions;

d. Members of the Supervisory Board may not hold executive positions in Governmental or private organizations during their terms of office.

e. Assuming non-executive positions in charitable and philanthropic institutions and teaching at universities or institutes of higher education shall not be prohibited with the approval of the General Meeting;



    f.  The Supervisory Boards internal regulations shall be drawn up by the Board itself, and shall come into force upon the approval of the Minister of Economic Affairs and Finance.

## Chapter 4- General Provisions

### ARTICLE 24
    a.  The Bank's fiscal year shall commence on March 21st of each year and shall end on March 20th of the same year;
    b.  The Balance Sheet and Profit and Loss Account of the Bank shall be submitted to the Supervisory Board at least one month before the Annual General Meeting will convene;
    c.  CBI shall publish a summary statement of its accounts at least once every month.

### ARTICLE 25
    a.  The net profit of the Bank for each year shall be appropriated as follows:
        1-  Income tax, payable to the Public Revenue Account of the Government, on the basis of regulations pertaining to Governmental companies;
        2-  Ten percent of the net profit to the Statutory Reserve Account until such time as the said reserve equals the Bank's capital;
        3-  A certain amount, as recommended by the Governor and approved by the General Meeting, to the Contingency Reserve Account;
        4-  A certain amount, as recommended by the Governor and approved by the General Meeting, to be carried forward to the ensuing year account;

    b.  The balance of the net profit, after the appropriation set forth in Section (a) of this Article, shall belong to the Government.

### ARTICLE 26
    a.  The Government shall be required to issue bearer Treasury Bills with specified dates to cover probable losses sustained as a result of changes in the legal parity rates in terms of gold or foreign currencies or as a result of occurrences arising out of force-majeure, and shall place such Bills at the disposal of the Bank;
    b.  [Abolished].
    c.  Gains or losses resulting from implementation of the payments agreements subject of Section (e) of Article 12 of this Act shall be credited to the Government's account.

### ARTICLE 27
    a.  All binding documents issued by CBI shall bear two authorized signatures, with the exception of documents relating to the Bank's internal affairs.



WWW.CBI.IR

b. The period of and procedure for preservation of the Bank's commercial documents and papers and books in their originals and also the procedure governing their conversion to pictures, films, and the like shall be in accordance with regulations to be prescribed by the Currency and Credit Council. Such pictures and films and the like shall, after the lapse of the period prescribed in the said regulations, have the validity of the originals in court.

**ARTICLE 28-** Bank notes, gold, silver and metal coin blanks belonging to CBI shall be exempt from customs duties and levies, commercial profit taxes and all other taxes or levies.

**ARTICLE 29-** Where the economic and foreign exchange interests of the country require, CBI may, with the approval of the Council of Ministers, exempt exporters of one or more types of commodities from submitting Foreign Exchange Undertakings.

# PART THREE – BANKING

## Chapter 1- Conditions Governing the Establishment of Banks

**ARTICLE 30**
  a. Establishment of banks, engagement in banking operations and the use of the word "Bank" in the title of credit institutions shall be authorized only in compliance with the provisions of this Act;
  b. Definition of the term "banking operations" shall rest with the Currency and Credit Council;
  c. The establishment of a bank shall be subject to approval of its Article of Association by the Currency and Credit Council and issuance of license from CBI;
  d. Company registration authorities may not act upon an application for registration of a bank in Iran unless the application is accompanied by the license issued by CBI and a certified copy of the relevant Articles of Association as approved by the Currency and Credit Council;
  e. Any alteration in the Articles of Association of a bank shall require approval of the Currency and Credit Council;
  f. The establishment and closure of branches, counters or agencies by banks in or out of the country shall be subject to regulations to be approved by the Currency and Credit Council.

**NOTE -** Banks which have been established prior to the passage of, and whose Articles of Association do not comply with the provision of, this Act shall be required to modify their Articles of Association to comply with the provisions of this Act within one year of its passage and have the new Articles of Association approved by the Currency and Credit Council.



## ARTICLE 31

a. Banks may only be incorporated as public joint-stock companies with registered shares;

b. The Managing Director, the Chairman of the Board of Directors, the majority of the members of the Executive Board and the Board of Directors of Iranian banks shall be Iranian nationals;

c. Any bank over 40 percent of whose capital belongs to natural persons of foreign nationality or to foreign legal entities, shall, for the purposes of this Act, be regarded as a foreign bank and shall be registered as such. For the purpose of this Article, any legal entity not having 75 percent of its capital owned by natural or legal persons of Iranian nationality shall be regarded as foreign;

d. The limit on the contribution of foreign parties to the share capital of Iranian banks shall be determined upon recommendation of the CBI and approval of the Board of Ministers, in compliance with the Law of Implementation of General Policies on Article 44 of the Constitution and its subsequent amendments[6];

e. As from the date of passage of this Act, foreign banks and foreign non-banking credit institutions engaged in conventional banking operations may be established only with the approval of the Islamic Consultative Assembly. A non-banking credit institution is one which does not use the word "bank" in its title but is considered by CBI as an intermediary between suppliers of funds and credits and applicants, and whose activities bear upon the volume and distribution of credits.

## ARTICLE 32

a. The share capital of banks shall be solely payable in State currency;

b. The minimum share capital of Iranian banks shall be two hundred million Rials, wholly subscribed and at least fifty percent paid up. The paid up capital shall be deposited with CBI prior to the submission of the application for establishment. The minimum capital of foreign banks shall be two hundred million Rials wholly deposited at CBI prior to the submission of the application for establishment;

c. CBI, may, with the approval of the Currency and Credit Council, prescribe the period within which the capital of Iranian banks shall be paid up and shall notify the banks for compliance;

d. CBI may, with the approval of the Council of Ministers, Increase the minimum amount of the share capital (Section (b) of this Article) for all banks or for banks operating in special fields.

---

6- Amended by Article 18 of the Act on Permanent Rules of National Development Plans (ratified in 2017).



## Chapter 2 – Terms and conditions Governing Banking Operations

**ARTICLE 33**

a. The ratio of and the manner in which the Statutory Reserves of banks is created, as well as the manner in which they may be utilized shall be determined by a regulation to be approved by the Currency and Credit Council. Appropriation to the Statutory Reserves shall not be less than 15 or exceed 20 percent of the annual net profits. Appropriations to the Statutory Reserve shall be optional once the amount of such Reserve equals the capital of the bank;

b. Should, as a result of losses sustained, the capital of a bank falls below the minimum amount prescribed in this Act, the bank shall restore the minimum capital in the manner determined by a regulation to be approved by the Currency and Credit Council;

c. The Currency and Credit Council shall prescribe the manner and principles in which accounting and bookkeeping is done by banks so that the respective balance sheet will reflect all the assets and liabilities of the bank, and banks will be required to apply them;

d. The depreciation rate of depreciable movable and immovable assets and establishment and development expenses, as well as the amount of Contingency Reserves of banks shall be determined by the Currency and Credit Council. All banks shall be required to abide by them;

e. Banks shall have their balance sheets and profit and loss accounts certified by Certified Accountants;

f. The period of and procedure for preservation of bank's commercial documents and books in their originals and also the procedure for their conversion to pictures, films and the like shall be in accordance with prescribed by-law to be approved by the Currency and Credit Council. Such pictures, films, and the like, shall, after the lapse of the period prescribed in the said b, have the validity of the originals in court.


**ARTICLE 34-** It is forbidden for Banks to undertake the following operations:

1- Purchase and sale of goods for trading purposes;

2- Dealing in immovable property except in the case of banks established for this purpose;

3- Purchasing shares or contributing to the capital of one or more companies, or purchasing local or foreign securities for their own account in an amount exceeding the amount prescribed in special directives and regulations to be drawn up by CBI;

4- Granting credits to members of their own organs and to institutions wherein the said members hold interest, and to other natural persons or legal entities in excess of the limits determined by CBI in special directives or regulations;



WWW.CBI.IR

5- Granting credits to the members of the organs, heads of departments, and inspectors of CBI, except with due observance of a regulation to be approved by the Currency and Credit Council in this respect;

6- Issuing sight bills to the order of the bearer.

**NOTE -** Acquisition of immovable property in lieu of claims or for the purpose of providing working place or housing for bank employees, and dealings in such property in accordance with conditions to be set forth by CBI shall not be subject to the prohibition subject matter of Section 2 of this Article.

## ARTICLE 35

a. Those convicted of theft, bribery, embezzlement, breach of trust, fraud, counterfeiting and dissimulation, drawing dud checks, culpable or fraudulent bankruptcy, notwithstanding whether the sentence was issued by domestic or foreign courts, and irrespective of whether the person was a principal offender, an accomplice or an accessory, shall be barred from assuming administrative positions of any kind in banks;

b. Directors or managers of one bank may not own shares or accept positions in another bank without permission from CBI;

c. Every bank shall be liable for and shall indemnify losses sustained by its clients as a result of its operations. The Managing director, the Chairman of the Board of Directors, the members of the Executive Board and of the Board of Directors of every bank shall be liable vis-a-vis shareholders and clients for losses incurred through their individual violation of the provisions of the bank's Article of Association or the provisions of, or the laws and regulations pertaining to this Act.

**NOTE -** The authority competent to determine and adapt rulings issued by foreign courts in connection with Section (a) of this Article shall be the Ministry of Justice.

**ARTICLE 36-** CBI shall determine the manner in which balance sheets and profit and loss accounts of banks and credit institutions are to be prepared.

**ARTICLE 37-** Banks shall comply with the provisions of this Act, and the regulations based on it, the directives of CBI issued under the present Act or the regulations pertaining to it, and the provisions of their approved Articles of Association.

**ARTICLE 38-** Abolished[7].

# Chapter 3- Dissolution and Bankruptcy of Banks

---

7- On the basis of the Bill on Dissolution of the Banks Association.



WWW.CBI.IR

**ARTICLE 39-** In any of the following cases, the administration of a bank may be entrusted to CBI, other arrangements may be made for its administration, or its establishment license may be revoked upon the recommendation of the Governor of CBI, the confirmation of the Currency and Credit Council and the ratification of a board consisting of the Prime Minister and the Ministers of Finance, Economy and Minister of Justice:

    a.  Where the competent authorities of the bank so request;

    b.  Where the bank has not commenced its operations within one year of the date the establishment license has been served upon it;

    c.  Where the bank stops its operations without any plausible excuse, for a period exceeding one week;

    d.  Where the bank acts in contravention of this Act and the regulations adopted based on it, the directives of CBI issued on the basis of this Act and the regulations pertaining to it, or its own Articles of Association;

    e.  Where the bank is threatened by insolvency or is proved insolvent.

**NOTE -** A bank whose establishment license is revoked shall, from the date its establishment license is revoked, operate under instructions from CBI.

**ARTICLE 40-** The manner in which banks, in cases referred to in Article 39, shall be managed as well as the manner in which the establishment license is revoked, shall be according to a regulation to be approved by the Finance committees of the Islamic Consultative Assembly.

**ARTICLE 41**

    a.  In cases where a bank is declared insolvent or bankrupt, the Court shall inquire the views of CBI prior to rendering any decision. CBI shall submit its views to the Court in writing within one month of the date of receiving the Court's inquiry. The Court shall take the appropriate decision with due regard to the views of CBI and the evidence on hand;

    b.  Liquidation of a bankrupt bank shall rest with the Department of Bankruptcy Affairs Liquidation;

    c.  In all cases of dissolution or bankruptcy of banks, liquidation of their affairs shall be carried out with the supervision of a representative from CBI;

    d.  Repayment of saving deposits or similar deposits up to the amount of fifty thousand Rials, in the first place, and that of current accounts and time deposits up to the same amount, in the second place, respectively, shall have priority over all other obligations of dissolved or bankrupt banks and other preferential rights.

    e.  Upon dissolution or bankruptcy, a bank's name shall be deleted from the registers of the Registration Office.

**NOTE-** The provisions of Articles 39, 40 and 41 (with the exception of paragraph (d) of the last  Article of the State Monetary and Banking Act enacted July 9, 1972 shall also



apply to all non-banking credit institutions, which at the discretion of the Central Bank are engaged in banking operations, with the exception of governmental and non-governmental development and protection funds, such as Agriculture Section Development Protection Fund, within the limits set forth in their present Articles of Association.

## Chapter 4- Penal and Disciplinary Provisions

### ARTICLE 42

a. Purchase and sale of foreign exchange and engagement in any type of banking operations resulting in foreign exchange transfers or creating an obligation in foreign currencies, or import or export of foreign or the State currency, without observance of the regulations to be laid down by the CBI pursuant to Article 11 of the present Act, shall be prohibited. Violators shall be condemned to payment of monetary penalty up to 50% of the amount of the violation involved;

b. The establishment of banks, engagement in banking operations and the use of the word "bank" by credit institutions on their titles, without observance of the provisions of this Act is prohibited. Perpetrators shall be liable to disciplinary confinement of up to six months. Where necessary, the Public Prosecutor may, at the request of CBI, order temporary closure of the institution until such time as its fate is decided upon by the court.

**NOTE -** In the aforesaid cases, criminal prosecution shall depend upon charges brought by CBI.

**ARTICLE 43-** Banks and credit institutions recognized by the Currency and Credit Council as having failed to observe the ratios referred to in Sections 2, 3, 5, and 6 of Article 14, shall pay an amount equivalent to 12% per annum of the amount of violation.

**ARTICLE 44-** Violation of other provisions in this Act or its regulations, and the directives of CBI issued on the basis of this Act or its regulations shall entail the following disciplinary penalties:

1- Written warning to violating managers or persons in charge;

2- Payment of an amount up to a maximum of two hundred thousand Rials per day over the period of violation;

3- Barring the bank or the non-banking credit institution, inform engaging in certain banking operations, temporarily or permanently. The authority vested with the power to investigate violations referred to in this Article and to issue orders for disciplinary penalties shall be the Banks Disciplinary Board which shall be composed of the prosecutor General's representative, one representative from the Bankers Association and one of the members of the Currency and Credit council as nominated by the Council. The Secretary General of the Bank shall have the position of the prosecutor of the Board.



WWW.CBI.IR

Orders issued by the Disciplinary Board may be appealed to the Currency and Credit Council within ten days of the date the order is served. The Council's verdict shall be final.

**NOTE 1-** Amounts referred to in Article 43 and in Section (2) of this Article, shall be collected from the bank or institution involved by CBI and shall be credited to the public revenue account.

**NOTE 2-** Investigation into and determination of violations, determination of each type of disciplinary measures for violations, application for appeal and appeal procedure, and the implementation of decisions by the Disciplinary Board and the Currency and Credit Council shall be in accordance with a regulation to be approved by the Currency and Credit Council.

**ARTICLE 45-** All other legislation and regulations conflicting with the provisions of this Act shall be considered rescinded as of the date of enforcement of this Act. And, so long as the regulations pertaining to the present Act are not approved, the former regulations will be applicable, provided that they would not be in conflict with the provisions of this Act in the judgment of the Currency and Credit Council.

*** 

The Act set forth above, comprising forty five Articles and twenty Notes, was passed by the National Consultative Assembly in its sitting of Sunday, July 9, 1972, subsequent to approval by the Senate in its sitting of Wednesday, June 28, 1972.

Abdollah Riazi
Speaker of the House