**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knippe (Dec.), *et al.*, <br><br>                 Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN; BANK MARKAZI, a/k/a Central Bank of Iran; BANCA UBAE SpA; CLEARSTREAM BANKING S.A.; and JP MORGAN CHASE BANK, N.A., <br><br>                 Defendants. | 13-cv-9195 (LAP) <br><br> <u>**Oral Argument Requested**</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
<u>**MOTION TO DISMISS OF CLEARSTREAM BANKING S.A.**</u>

DAVIS POLK & WARDWELL LLP
Benjamin S. Kaminetzky
Gerard X. McCarthy
R. Brendan Mooney
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Counsel to Clearstream Banking S.A.*

# TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .....................................................................................................................3

I.    NO PERSONAL JURISDICTION EXISTS OVER CLEARSTREAM ................3

      A.    No Specific Jurisdiction Exists under CPLR Section 302(a)(1)..................4

      B.    No Specific Jurisdiction Exists under the Due Process Clause ..................8

            1.    Plaintiffs' Turnover Claim Does Not Arise Out of or Relate
                  to Clearstream's New York Conduct.................................................8

            2.    The Exercise of Personal Jurisdiction Would Be
                  Unreasonable.....................................................................................9

II.   BANK MARKAZI DOES NOT HAVE EQUITABLE TITLE TO, OR A
      BENEFICIAL INTEREST IN, THE RIGHT TO PAYMENT AT ISSUE ..........12

III.  SECTION 8772 DISCRIMINATES AGAINST CLEARSTREAM IN
      VIOLATION OF THE EQUAL PROTECTION COMPONENT OF THE
      FIFTH AMENDMENT ........................................................................................15

CONCLUSION................................................................................................................20

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Autotech Techs. LP v. Integral Rsch. & Dev. Corp.*,
    499 F.3d 737 (7th Cir. 2007) ........................................................................... 12

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999) ............................................................................ 4

*Bank Markazi v. Peterson*,
    136 S. Ct. 1310 (2016) ..................................................................................... 15

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*,
    137 S. Ct. 1773 (2017) ..................................................................................... 5

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ......................................................................................... 5

*Engquist v. Ore. Dep't of Agric.*,
    553 U.S. 591 (2008) ......................................................................................... 18

*Fortress Bible Church v. Feiner*,
    694 F.3d 208 (2d Cir. 2012) ............................................................................ 16

*Hu v. City of N.Y.*,
    927 F.3d 81 (2d Cir. 2019) .............................................................................. 18

*Koehler v. Bank of Berm. Ltd.*,
    12 N.Y.3d 533 (2009) ...................................................................................... 5

*Lans v. Adduci Mastriani & Schaumberg L.L.P.*,
    786 F. Supp. 2d 240 (D.D.C. 2011) ............................................................... 12

*Leibovitch v. Islamic Republic of Iran*,
    188 F. Supp. 3d 734 (N.D. Ill. 2016) ............................................................. 11

*Licci v. Lebanese Canadian Bank*,
    20 N.Y.3d 327 (2012) ...................................................................................... 4

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) .............................................................................. 9

PAGE(S)

*Newark Cab Ass'n v. City of Newark*,
  901 F.3d 146 (3d Cir. 2018) ..................................................................... 17

*Newmont Mining Corp. v. Anglogold Ashanti Ltd.*,
  344 F. Supp. 3d 724 (S.D.N.Y. 2018) ......................................................... 8

*News Am. Pub., Inc. v. F.C.C.*,
  844 F.2d 800 (D.C. Cir. 1988) ................................................................. 20

*Peterson v. Islamic Republic of Iran*,
  963 F.3d 192 (2d Cir. 2020)..................................................................... 7

*Peterson v. Islamic Republic of Iran*,
  876 F.3d 63 (2d Cir. 2017) .................................................... 4, 6, 7, 15, 16

*Peterson v. Islamic Republic of Iran*,
  No. 13-cv-9195 (KBF), 2015 WL 731221 (S.D.N.Y. Feb. 20, 2015) ....... 19

*Progressive Credit Union v. City of N.Y.*,
  889 F.3d 40 (2d Cir. 2018) ................................................................. 17, 18

*Reynolds v. Arnone*,
  402 F. Supp. 3d 3 (D. Conn. 2019) ......................................................... 17

*Ry. Express Agency, Inc. v. People of State of N.Y.*,
  336 U.S. 106 (1949) ................................................................................. 19

*Shaheen Sports, Inc. v. Asia Ins. Co.*,
  No. 11-CV-920 (LAP), 2012 WL 919664 (S.D.N.Y. Mar. 18, 2012) ....... 10

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019) ..................................................................... 8

*Vill. of Willowbrook v. Olech*,
  528 U.S. 562 (2000) ................................................................................. 18

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................... 8

STATUTES & RULES

22 U.S.C. § 8772 ............................................................................. *passim*

28 U.S.C. § 1605A ...................................................................................... 3

28 U.S.C. § 1605(a)(7) ............................................................................... 3

N.Y. CPLR Art. 53 ................................................................................... 11

N.Y. CPLR § 302(a)(1) ............................................................................... 4

P<small>AGE</small>(S)

N.Y. U.C.C. § 8-110(b) ................................................................. 13

N.Y. U.C.C. § 8-112 cmt. 3 .............................................................14

N.Y. U.C.C. § 8-503 cmt. 2 ........................................................... 14

N.Y. U.C.C. §§ 8-505 - 8-508 ........................................................ 14

Terrorism Risk Insurance Act § 201 ................................................. 3

U.S. Const. V ............................................................................... 16

O<small>THER</small> A<small>UTHORITIES</small>

Press Release, Senator Tom Cotton, Colleagues Introduce Bill to Support Victims of
Iranian Terrorism, (May 16, 2019),
    https://www.cotton.senate.gov/?p=press_release&id=1127
    (last visited Oct. 12, 2020) ...................................................... 17

U.N. Convention on Jurisdictional Immunities of States and Their Property,
    G.A. Res. 59/38 (Dec. 2, 2004), Art. 19(c) ............................... 12

Clearstream Banking S.A. ("Clearstream") respectfully submits this reply memorandum of law in support of its motion to dismiss.[1]  Clearstream also requests the opportunity to present oral argument on its motion.

## PRELIMINARY STATEMENT

Plaintiffs do not dispute that the right to payment of which they seek turnover is located in Luxembourg.  They do not dispute that it has always been located in Luxembourg.  They do not dispute that it never existed in New York.  And they do not dispute that it could not exist in New York.  Far from "bald assertions" (Pls. Opp. at 6),[2] these basic, unrefuted, and irrefutable facts compel dismissal for lack of personal jurisdiction.  Nowhere in their fifty pages of briefing do Plaintiffs cite a case finding specific jurisdiction under comparable circumstances, because there is none.  The exercise of jurisdiction here would not only be unprecedented but also potentially calamitous, particularly in light of the risk of ruinous double liability that Clearstream faces as a result of litigation being aggressively pursued against it by Bank Markazi in Luxembourg with respect to the right to payment at issue.

Plaintiffs' turnover claim in reliance on Section 8772 also fails because under the relevant law—Luxembourg law—Bank Markazi does not have "equitable title to, or a beneficial interest in" the right to payment.  In their argument to the contrary, we learn from Plaintiffs that their handcrafted statute supposedly permits them to cherry-pick portions of law they like and ignore the unfavorable parts.  So, in Plaintiffs' telling, Article 8 of the Uniform Commercial

---

[1] To the extent that capitalized terms are not defined here, they have the same meaning as in the Consolidated Memorandum of Law in Support of Motion to Dismiss and Opposition to Plaintiffs' Motion for Summary Judgment or, in the Alternative, a Preliminary Injunction, of Clearstream Banking S.A. (Sept. 11, 2020) (ECF No. 252) ("Clearstream Br.").

[2] Pls.' Consol. Mem. of Law on Reply in Further Supp. of Mot. for Summ. J. or, in the Alternative, a Prelim. Inj., and in Opp. to Bank Markazi and Clearstream Banking, S.A. Motions to Dismiss (Oct. 2, 2020) (ECF No. 263) ("Pls. Opp.").

Code applies to "determine beneficial ownership," just not those provisions that make clear that foreign law controls the question or that otherwise directly undermine Plaintiffs' assertions. This, of course, is nonsense.  Under applicable law, UBAE is the only entity with rights to or an interest in the right to payment credited to UBAE sundry account 13675, regardless of whether the parties have colloquially referred to Bank Markazi as the "beneficial owner" of the right to payment.

Finally, Plaintiffs cannot proffer a legitimate justification for Section 8772's disparate treatment of Clearstream among institutions who have been alleged to hold assets for Iran abroad.  Seemingly aware of the constitutional defect, Plaintiffs first claim that Clearstream was not actually singled out by the law because Clearstream is not expressly identified by name and "[i]t is conceivable that Clearstream could have transferred the relevant assets to another foreign securities intermediary that would then be subject to a turnover order issued under [Section] 8772."  (Pls. Opp. at 41.)  How that is remotely "conceivable" under the circumstances of this case (which the statute identifies by docket number) Plaintiffs do not say.  What remains is an unduly cramped view of Clearstream's comparators for equal protection purposes and a series of baseless justifications for the discrimination against Clearstream.  These include, remarkably, that the discrimination is permissible to avoid placing an "undue burden"—the very burden that Plaintiffs' statute makes Clearstream shoulder—on other financial institutions.  (Pls. Opp. at 42.) In other words, the disparate treatment is acceptable because its deleterious effects must be confined to Clearstream.  That rationale, if accepted, would swallow the Equal Protection Clause whole.

## ARGUMENT

## I.      NO PERSONAL JURISDICTION EXISTS OVER CLEARSTREAM

This Court lacks personal jurisdiction over Clearstream because Plaintiffs' request for turnover of an asset that is and always has been located abroad does not arise from or relate to Clearstream's conduct in New York.[3]

As Clearstream established in its opening brief, Plaintiffs must demonstrate both that the exercise of personal jurisdiction over Clearstream (i) is permissible under New York law; and (ii) comports with due process.  (Clearstream Br. at 20-22.)  Plaintiffs continue to seek to sidestep New York's long-arm statute but have subtly recast their argument for doing so.  They have abandoned their assertion that the preemptive language in Section 8772 somehow constitutes a nationwide service of process provision[4] and now contend that the language of the statute simply does away with the foundational two-step personal jurisdiction analysis.  (Pls. Opp. at 7-8.)  Not surprisingly, despite numerous federal statutes containing broad "notwithstanding" language, including in the judgment enforcement context,[5] Plaintiffs do not cite—and Clearstream has not

---

[3] Plaintiffs do not contend—nor could they—that Clearstream is subject to general jurisdiction in New York.  (Clearstream Br. at 23.)  Nor do Plaintiffs contend that Clearstream's New York conduct differs from its United States conduct for purposes of the jurisdictional analysis.

[4] Plaintiffs state that they did not argue this in their opening brief and profess confusion at Clearstream having understood them to have done so.  (Pls. Opp. at 8 ("Contrary to Clearstream's assertion, Plaintiffs have not suggested that Congress' decision to preempt New York's long-arm statute constitutes a nationwide service of process provision.").)  But there is no other way to reasonably interpret their opening brief.  (Pls. Br. at 25 (citing case for proposition that "where a federal statute authorizes nationwide service, personal jurisdiction extends to the limit permitted by the Due Process Clause of the Fifth Amendment").)

[5] *See, e.g.,* section 201 of the Terrorism Risk Insurance Act ("Notwithstanding any other provision of law . . . , in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605A or 1605(a)(7) . . . of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist

located—a single case where any court has addressed, let alone accepted, Plaintiffs' novel

argument.  This Court should decline Plaintiffs' invitation to be the first.

### A.    No Specific Jurisdiction Exists under CPLR Section 302(a)(1)

CPLR Section 302(a)(1) requires that a plaintiff's claim "arise from" a defendant's

transaction of business within New York.  Plaintiffs state that the "arising from prong" is

"relatively permissive" and must take into account the "totality of the circumstances."  (Pls. Opp.

at 13) (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012) ("*Licci II*") and

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999)).

But as Plaintiffs concede (Pls. Opp. at 13), CPLR 302(a)(1) requires a plaintiff to show that "at

least one element [of the cause of action] arises from the New York contacts."  *Licci II*, 20

N.Y.3d at 341.[6]  Here, <u>no</u> element of Plaintiffs' claim for turnover in reliance on Section 8772

arises from Clearstream's New York conduct.  Indisputably, "the assets at issue are . . .

represented by a right to payment in the possession of Clearstream located in Luxembourg."

*Peterson v. Islamic Republic of Iran*, 876 F.3d 63, 87 (2d Cir. 2017).  The right to payment at

issue has always existed in Luxembourg.  *Id.*  It never existed—and cannot exist—in New York,

where Clearstream only maintains a representative office that is prohibited from holding

customer accounts or deposits.  (Clearstream Br. at 24.)  Plaintiffs' claim for turnover simply

does not require them to prove <u>anything</u> regarding Clearstream's New York conduct.  Plaintiffs

do not and cannot cite a single case where a United States court exercised specific jurisdiction

---

party) shall be subject to execution or attachment in aid of execution in order to satisfy such
judgment . . . .").

[6] *See also* Pls. Opp. at 4 ("§ 8772 defines the elements of Plaintiffs' claim and, thus, the type of
conduct that subjects Clearstream to personal jurisdiction in connection with that claim.").

over a third-party garnishee in a mere turnover action with respect to an asset located abroad.[7]

Indeed, in their opposition brief, Plaintiffs hardly cite any personal jurisdiction cases at all.

What Plaintiffs do instead is manufacture ties between the statutory requirements of

Section 8772 and Clearstream's New York conduct.  For example, Plaintiffs state that

"Clearstream's role 'as a foreign securities intermediary' is an essential element of Plaintiffs'

[Section] 8772 claim," and Clearstream could not effectively serve as a global financial

institution without New York contacts.  (Pls. Opp. at 5.)  This, however, is nothing but a close

cousin of Plaintiffs' earlier argument[8] that Clearstream is subject to jurisdiction because it is

doing business in the United States—in fact, Plaintiffs now seize on the three words that precede

that very "doing business" requirement in Section 8772.  *See* 22 U.S.C. § 8772(a)(1)(A)

(purporting to apply to assets "held by or for a foreign securities intermediary doing business in

the United States").  The argument fails for the same reason—specifically, that it "resembles a

loose and spurious form of general jurisdiction," which the Supreme Court has rejected.

(Clearstream Br. at 25-26) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San

Francisco Cty.*, 137 S. Ct. 1773, 1780-81 (2017)).[9]  Plaintiffs also contend that their claims arise

out of Clearstream's New York conduct because Section 8772 applies to "a financial asset of

---

[7] Although Plaintiffs cite to *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533 (2009), the third-party garnishee there had "consented . . . to the personal jurisdiction of the court," which is perhaps not surprising given the far lower bar for the exercise of <u>general</u> jurisdiction prior to the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).  But the only question here is whether there is <u>specific</u> jurisdiction over Clearstream.

[8] *See* Pls. Br. at 30.

[9] Likewise, Plaintiffs' continued intonation of the "totality of the circumstances" language (Pls. Opp. at 9) does not magically imbue it with the capacity to create jurisdiction based on contacts unrelated to the cause of action.  *See Bristol-Meyers*, 137 S. Ct. at 1781 (rejecting any approach that "relaxe[s]" "the strength of the requisite connection" based on defendant's general forum contacts).

Iran" that Clearstream "holds abroad." (Pls. Opp. at 7.) However, that "right to payment," which is not a financial asset of Iran, but a debt owed to UBAE, is held—and has always been held—in Luxembourg. *Peterson*, 876 F.3d at 87.

Unable to demonstrate that any element of their turnover claim arises from Clearstream's New York conduct, Plaintiffs resort to a series of misleading factual assertions in an effort to establish the required connection. For instance, Plaintiffs assert that Clearstream has failed to address (i) "its regular receipt and processing of Bond Proceeds" through the JPMorgan Account; (ii) "the connection between the deposit of Bond Proceeds" in the JPMorgan Account "and the book entries it made in Luxembourg"; and (iii) "the relationship of Plaintiffs' claims to its New York business practice of sweeping the Bond Proceeds out of its NY Account and into its global securities clearing system."[10] (Pls. Opp. at 5.) In doing so, Plaintiffs appear to be continuing to claim, albeit in somewhat softer language than in their opening brief, that Bank Markazi had some interest in funds credited to Clearstream's JPMorgan Account and that there was a "transfer" of funds from New York to Luxembourg. But as Clearstream has established, Clearstream has full ownership of all cash credited to the JPMorgan Account, no Clearstream customer has a right to any cash in that account, and no funds are ever transferred from the JPMorgan Account to any customer account with Clearstream in Luxembourg. (Clearstream Br. at 6-7); *see Peterson*, 876 F.3d at 86 ("For similar reasons, the plaintiffs' contention that fraudulent conveyances have no legal effect is of no moment. This argument presumes 'that [the] [d]efendants moved the [b]ond [p]roceeds to Luxembourg.' Not so.") (internal citation omitted).

---

[10] For a period of time earlier in this action, Plaintiffs claimed—without a shred of basis in fact— that Clearstream "swept" $1.7 billion in and out of its JPMorgan Account for Bank Markazi every day. Clearstream does not understand Plaintiffs to be resurrecting this argument, but to the extent they are, it has been firmly rejected by the Second Circuit. *See Peterson*, 876 F.3d at 86.

Moreover, Clearstream's relationship with its customer—here, UBAE, with respect to sundry account 13675—is wholly based in Luxembourg.  (Clearstream Br. at 7.)

Plaintiffs also cryptically contend that Clearstream's reliance on the Second Circuit's November 2017 decision is misplaced because it "was entered before § 8772's enactment."  (Pls. Opp. at 14.)  They further state that "Clearstream ignores the fact that [Section] 8772(a)(1) preempts any securities or banking laws that might otherwise have provided it with a substantive defense to returning the financial asset to the United States, including any defenses to personal jurisdiction predicated on those laws."  (Pls. Opp. at 6.)  The thrust of Plaintiffs' argument is unclear, but they are seeming to quarrel with the Second Circuit's conclusion that the right to payment is located abroad and that there was no transfer from the JPMorgan Account to UBAE sundry account 13675, as well as the clearly established facts and law regarding the nature and location of the relevant account relationships.  *See Peterson*, 876 F.3d at 86; Clearstream Br. at 6-7; *see also Peterson v. Islamic Republic of Iran*, 963 F.3d 192, 196 (2d Cir. 2020).  Plaintiffs may very well be entitled to their own statute, but they are not entitled to their own facts.

Finally, Plaintiffs claim—with no basis whatsoever—that personal jurisdiction exists here because employees in Clearstream's New York representative office "provide services for Markazi."  (Pls. Opp. at 5.)  Not only is such an assertion false and entirely unsupported (Plaintiffs provide no citation), but further, the limited customer support contacts provided by Clearstream's New York representative office to Clearstream's customers in the Americas do not include processing any transactions and are completely unrelated to Plaintiffs' turnover claim here.  (Clearstream Br. at 24.)

For these reasons, no specific jurisdiction exists under New York's long-arm statute.

B.      **No Specific Jurisdiction Exists under the Due Process Clause**

For many of the same reasons, any exercise of jurisdiction over Clearstream here would not comport with due process.  *See Newmont Mining Corp. v. AngloGold Ashanti Ltd.*, 344 F. Supp. 3d 724, 742 (S.D.N.Y. 2018) (Preska, J.) (noting "the striking similarity" between the New York and due process standards).

Plaintiffs and Clearstream agree that to exercise specific jurisdiction over a foreign party under the Due Process Clause, a plaintiff must demonstrate that (i) the non-resident party "purposefully availed itself of the privilege of conducting activities within the forum State or [] purposefully directed its conduct into the forum State"; (ii) "plaintiff's claim . . . arise[s] out of or relate[s] to the [non-resident]'s forum conduct"; and (iii) "the exercise of jurisdiction [is] reasonable under the circumstances."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019).  Here, Plaintiffs fail to meet the second and third requirements.

1.      ***Plaintiffs' Turnover Claim Does Not Arise Out of or Relate to Clearstream's New York Conduct***

"[T]o exercise jurisdiction consistent with due process, the [party]'s suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  For the same reasons as set forth in Part I.A, *supra*, there is no such connection.  Plaintiffs cite no case, and Clearstream has not found one, where a court exercised specific jurisdiction over a foreign garnishee on a mere turnover action where the relevant asset was located and was always located abroad.  Unable to muster analogous precedent for the exercise of specific jurisdiction, Plaintiffs' opening brief cited a number of inapposite tort cases, which Clearstream distinguished, where the claims arose out of the defendant's in-forum contacts (including out-of-forum behavior aimed at the forum).  (Pls. Br. at 30-33; Clearstream Br. at 30-31.)  Tellingly, Plaintiffs have entirely retreated from those cases in their opposition brief.  The

reason is simple:  there is simply no precedent for the exercise of jurisdiction on the facts alleged here.

Plaintiffs claim that "Clearstream . . . misunderstands the nature of this proceeding." (Pls. Opp. at 10.)  They observe that "[t]his is not a plenary proceeding to hold Clearstream liable for its own wrongdoing" but instead a "judgment-enforcement proceeding that seeks to compel Clearstream, in its capacity as a garnishee, to turnover funds it holds on behalf of Markazi, the judgment debtor."  (Pls. Opp. at 10.)  It is Plaintiffs, however, that have lost sight of this critical point.  They seek turnover of a right to payment that is located abroad and was always located abroad—nothing more.  An exercise of jurisdiction to order turnover with respect to that right to payment would not comport with due process.

### 2.    *The Exercise of Personal Jurisdiction Would Be Unreasonable*

The exercise of personal jurisdiction under the circumstances of this case would also be unreasonable.  In analyzing whether an exercise of jurisdiction would comport with "fair play and substantial justice," courts weigh five factors—three of which fall squarely in Clearstream's favor.  (Clearstream Br. at 31-34) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).  Contrary to Plaintiffs' assertion that "the exercise of jurisdiction is particularly reasonable" (Pls. Opp. at 2), there is nothing reasonable at all about exercising jurisdiction over a foreign third-party garnishee to obtain turnover of an asset in a foreign country based on a statute that Plaintiffs pushed through Congress that turns the traditional and accepted means of judgment enforcement on its head.  That is all the more so where, as here, the relevant asset is subject to intense litigation in the foreign country where it is located (including litigation initiated by other U.S. plaintiffs), and the garnishee is currently prohibited by the foreign court from complying with an order of this Court to turn it over.  *See Shaheen Sports, Inc. v. Asia Ins. Co.*, No. 11-CV-920 (LAP), 2012 WL 919664, at *7-8 (S.D.N.Y. Mar. 14, 2012)

(Preska, J.) (refusing to order turnover where the "potential for inconsistent judgments and double liability is [] very real," thus "implicat[ing] both the underlying rationale for the separate entity rule in New York as well as concerns for [the bank's] due process").

First, exercising jurisdiction would impose a grave burden on Clearstream, which has only a small representative office in the United States that is prohibited from holding customer accounts or deposits.  (Clearstream Br. at 3-4, 32.)  That Clearstream has been forced by Plaintiffs to litigate this judgment enforcement proceeding since December 2013 by no means relieves the burden upon it—contrary to Plaintiffs' suggestion.  (Pls. Opp. at 11.)  Indeed, that burden is amplified because the exercise of personal jurisdiction would expose Clearstream to a very real risk of double liability.  Plaintiffs' unadorned belief that such double liability is "unlikely" because a turnover order by this Court could discharge and release Clearstream from any liability to Bank Markazi (Pls. Opp. at 11, 42, 49) is cold comfort to Clearstream.  Bank Markazi has commenced an action in Luxembourg seeking, *inter alia*, restitution in the amount of the right to payment at issue here (or damages in an equivalent amount).  (Clearstream Br. at 15-18, 45.)  Indeed, despite the Court's turnover order in *Peterson I* containing discharge language and permanently restraining and enjoining Bank Markazi from instituting or prosecuting any claim or pursuing any actions against Clearstream with respect to the assets subject to the turnover order, Bank Markazi's action in Luxembourg also seeks restitution (or damages in an equivalent amount) of the approximately $1.8 billion at issue in that case.  Further, Luxembourg courts have indisputable dominion over the asset at issue here (a contractual "right to payment" owed to UBAE, defined under Luxembourg law, and located in Luxembourg).  As noted above and as Clearstream advised the Court on October 5, the Luxembourg appellate court has temporarily enjoined Clearstream from complying with an order

of this Court.[11]  *See Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 755 (N.D. Ill. 2016) (exercise of jurisdiction over foreign banks was unreasonable where there was "convincing evidence that disclosing responsive information located abroad would violate the laws of their home countries")*, aff'd on other grounds,* 852 F.3d 687 (7th Cir. 2017).

With respect to the fourth and fifth factors, Plaintiffs assert that the international judicial system and Luxembourg have no interest in this matter.  In Plaintiffs' view, this is because Luxembourg courts have refused to domesticate default judgments against sovereign entities like the ones that Plaintiffs have obtained, "Luxembourg courts are interpreting certain statutes to operate as a complete prohibition against executing on assets held at Clearstream," and "[u]nder the current state of the law in Luxembourg, Plaintiffs would have little hope of enforcing their judgments" against the right to payment in Luxembourg.  (Pls. Opp. at 12.)  But just because the interests and policies of the sovereign nation in which the right to payment defined by local law is held and those of the international judicial system do not comport with Plaintiffs' desires in no way suggests that those interests are invalid.  Far from it.  Indeed, the interests of Luxembourg

---

[11] In April 2020, Bank Markazi obtained an ex parte order that in part prohibited Clearstream from complying with a U.S. court order to turn over the right to payment at issue pending resolution of a declaratory action commenced by Bank Markazi in Luxembourg in March 2020. (Sept. 2020 DuPont Decl. ¶ 19.)  In June 2020, a Luxembourg court vacated this part of the April 2020 ex parte order, and Bank Markazi subsequently appealed that June 2020 order.  (*Id.* ¶ 21.) On October 5, the Luxembourg appellate court issued an order temporarily prohibiting Clearstream from complying with such a U.S. court order pending resolution of the Luxembourg appellate proceedings.  Oral argument in the Luxembourg appellate proceedings was held on October 20, and Clearstream understands that the Luxembourg appellate court intends to render its decision on November 18, 2020.

With respect to the declaratory action, the Luxembourg District Court is scheduled to hear oral argument on November 26, 2020, and it is expected that the court will render its decision on these actions in January 2021.  (*Id.* ¶ 19.)  Any appeal of that decision will in principle suspend the effect of the Luxembourg District Court's judgment.  (*Id.*)

and its substantive policies should be accorded particular weight in the judgment enforcement context because the traditional and accepted means of enforcing judgments in the international context is to seek recognition of the judgment in the country where the property is located and attempt to execute there.  *See Autotech Techs. LP v. Integral Rsch. & Dev. Corp.*, 499 F.3d 737, 751 (7th Cir. 2008).[12]  By attempting to bypass that accepted practice, Plaintiffs disregard the international judicial system's interest in the singular, efficient, and orderly resolution of controversies—and in so doing, expose Clearstream to the grave risk of catastrophic double liability.  (Clearstream Br. at 33.)

For all of these reasons, the exercise of jurisdiction here would also be unreasonable.

## II.   BANK MARKAZI DOES NOT HAVE EQUITABLE TITLE TO, OR A BENEFICIAL INTEREST IN, THE RIGHT TO PAYMENT AT ISSUE

The "right to payment" at issue falls outside the purview of Section 8772 because Bank Markazi does not "hold[] equitable title to, or the beneficial interest in, the assets."  22 U.S.C. § 8772(a)(2).

Plaintiffs contend that "the UCC determines beneficial ownership under § 8772."  (Pls. Opp. at 30.)  They ignore, however, Article 8's own choice of law provision, which provides that "the local law of the securities intermediary's jurisdiction"—here, Luxembourg—governs the rights and duties of both the securities intermediary (Clearstream) and the entitlement holder (UBAE) arising out of a security entitlement.  (Clearstream Br. at 34-35; U.C.C. § 8-110(b).)  As

---

[12] *See also Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 287 (D.D.C. 2011) (a potential U.S. judgment may be satisfied if the defendants "at some point attain assets in the United States" or "acquire assets in a foreign country willing to recognize and enforce a United States judgment"); U.N. Convention on Jurisdictional Immunities of States and Their Property, G.A. Res. 59/38 (Dec. 2, 2004), Art. 19(c) ("No post-judgment measures of constraint, such as attachment, arrest or execution, against property of a State may be taken in connection with a proceeding before a court of another State unless . . . the property . . . is in the territory of the State of the forum."); N.Y. CPLR Art. 53 (addressing recognition of foreign country money judgments in New York).

Clearstream observed in its opening brief, that result accords with the presumption against extraterritorial application of New York law, but it is also compelled by the terms of Article 8 itself.  (Clearstream Br. at 35.)

Clearstream established that under Luxembourg law, Bank Markazi has no rights to or cognizable interest in the right to payment credited to UBAE sundry account 13675—only UBAE does.  (Clearstream Br. at 35-36; Kaminetzky Decl., Ex. L (Arendt Sept. 2020 Mem. ¶¶ 23-38)).  Indeed, the concepts of "holding equitable title to, or the beneficial interest in" assets do not exist under Luxembourg law.  (Arendt Sept. 2020 Mem. ¶ 31.)  Plaintiffs' Luxembourg attorney, Marie Paule Gillen, apparently agrees.[13]  (Reply Decl. of Liviu Vogel, Ex. 92 (Gillen Mem.)) ¶ 3 ("The concepts of equitable and beneficial interest, which are familiar to common law legal systems, are not formally defined as such in Luxembourg law, which is a civil law system."); *id.* ¶ 8 ("[T]he concept of 'equitable interest' or 'beneficial interest' does not exist as such under Luxembourg law.").  This concession notwithstanding, Plaintiffs' Luxembourg counsel somehow concludes that under Luxembourg law, "Bank Markazi would be deemed to hold a beneficial interest in the Sundry Blocked Account."  (Gillen Mem. ¶ 27.)  But Luxembourg is a civil law system, and concepts that "are not defined by law or any regulation" do not have legal meaning or attach legal rights.  Although Plaintiffs' Luxembourg counsel alludes to certain colloquial uses of the term "beneficial owner" in Luxembourg and other European countries (and in Clearstream's own documents),[14] counsel adduces no authority

---

[13] Plaintiffs mistakenly identify Ms. Gillen as Clearstream's attorney.  (Pls. Opp. at 32.)  She is Plaintiffs' attorney, not Clearstream's.

[14] Plaintiffs cite to certain provisions of Clearstream's General Terms and Conditions ("GTCs") that use the term "beneficial owner."  (Pls. Opp. at 32-33.)  But the GTCs, including Articles 11 and 17, do not provide "beneficial owners" any rights with respect to accounts that they do not themselves hold.  Clearstream's obligations under the GTCs are only to the account holder

suggesting that a third-party "beneficial owner" has a legally recognized interest in the assets in

UBAE sundry account 13675.  (Arendt Sept. 2020 Mem. ¶¶ 27, 29, 32, 39-40.)  In a similar vein,

Plaintiffs further concede that the opinion of their "Luxembourg counsel confirms that, under

Luxembourg law, an account holder possesses all of the meaningful rights of ownership."  (Pls.

Opp. at 32.)  Here, the account holder is indisputably UBAE.

Even if Article 8 were to apply on its own terms, Plaintiffs' assertion that Bank Markazi

"has all of the beneficial ownership rights afforded to financial assets by UCC §§ 8-505 through

8-508" is simply incompatible with Article 8.  (Pls. Opp. at 30-31.)  That is because the

"fundamental principle[] of the indirect holding system" is that "the entitlement holder can look

only to [its own] intermediary for performance of the obligations."  U.C.C. § 8-503 cmt. 2; *see*

*also* § 8-112 cmt. 3 ("If Debtor holds securities through Broker, and Broker in turn holds through

Clearing Corporation, <u>Debtor's property interest is a security entitlement against Broker</u>.

Accordingly, Debtor's creditor cannot reach Debtor's interest by legal process directed to the

Clearing Corporation.") (emphasis added).  Thus, Bank Markazi's property interest is not a claim

---

(UBAE), and only UBAE has a contractual claim against Clearstream for the right to payment
held by Clearstream in relation to the assets in UBAE sundry account 13675.

Further, Plaintiffs argue that because UBAE and Bank Markazi apparently incorporated
conditions of the GTCs into their own agreement, UBAE was obligated "to collect [income]
payments through Clearstream and credit the amounts to Markazi's account at UBAE."  (Pls.
Opp. at 33) (citing GTC Art. 17).  But Plaintiffs' argument proves that any obligation of UBAE
to Bank Markazi exists only as a result of their separate agreement—an agreement as to which
Clearstream has no part or knowledge.  In turn, Bank Markazi's rights exist only as a result of
their separate agreement, and those rights are limited to the assets in Bank Markazi's account at
UBAE in Italy.  Bank Markazi's rights simply do not reach the "right to payment" in UBAE
sundry account 13675 in Luxembourg, which is of course consistent with the GTCs,
Luxembourg law, and the UCC.

against Clearstream or sundry account 13675, but a claim against UBAE in Italy.  (Clearstream Br. at 35-36.)[15]

Finally, contrary to Plaintiffs' argument, this Court's conclusion in *Peterson I* that Bank Markazi held an interest in the assets at issue in that case simply has no bearing on the determination of the interest in the right to payment at issue in this case.  (Pls. Opp. at 29.) Plaintiffs' argument depends on their assertion that the Luxembourg "right to payment" here is "indistinguishable from the assets at issue in *Peterson I*."  (*Id*. at 29-30.)  But that is not so.  As cited extensively in Clearstream's opening brief, and as made clear by the Second Circuit's decision, such an assertion is directly contrary to the clear distinctions between the right to payment at issue here and the assets at issue in *Peterson I*.  (Clearstream Br. at 2, 10) (citing *Peterson*, 876 F.3d at 86).

## III.   SECTION 8772 DISCRIMINATES AGAINST CLEARSTREAM IN VIOLATION OF THE EQUAL PROTECTION COMPONENT OF THE FIFTH AMENDMENT

By explicitly targeting Clearstream and the right to payment held abroad in this case, the newly-amended Section 8772 intentionally "single[s] out" Clearstream "for disparate treatment"

---

[15] Plaintiffs fare no better by asserting that Section 8772 preempts Clearstream's reliance on the provisions of Article 8 that make clear that Bank Markazi lacks the requisite rights.  (Pls. Opp. at 31.)  Section 8772 is not a license to cherry-pick provisions of Article 8 as Plaintiffs see fit or otherwise rewrite it.  In other words, Plaintiffs cannot simultaneously assert that "the UCC determines beneficial ownership under § 8772" (Pls. Opp. at 30) while also contending that UCC Article 8's provisions do not apply, or only the ones that they like apply.

Similarly, Plaintiffs' claim that any provision of Luxembourg law that might impede their ability to obtain turnover is preempted (Pls. Opp. at 30) is nothing but a naked admission that, in their view, the statute says "Plaintiffs win, Clearstream loses."  If so, it is flatly unconstitutional. *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1325-26 (2016) (finding that a statute that directs, in "Smith v. Jones," "Smith wins" is unconstitutional, and further that it was important that Section 8772's requirements were not "fig leaves").  Plaintiffs cannot have it both ways and argue simultaneously both (i) that the statute leaves something for this Court to determine (and thus avoid a separation of powers issue, as in *Peterson I*) and (ii) that every possible impediment and obstacle to their victory is removed by Section 8772, as if by talisman.

without a rational basis for this discrimination—and thus violates the equal protection

component of the Due Process Clause. *Fortress Bible Church v. Feiner*, 694 F.3d 208, 224 (2d

Cir. 2012); *see also* U.S. Const. amend. V.  None of Plaintiffs' contrived justifications for the

disparate treatment of Clearstream among entities and institutions who have been alleged to hold

assets for Iran (as defined in Section 8772) abroad withstands scrutiny.  Ultimately, there is but

one explanation—an illegitimate one—for Section 8772's discrimination against Clearstream:

these particular Plaintiffs possess the political clout to single out a financial institution, strip it of

nearly all of its defenses under generally applicable law, and attempt to direct the result in a

single case.

Seeking to avoid the constitutional problem altogether, Plaintiffs first claim that Section

8772 does not single out Clearstream because it "does not identify Clearstream by name" and

because it applies to "any foreign securities intermediary doing business in the United States."

(Pls. Opp. at 41.)  This argument strains credulity, to say the least.  Amended Section 8772

identifies the case and assets by docket number, and when the amendments were enacted, the

Second Circuit had already held that the asset at issue is "a right to payment <u>in the possession of

Clearstream</u> located in Luxembourg."  *Peterson*, 876 F.3d at 87 (emphasis added).  Further, the

legislative record contains clear evidence that Congress was targeting Clearstream through its

amendments to Section 8772.[16]  Plaintiffs' argument that Section 8772 somehow does not target

Clearstream because Clearstream could "conceivably" transfer the "right to payment" at issue to

---

[16] Senator Cotton—who introduced the bill in the Senate—stated that the bill will "allow the families of the Marine Barracks bombing victims to execute on $1.68 billion in Iranian funds currently held by Clearstream, a Luxembourg-based firm . . . ."  Press Release, Senator Tom Cotton, Colleagues Introduce Bill to Support Victims of Iranian Terrorism (May 16, 2019), https://www.cotton.senate.gov/?p=press_release&id=1127 (last visited Oct. 12, 2020).

some other securities intermediary is entirely meritless and only underscores the weaknesses in Plaintiffs' position.  Section 8772 plainly singles out the assets in this case and Clearstream.[17]

Plaintiffs next contend that Clearstream's only comparators for purposes of its Equal Protection challenge are Euroclear and the Depository Trust Company ("DTC").  (Pls. Opp. at 42.)  Not so.  For differences between a target and its comparators to be material, those differences must be salient to their differences in treatment.  (*See* Clearstream Br. at 40-41) (citing *Progressive Credit Union v. City of New York*, 889 F.3d 40, 46, 50 (2d Cir. 2018) and *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156-58 (3d Cir. 2018)).  The Plaintiffs apparently make analogies to aspects of the business models of these securities custodians, which for current purposes is irrelevant, because the only salient factor here is whether an institution or entity is alleged to possess an asset of Iran (or one of its agencies or instrumentalities) that could be used to satisfy Plaintiffs' judgments.  The specific "right to payment" in this case is essentially a deposit obligation at a foreign banking institution under the local law where such institution is established and the deposit is held.  Thus, any other asset held for Iran abroad would compensate Plaintiffs just as surely as the "right to payment" held by UBAE vis-à-vis Clearstream.  (*See* Clearstream Br. at 39.)

The only cases cited by Plaintiffs regarding the comparator requirement come from the zoning and government employment context.  (Pls. Opp. at 40.)  As the Second Circuit has made clear, the comparator requirement provides a bulwark against a "flood of claims" in exactly those areas of government action because "discretion is high and variation is common."  *Hu v. City of*

---

[17] *See, e.g., Reynolds v. Arnone*, 402 F. Supp. 3d 3, 40 (D. Conn. 2019) (finding, in the context of a bill of attainder claim, that a statute sufficiently specified the claimant even though it did not explicitly name him where the text would apply to only eleven inmates in the state—a "known group"—and where the inmate was "specifically mentioned by name" during legislative debate).

*New York*, 927 F.3d 81, 93-95 (2d Cir. 2019).  But Section 8772 is not a law of general

application in an area of government action where discretion is high and variation is common.

Section 8772 is a federal statute that changes the law as to the execution of foreign sovereign

assets located abroad to a single case—and as to a single financial institution, Clearstream.  (*See*

Clearstream Br. at 39.)  Because Clearstream "is being singled out by the government, the

specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a

'rational basis for the difference in treatment.'"  *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591,

602 (2008) (quoting *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564) (2000)).

But there is no <u>legitimate</u> explanation for Section 8772's singular classification and

disparate treatment of Clearstream.  Try as Plaintiffs might to conjure a rational basis for the

disparate treatment of Clearstream, none of the proffered explanations withstands scrutiny.  For

example, Plaintiffs argue that there is a rational basis to target Clearstream because "creating a

generalized remedy . . . could have adverse effects on the global market for Eurodollar bonds and

other intermediated securities" (Pls. Opp. at 41-42)—but Plaintiffs do not explain what they

mean, and Clearstream is not sure.  Plaintiffs also contend that "Congress could rationally

conclude that limiting the effects of [Section] 8772 to particular cases would avoid putting undue

burden on the financial industry."  (Pls. Opp. at 42.)  But discrimination is invalid unless the

underlying differences between the target and its comparators justify their differences in

treatment.  *See Progressive Credit Union*, 889 F.3d at 46, 50 (explaining that salient differences

between medallion taxicabs and for-hire vehicles—such as medallion taxicabs being permitted to

pick up passengers who hail them on the street—justified additional regulations on medallion

taxicabs related to "vehicle attributes" because those regulations "promote safety, convenience,

easy identification, comfort, and uniformity of service for customers who hail a taxicab on the

street").  Plaintiffs' purported basis here is not based on underlying differences between

Clearstream and its comparators that would create a rational basis for Congress to treat them

differently.  Rather, Plaintiffs essentially argue that Congress has an interest in treating

Clearstream alone worse than its comparators because to change the law more broadly would

injure more financial institutions.  <u>That is not a legitimate rational basis</u>.  *See Ry. Exp. Agency v.*

*People of State of N.Y.*, 336 U.S. 106, 112–13 (1949) (Jackson, J., concurring) ("[N]othing opens

the door to arbitrary action so effectively as to allow [elected] officials to pick and choose only a

few to whom they will apply legislation and thus to escape the political retribution that might be

visited upon them if larger numbers were affected.").

The additional conceivable explanations contrived by Plaintiffs fare no better.  (Pls. Opp.

at 42.)  To begin, Clearstream has not been found to have violated U.S. sanctions laws.  *Peterson*

*v. Islamic Republic of Iran*, No. 13-cv-9195 (KBF), 2015 WL 731221, at *8 (S.D.N.Y. Feb. 20,

2015) ("To the extent plaintiffs seek to simply assert, without any legal declaration, that a

Clearstream transfer violated the [Iranian Transactions and Sanctions Regulations] and the Court

may assume that is correct, that is wishful thinking.").  Further, Plaintiffs argue that the disparate

treatment of Clearstream could be justified on the grounds that Congress dismissed concerns

about double liability "because Clearstream's obligation to Markazi would be discharged upon

payment of the Bond Proceeds to the Plaintiffs."  (Pls. Opp. at 42 n.27.)  There are at least two

fallacies to this argument.  First, even if a turnover order here purported to discharge

Clearstream's obligations, the Luxembourg courts are not bound by any such discharge, and

Bank Markazi has already brought an action there seeking restitution.[18]  Second, Clearstream is

---

[18] *See supra* p. 10 (noting Bank Markazi's action in Luxembourg seeking restitution (or damages in an equivalent amount) for both the assets at issue in *Peterson I* and this case).

no differently situated in this regard than other third-party financial institutions alleged to hold assets abroad for Iran.  If Section 8772 changed the law as to all such institutions, they would face analogous double liability risks in their home countries as Clearstream now faces in Luxembourg.

In sum, to allow Section 8772's targeted, differential treatment of Clearstream would set a dangerous precedent that Congress can single out and subject an entity to inferior treatment on the grounds that any similar broader treatment would negatively impact those additional entities. Such disfavored treatment cuts to the heart of equal protection's guarantees and safeguards.  *See News Am. Pub., Inc. v. F.C.C.*, 844 F.2d 800, 813 (D.C. Cir. 1988) ("Nowhere are the protections of the Equal Protection Clause more critical than when legislation singles out one or a few for uniquely disfavored treatment.").

## CONCLUSION

For all of the foregoing reasons, Clearstream respectfully requests that the Court grant its motion to dismiss.  In the event the Court were to determine that it was appropriate to grant either Plaintiffs' motion for summary judgment for turnover in reliance on Section 8772, or, in the alternative, a preliminary injunction, Clearstream respectfully reiterates (as noted in its opening brief) that the implementation of any such decision will raise complex legal and regulatory issues, questions, and mechanics, and that, accordingly, the terms of any such order will necessarily require the involvement of, and input from, the parties.

Dated:   New York, New York
        October 23, 2020

                                                      DAVIS POLK & WARDWELL LLP

                                                      By:   */s/* Benjamin S. Kaminetzky
                                                           Benjamin S. Kaminetzky

                                                      450 Lexington Avenue
                                                      New York, New York 10017
                                                      (212) 450-4000
                                                      ben.kaminetzky@davispolk.com

                                                      *Counsel for Defendant*
                                                      *Clearstream Banking S.A.*

## <u>CERTIFICATE OF SERVICE</u>

I, Benjamin S. Kaminetzky, hereby certify that on this 23rd day of October 2020, a copy of the foregoing Memorandum was filed electronically with the Clerk of Court through the Court's CM/ECF system, thus serving all registered parties.


<u>/s/ Benjamin S. Kaminetzky</u>
Benjamin S. Kaminetzky