**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DEBORAH D. PETERSON, *et al.*,

               *Plaintiffs*,

v.

ISLAMIC REPUBLIC OF IRAN, *et al.*,

               *Defendants*.

Case No. 13-cv-9195 (LAP)

ECF CASE

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT**
**BANCA UBAE S.p.A.'s MOTION TO DISMISS THE AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................ii

ARGUMENT ..................................................................................................................1

    I.    PLAINTIFFS FAIL TO SHOW THAT EXERCISING PERSONAL
         JURISDICTION OVER UBAE COMPORTS WITH DUE PROCESS ...........................2

        A.  Plaintiffs Indisputably Were Not Injured In New York At The Jurisdictionally
            Relevant Time ...................................................................................................2

        B.  UBAE Took No Actions In New York At The Jurisdictionally Relevant Time .........4

    II.    UBAE DID NOT DIRECT OR OTHERWISE INSTRUCT CLEARSTREAM TO
         DO ANYTHING IN NEW YORK ....................................................................6

    III.  THERE IS NO SPECIFIC PERSONAL JURISDICTION OVER UBAE UNDER A
         CONSPIRACY THEORY ................................................................................9

CONCLUSION ..............................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                        **Page(s)**

*Boehm v. Sportsmem*,
    2019 WL 3239242 (July 18, 2019).........................................................................5

*Bristol-Myers v. Superior Ct. of Cal.*,
    137 S. Ct. 1773 (2017) ...........................................................................1, 3, 4, 5

*Chizniak v. CertainTeed*,
    2020 WL 495129 (N.D.N.Y. Jan. 30, 2020) .......................................................5

*City of Long Beach v. Total Gas & Power*,
    2020 WL 3057796 (S.D.N.Y. 2020) ....................................................................5

*Cleveland v. Caplaw Enterprises*,
    448 F.3d 518 (2d Cir. 2006) ...............................................................................7

*CutCo Indus. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986) ...............................................................................7

*Daventree Republic of Azerbaijan*,
    349 F. Supp. 2d 736 (S.D.N.Y. 2004) ...............................................................8

*DeRosa v. Nat'l Envelope Corp.*,
    595 F.3d 99 (2d Cir.2010) ...................................................................................6

*Dixon v. Mack*,
    507 F. Supp. 345 (S.D.N.Y. 1980) ....................................................................9

*Doe v. New York City*,
    709 F.2d 782 (2d Cir. 1983) ...............................................................................7

*Excelsior Capital v. Allen*,
    2012 WL 4471262 (S.D.N.Y. Sept. 26, 2012) ...................................................3

*Fertilizantes Fosfatados v. Chen*,
    1992 U.S. Dist. LEXIS 12277 (S.D.N.Y. July 22, 1992)....................................4

*Gazzillo v. Ply Gem Indus.*,
    2018 WL 5253050 (N.D.N.Y. Oct. 22, 2018) ....................................................5

*Grove Press, Inc. v. Angleton*,
    649 F.2d 121 (2d Cir. 1981) ...............................................................................9

*Havlish v. 650 Fifth Ave. Co.*,
    934 F.3d 174 (2d Cir. 2019) ...............................................................................7

*In re Adelphia Recovery Trust*,
  634 F.3d 678 (2d Cir. 2011) .......................................................................6

*In re Dental Supplies Antitrust Litig.*,
  2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) .........................................5

*Johnson v. UBS*,
  791 F. App'x 240 (2d Cir. 2019) .............................................................5

*Keeton v. Hustler Magazine*,
  465 U.S. 770 (1984) .................................................................................3

*Licci v. Lebanese Canadian Bank*,
  20 N.Y.3d 327 (2012).............................................................................4

*Licci v. Lebanese Canadian Bank*,
  732 F.3d 161 (2d Cir. 2013) ...................................................................4

*Lugones v. Pete's & Gerry's Organic*,
  440 F. Supp. 3d 226 (S.D.N.Y. 2020) ...................................................5

*Lyman Commerce Solutions v. Lung*,
  2013 WL 4734898 (S.D.N.Y. Aug. 30, 2013) ........................................4

*Maersk, Inc. v. Neewra, Inc.*,
  554 F. Supp. 2d 424, (S.D.N.Y. 2008) ..................................................9

*Merrill Lynch v. Optibase*,
  337 F.3d 125 (2d Cir. 2003) ...................................................................9

*Pascarella v. Sandals Resort*,
  2020 WL 1048943 (S.D.N.Y. Mar. 4, 2020)...........................................9

*Peterson II*,
  876 F.3d 63 (2d Cir. 2017) .....................................................................7

*Peterson III*,
  963 F.3d 192 (2d Cir. 2020) ...................................................................7

*Pettenato v. Beacon Health Options*,
  425 F. Supp. 3d 264 (S.D.N.Y. 2019) ...................................................5

*Sae Han Sheet v. Eastman*,
  2017 WL 4769394 (S.D.N.Y. Oct. 19, 2017)...........................................5

*Trahan v. Lazar*,
  457 F. Supp. 3d 323 (S.D.N.Y. 2020) ...................................................7

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................2

*Waldman v. PLO*,
   835 F.3d 317 (2d Cir. 2016) ...........................................................................5

## **<u>Rules</u>**

N.Y. C.P.L.R. § 302(a)(1) ........................................................................................4, 6

## ARGUMENT

The U.S. Supreme Court has been clear that, to exercise specific jurisdiction over an out-of-state defendant consistent with constitutional due process, a plaintiff must meet two basic requirements: (1) injury in the forum, ***and*** (2) conduct in the forum that is substantially connected to that injury.   *See Bristol-Myers v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1781-82 (2017). Plaintiffs come nowhere near meeting either requirement.

Plaintiffs stuff the injury-in-the-forum requirement into a four-paragraph throw-away towards the end of their opposition brief.  Opp. 15-17.  The plain fact is that Plaintiffs can never satisfy the first due process requirement because they indisputably were not judgment creditors in New York at the time of UBAE's alleged wrongdoing (January/February 2008) and therefore suffered no injury in New York at the jurisdictionally relevant time.  Mot. 8-14.  That perhaps some of the plaintiffs were residents of New York (there is no such proof in the record) is irrelevant.  Opp. 16.  This is not a personal injury case.  It's a judgment-collection case, in which Plaintiffs have no rights to any asset of a judgment debtor in New York unless and until their judgments are actually registered in New York.  This is basic to the law of attachment.  Under Plaintiffs' limitless theory of jurisdiction, UBAE could be haled into any state court in the United States simply because Plaintiffs held judgments against Iran.  Due process would mean nothing if this radical position were adopted.

Plaintiffs cannot satisfy the second due process requirement either.  Plaintiffs' opposition has nothing to do with UBAE and everything to do with Clearstream.  They focus entirely on the actions of Clearstream with respect to a so-called "sundry account" that Clearstream unilaterally created and controlled in Luxembourg without UBAE's knowledge or consent.  UBAE never entered into any written agreement about the opening of the  sundry account, its operation, or the

1

parties' respective obligations with respect to that account.  As such, Plaintiffs' attempt to hook UBAE into New York on the basis of an account over which it has no rights or control would render the Due Process Clause a complete nullity.

Nonetheless, Plaintiffs say that Clearstream's unilateral actions are attributable to UBAE, going so far as to argue that UBAE purportedly "directed" or "instructed" Clearstream to deposit $1.68 billion into the Clearstream-created-and-controlled sundry account supposedly through "New York bank[s]."  Opp. 10.  That assertion is pure fiction; UBAE did not direct or instruct Clearstream to do anything with respect to the sundry account, much less direct Clearstream to use "New York bank[s]."  The allegations also are legally immaterial and premised on several flawed theories of personal jurisdiction.  It is axiomatic that the relationship between the defendant and the forum for purposes of personal jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (original emphasis).  Here, in twenty pages of briefing, hundreds of pages of exhibits, and hundreds of paragraphs of allegations, Plaintiffs fail to allege a single connection, much less the constitutionally required "substantial connection," between UBAE and New York that would support personal jurisdiction.  The claims against UBAE must be dismissed.

## I.   PLAINTIFFS FAIL TO SHOW THAT EXERCISING PERSONAL JURISDICTION OVER UBAE COMPORTS WITH DUE PROCESS.

### A.   Plaintiffs Indisputably Were Not Injured In New York At The Jurisdictionally Relevant Time.

Incredibly, Plaintiffs falsely assert that injury in the forum is not required to satisfy due process.  Opp. 15-16.  The U.S. Supreme Court could not be more clear on this point:

> [T]he nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, ***and [therefore] were not injured by Plavix in California***. . . . In today's case, the connection between the nonresidents' claims and the forum is

even weaker [than in *Walden*].  The relevant plaintiffs are not California residents *and do not claim to have suffered harm in that State*."

*Bristol*, 137 S. Ct. at 1781, 1782 (emphasis added).  Further, in rejecting the plaintiffs' sweeping jurisdictional rule, the *Bristol* Court distinguished *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984) precisely on the ground that plaintiffs suffered no injury in California:

> This factor [*i.e.*, injury in the forum state of New Hampshire] amply distinguishes *Keeton* from the present case, *for here the nonresidents' claims involve no harm in California and no harm to California residents*. . . .  [*Keeton*'s] holding concerned jurisdiction to determine the scope of a claim *involving in-state injury and injury to residents of the State, not, as in this case, jurisdiction to entertain claims involving no in-state injury and no injury to residents of the forum State*.

137 S. Ct. at 1782 (emphasis added).

Here, Plaintiffs' jurisdictional theory rests entirely on their status as judgment creditors— they supposedly were injured when UBAE in early 2008 allegedly took steps to frustrate Plaintiffs' judgment collection efforts by concealing Bank Markazi's identity.  Opp. 3, 4, 11; Am. Compl., ¶¶ 10, 12, 33.  But, at that time, Plaintiffs indisputably were not New York judgment creditors because their judgments were not registered in New York, and therefore they had no right to attach any Iranian assets that may have been located in New York.  Mot. 10-12.  As this Court held in *Excelsior Capital v. Allen*, 2012 WL 4471262 (S.D.N.Y. Sept. 26, 2012):

> Plaintiff had no ripe interest in any property owned by [the judgment debtor] on the date that the deed of transfer was executed, because Excelsior, which was not a judgment creditor . . . at that time, had no legal right to attach his property or to levy execution against it.  Plaintiff's only interest in [the judgment debtor's] property—as a judgment creditor—did not ripen until September 21, 2011 [the date on which judgment was entered in a New York court].

*Id.* at *8.  As such, under no circumstances could Plaintiffs have been harmed in New York in early 2008.

Plaintiffs say that they don't need judgments registered in New York to establish injury in New York.  Opp. 17.  That position plainly eliminates the injury-in-the-forum due process

requirement in judgment-collection cases, rendering personal jurisdictional on such theories limitless.  If adopted, UBAE would be subject to jurisdiction in every State simply because Plaintiffs have judgments against Iran anywhere in the United States.  That guts *Bristol*.

In addition, Plaintiffs' no-need-for-a-registered-judgment rule confuses merits issues with due process requirements for specific personal jurisdiction.  *Lyman*, for example, has nothing to do with jurisdiction.  There, the issue was whether there was a final judgment against a corporate party in the light of a prior corporate dissolution.  *Lyman Commerce Solutions v. Lung*, 2013 WL 4734898, at *5-*6 (S.D.N.Y. Aug. 30, 2013).  The issue here is whether there is personal jurisdiction over UBAE *in New York* where Plaintiffs have failed to show any New York judgment creditor was harmed by UBAE's Europe-based activity at the jurisdictionally relevant time.  For the reasons stated above, the answer is *no*.  *Chen*, also cited by Plaintiffs, has nothing to do with personal jurisdiction.  *Fertilizantes Fosfatados v. Chen*, 1992 U.S. Dist. LEXIS 12277 (S.D.N.Y. July 22, 1992).  That case addresses the sufficiency of the plaintiff's pleading a fraudulent conveyance claim.  *See id.* at *11-*19.

**B.    UBAE Took No Actions In New York At The Jurisdictionally Relevant Time.**

Plaintiffs admit that due process requires some forum-based activity to subject a foreign defendant like UBAE to specific personal jurisdiction.  *See* Opp. 7.[1]  Plaintiffs fail to allege that

---

[1]    Plaintiffs rely heavily on *Licci* and its progeny.  *See* Opp. 6-8, 11 13-19.  Those cases, however, provide little guidance in this case because the *Licci* cases—to the extent they are even good law—dealt with an out-of-state defendant who directly used a correspondent bank account in New York.  *See Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 332, 334-35 (2012) (addressing whether **the defendant's** correspondent banking account with Am Ex in New York used for "dozens" of transfers was a sufficient for personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1)); *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013) ("[T]he Court of Appeals confirmed . . . that the use of a New York correspondent bank account, standing alone, may be considered "transacting business' under the long-arm statute if **the defendant's** use of the correspondent account was purposeful." (emphasis added)).  Here, Plaintiffs do not allege that

UBAE engaged in any conduct in New York in the January-to-early-March 2008 time period. Instead, Plaintiffs rest their forum-based allegations on actions taken in New York between July 2008 and October 2012.  Pls.' Opp. at 5, 9.  However, Plaintiffs do not allege that UBAE itself took any actions in New York during that period, rendering Plaintiffs' jurisdictional theory deficient as a matter of law.[2]  *See Waldman v. PLO*, 835 F.3d 317, 336 (2d Cir. 2016).  Courts in this Circuit have routinely applied *Bristol* and dismissed claims for lack of personal jurisdiction where, as here, those claims do not arise from New York-based activity and/or when the plaintiffs have otherwise have not been harmed in New York.[3]

---

*UBAE* used any New York-based account.  Plaintiffs, instead, advance factually deficient theories of agency and conspiracy.  *See* Points II-III, *infra*.

[2]    Until 2009, UBAE had a correspondent bank account at HSBC New York, but UBAE did not use that account with respect to the assets at issue during the period July 2008 to October 2012. Declaration of Maurizio Valfrè ("Valfrè Decl."), ¶ 7.

[3]    *See Johnson v. UBS*, 791 F. App'x 240, 242 (2d Cir. 2019) (finding no personal jurisdiction over a foreign bank, reasoning "neither the complaint nor any of the other documents in the record suggest that UBS's connections with New York relate to the circumstances of this case"); *City of Long Beach v. Total Gas & Power*, 2020 WL 3057796, at *9 (S.D.N.Y. 2020) (finding that exercising personal jurisdiction over a foreign defendant did not comport with due process because none of the allegations meaningfully linked the foreign defendant to New York); *Lugones v. Pete's & Gerry's Organic*, 440 F. Supp. 3d 226, 235 (S.D.N.Y. 2020) (applying *Bristol* and dismissing non-New York plaintiffs' claims that had no connection with New York); *Pettenato v. Beacon Health Options*, 425 F. Supp. 3d 264, 278-79 (S.D.N.Y. 2019) (holding that the Court had no jurisdiction over out-of-state plaintiffs' claims that had no connection with New York and the underlying controversy); *Chizniak v. CertainTeed*, 2020 WL 495129, *5 (N.D.N.Y. Jan. 30, 2020) (dismissing out of state plaintiffs' claims because, among other things, they suffered no injury in New York); *Boehm v. Sportsmem*, 2019 WL 3239242, at *2 (July 18, 2019) (applying *Bristol* and concluding "that Plaintiffs have not satisfied their burden to allege personal jurisdiction for the simple reason that they have failed to plausibly allege any New York-based acts"); *Gazzillo v. Ply Gem Indus.*, 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018) ("The Complaint contains neither (1) facts demonstrating Defendants' contacts with New York, nor (2) facts showing a connection between New York and the out-of-state Plaintiffs' claims."); *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (applying *Bristol* and holding that "limited sales to New York dentists lack a nexus to this action such that I cannot find that [the defendant's] suit-related conduct [created] a substantial connection with the forum State to satisfy due process") (internal citations omitted); *Sae Han Sheet v. Eastman*, 2017 WL 4769394, at *8 (S.D.N.Y. Oct. 19, 2017) ("If the harm was not suffered in the forum, and all the conduct giving rise to the

That then leaves only the question of whether the supposed actions of co-defendant Clearstream in New York can be imputed to UBAE under an agency or conspiracy theory. As we demonstrate in Points II and III, *infra*, that answer, too, is ***no***.

## II. UBAE DID NOT DIRECT OR OTHERWISE INSTRUCT CLEARSTREAM TO DO ANYTHING IN NEW YORK.

Plaintiffs invoke N.Y. C.P.L.R. § 302(a)(1) and claim that UBAE, through Clearstream, is subject to specific personal jurisdiction in New York pursuant to an agency theory. Plaintiffs are wrong. For starters, Plaintiffs have argued the exact opposite in their reply brief in support of their motion for summary judgment and/or for a preliminary injunction against defendants Clearstream and Bank Markazi. *See* D.E. 263, at 16. There, they claimed that Clearstream was ***Bank Markazi's*** agent (not UBAE's agent), and they pointed out that Bank Markazi admitted that "Clearstream—acting on ***Markazi's*** behalf, for its benefit, and with its consent—collected $1.68 billion of Bond Proceeds in the NY Account." *Id.* at 17. Thus, according to Plaintiffs, Clearstream's actions in New York were "***attributable to Markazi***" (*id.* at 17), not to UBAE. *See also id.* at 13 ("Plaintiffs' § 8772 claim arises from the services Clearstream ***provided for Markazi in New York*** and Clearstream's operation of business there." (emphasis added)).[4]

---

nonresidents' claims occurred elsewhere, the forum does not have specific jurisdiction over the defendants.").

[4]   And if this Court adopts that position, Plaintiffs are judicially estopped from asserting that UBAE is Clearstream's principal as a matter of equity and fairness. "'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *In re Adelphia Recovery Trust*, 634 F.3d 678, 695 (2d Cir. 2011) (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir.2010)).

Those critical admissions aside, the allegations, the undisputed evidence, and the law[5] belie Plaintiffs' flawed agency theory.  To begin with, Plaintiffs do not mention, and therefore they concede, that the law-of-the case doctrine compels a no-jurisdiction finding.  Mot. 12-14.  As the Second Circuit has twice held, UBAE had no access to or control over the Clearstream-created "sundry blocked account;" that account was created in June 2008.  *See Peterson II*, 876 F.3d 63, 87 (2d Cir. 2017); *Peterson III*, 963 F.3d 192, 196 (2d Cir. 2020); Valfrè Decl., ¶ 2 ("Clearstream has had exclusive control of the Sundry Account since June/July 2008."); ¶ 6 ("As stated, Clearstream maintained sole and exclusive control of the Sundry Account beginning in June/July 2008.").  By necessary implication, then, UBAE could not have directed or instructed Clearstream to deposit funds into an account to which it (UBAE) had no access or control.  *See Doe v. New York City*, 709 F.2d 782, 783 (2d Cir. 1983) (holding that the law of the case "applies to issues that have been decided 'either expressly or by necessary implication'"); *see also Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174, 182 (2d Cir. 2019) ("When an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue.").

It is axiomatic, moreover, that a principal (like UBAE) that is unable to control an agent (like Clearstream) cannot as a matter of law be bound by the actions of the agent.  *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 522 (2d Cir. 2006) (principal's "control of the undertaking" an essential element of agency); *CutCo Indus. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (same) (cited by Plaintiffs); *Trahan v. Lazar*, 457 F. Supp. 3d 323, 357 (S.D.N.Y. 2020) ("***The***

---

[5]     Plaintiffs assume that New York agency law applies to this case even though the UBAE-Clearstream relationship originated and was managed in Luxembourg and Rome by those two financial institutions.  Solely for purposes of this motion to dismiss, UBAE will analyze Plaintiffs' agency theory of jurisdiction under New York law and preserves its argument that Luxembourg and/or Italian law applies to the question of agency.

*importance of control by the principal is paramount*.  There is no agency relationship where the alleged principal has no right of control over the alleged agent." (emphasis added)); *Daventree Republic of Azerbaijan*, 349 F. Supp. 2d 736, 763 (S.D.N.Y. 2004) (holding the plaintiffs failed to establish agency jurisdiction because the complaint failed to allege the out-of-state defendant directed, controlled, or requested New York activity or that the out-of-state defendant had knowledge of New York activity).

Plaintiffs nevertheless argue that UBAE supposedly directed the transfer of $1.68 billion into the Clearstream-created-and-controlled sundry blocked account.  Opp. 13.  The allegations and the evidence cited, however, do not support that conclusion.  The documents attached to the Vogel Declaration only show a transfer of funds.  *See* Vogel. Decl., Ex. 66.  And the allegations of the Amended Complaint fail to allege a single direction or communication from UBAE to Clearstream to transfer funds into the sundry blocked account to which UBAE admittedly had no access or control.  *See* Am. Compl., ¶¶ 126-27, 132-141.  That's because UBAE never directed or instructed Clearstream to do anything with respect to the sundry account.  Valfrè Decl., ¶ 6 ("Between July 2008 and October 2012, UBAE issued no written instruction or directive to Clearstream to take any action in New York or the United States with respect to the Markazi Luxembourg Assets. . . .  Thus, any actions after June/July 2008 regarding the Markazi Luxembourg Assets were unilaterally taken by Clearstream without direction or instruction from UBAE.").  Indeed, in June 2009, roughly a year after Clearstream unilaterally opened the sundry blocked account, Clearstream told UBAE that it had directed cash payments to that blocked account.  *See* Vogel Decl., Ex. 55.

As is custom in the international banking industry, UBAE never entered into any written agreement with Clearstream regarding the opening of the sundry account, which is the only

account that matters for jurisdiction purposes.  Valfrè Decl., ¶¶ 3, 6.  In its most basic, decades-old formulation, an agency relationship exists only if there is an agreement between the principal and agent setting forth the terms and conditions of that relationship.  *See Merrill Lynch v. Optibase*, 337 F.3d 125, 130 (2d Cir. 2003) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."); *Pascarella v. Sandals Resort*, 2020 WL 1048943, at *4 (S.D.N.Y. Mar. 4, 2020) (holding that the out-of-state defendant must be a "primary actor in the specific matter in question.").  "As such, any actions taken by Clearstream related to the [s]undry [a]ccount were taken by Clearstream and Clearstream alone without any input or direction from UBAE."  Valfrè Decl., ¶ 3.  Thus, there can be no specific personal jurisdiction over UBAE under an agency theory.  *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 442 (S.D.N.Y. 2008) ("[T]he alleged agent must have acted in the state for the benefit of, ***and with the knowledge and consent of the non-resident principal***." (emphasis added)).

## III.    THERE IS NO SPECIFIC PERSONAL JURISDICTION OVER UBAE UNDER A CONSPIRACY THEORY.

Plaintiffs' conspiracy jurisdiction theory fares no better.  The mere presence or independent acts of one alleged conspirator in the forum does not extend personal jurisdiction over all alleged co-conspirators.  *See Dixon v. Mack*, 507 F. Supp. 345, 349 (S.D.N.Y. 1980).  Rather, "a showing must be made that the alleged [co-conspirator] acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident [conspirator]."  *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981).

As stated above, UBAE never instructed or directed Clearstream to do anything in New York with respect to the sundry account—an account that Clearstream unilaterally created and

managed without any input from UBAE.[6]  *See* Point II, *supra*.  In addition, Plaintiffs have certified under oath that Clearstream's use of its U.S. correspondent account was for ***Bank Markazi's*** benefit, not UBAE's:  "Clearstream . . . used a correspondent account in the U.S. to collect US dollar payments of interest and return of principal on the Remaining Bonds ***for Markazi's*** ***benefit***.") (emphasis added); *see also* D.E. 263, at 17 (Plaintiffs admitting that Clearstream acted on behalf of and for Bank Markazi's benefit).  Thus, the Court should reject Plaintiffs' conspiracy theory of jurisdiction.

## CONCLUSION

For the foregoing reasons, and those set forth in its opening brief, UBAE respectfully requests that the Plaintiffs' claims against it be dismissed with prejudice for lack of personal jurisdiction.

Dated: October 27, 2020                          Respectfully submitted,

                                                 **COLELLA | ZEFUTIE LLC**

                                    By:    s/ *John J. Zefutie, Jr.*
                                           Ugo Colella
                                           John J. Zefutie, Jr.
                                           1300 I Street NW, Suite 400E
                                           Washington, DC 20005
                                           P: 202.920.0880
                                           F: 202.920.0894
                                           E: ucolella@czlaw.com
                                           -and-
                                           116 Village Boulevard, Suite 200
                                           Princeton, New Jersey 08540
                                           P: 609.551.9771
                                           F: 202.920.0894
                                           E: jzefutie@czlaw.com
                                           *Attorneys for Defendant*
                                           *Banca UBAE, S.p.A.*

---

[6]       Nor was there a corrupt agreement between UBAE and co-defendants Bank Markazi and Clearstream because UBAE never had any knowledge of any judgments against Iran in New York or the United States at the time Plaintiff claim UBAE engaged in wrongdoing.  Valfrè Decl., ¶ 8.