UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH D. PETERSON, et al., Plaintiffs, -against- ISLAMIC REPUBLIC OF IRAN, et al., Defendants. | 13-CV-09195 (LAP) OPINION AND ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

The Court is in receipt of Clearstream's October 22, 2026 letter advising that the Luxembourg Court of Appeal has once again postponed argument on Clearstream's appeal from the Luxembourg order prohibiting Clearstream from transferring the Assets described in the Court's Turnover Opinion to New York. (Dkt. 460 ("Oct. 22 Ltr.").)

The Court had previously abstained from entering judgment in this case in the hopes that Clearstream would obtain the blessing of the relevant Luxembourg judicial and regulatory bodies. However, because this marks the fourth time that Clearstream's appeal has been rescheduled, the Court believes it appropriate to enter final judgment at this time, thus ensuring that all parties can timely appeal while the Luxembourg proceedings are pending. For the reasons set forth below, the objections of Bank Markazi ("Markazi") to Plaintiffs' proposed partial final judgment (the "Partial Judgment," Dkt. 452-1) are OVERRULED, and the Court will

enter the Partial Judgment on terms to be submitted by Plaintiffs and Clearstream consistent with this Order. However, because the Luxembourg proceeding remains unresolved, the Court will automatically stay enforcement of the judgment pending any further appeals on the terms set out below.[1]

## BACKGROUND

### A. The Turnover Opinion and the Proposed Partial Judgment

The Court assumes familiarity with the history of this litigation, most recently recounted in its March 31, 2026 Opinion and Order. (Dkt. 409 (the "Turnover Opinion" or "Turnover Op.").)

Prior to the Turnover Opinion, the Court of Appeals had held that this Court lacks subject matter jurisdiction over Plaintiffs' turnover claim against Markazi and remanded for the Court to decide

[1] The Court has considered all submissions filed in support of or in opposition to the proposed Partial Judgment, including: Markazi's Renewed Objections to Plaintiffs' Proposed Turnover Judgment and Proposed Order Approving Qualified Settlement Fund, Dkt. 429 ("Markazi Obj."); UBAE's Memorandum of Law in Opposition to Plaintiffs' Proposed Implementing Orders, Dkt. 430 ("UBAE Obj."); Clearstream's Revised Statement and Limited Objection to Plaintiffs' Proposed Judgment, Dkt. 433 ("Clearstream Obj."), and the supporting Declaration of Benjamin Kaminetzky, Dkt. 434 ("Kaminetzky Decl."), including the April 23, 2026 memorandum of Clearstream's Luxembourg counsel, Arendt & Medernach S.A., Dkt. 434-3 ("Arendt Mem."); the letter of non-party JPMorgan Chase Bank, N.A., Dkt. 436 ("JPMorgan Ltr."); Plaintiffs' Response to Objections to Plaintiffs' Proposed Implementing Orders, Dkt. 439 ("Pls. Resp."); UBAE's Memorandum of Law in Response to the Objection of Clearstream Banking S.A., Dkt. 443 ("UBAE Resp."); Markazi's Reply to Clearstream's Objections to Proposed Turnover Judgment, Dkt. 446 ("Markazi Reply"); Clearstream's Reply Memorandum of Law in Support of Clearstream's Revised Statement and Limited Objection to Plaintiffs' Proposed Judgment, Dkt. 451 ("Clearstream Reply"); and the parties' June 22, 2026 joint letter identifying the issues that remain disputed, Dkt. 452 ("Joint Ltr."). The Court has also considered Clearstream's status updates dated July 22, August 3, and September 28, 2026, Dkts. 457-459 ("July 22 Ltr.," "Aug. 3 Ltr.," and "Sept. 28 Ltr."). Citations to "Partial J." are to the Partial Judgment, and "Tr." refers to the transcript of the June 25, 2026 argument, Dkt. 454.

under Rule 19 whether turnover could proceed through Clearstream in Markazi's absence. Peterson v. Bank Markazi, 121 F.4th 983, 996, 1011 (2d Cir. 2024), cert. denied sub nom. Clearstream Banking, S.A. v. Peterson, 145 S. Ct. 2819 (2025) ("Peterson 2024"). On remand, the Court denied Markazi's and Clearstream's Rule 12(b)(7) motions and granted Plaintiffs summary judgment on their claim for turnover of the $1.68 billion right to payment held in Clearstream's blocked sundry account 13675 in Luxembourg (the "Assets"). (Turnover Op. at 3-4, 22, 38.)

Following the Court's ruling, Plaintiffs submitted the proposed Partial Judgment and a proposed order establishing a qualified settlement fund ("QSF"). Markazi, Banca UBAE S.p.A. ("UBAE"), Clearstream, and non-party JPMorgan Chase Bank, N.A. ("JPMorgan") each objected to Plaintiffs' proposed judgment. The parties subsequently narrowed their disputes by joint letter, and the Court heard argument on June 25, 2026.

In general, Plaintiffs and Clearstream are aligned on the mechanics of the proposed judgment. Under the Partial Judgment proposed by Clearstream and Plaintiffs, the Assets will be transferred through Clearstream's correspondent account at JPMorgan into the QSF. (Partial J. ¶¶ 4-5.) Upon that transfer, and at the request of Clearstream and JPMorgan, the proposed Partial Judgment will discharge Clearstream and JPMorgan from all liability relating to the Assets and enjoin Markazi, UBAE, and

others from pursuing claims against Clearstream and JPMorgan relating to the Assets. (Id. ¶¶ 6-9, 15-17, 20; Clearstream Obj. at 2, 11; JPMorgan Ltr. at 5-6.)

In response, Markazi has objected that the Court lacks power to issue the discharge and antisuit provisions proposed by Plaintiffs and Clearstream because Markazi retains jurisdictional immunity under the Foreign Sovereign Immunities Act ("FSIA") and the Court lacks personal jurisdiction over it. (Markazi Obj. at 11-14; Markazi Reply at 2-8.) Markazi also renews various arguments that the Court rejected in the Turnover Opinion. (Markazi Obj. at 14-17.)

**B. The Luxembourg Proceeding**

Long before the Court issued its Turnover Opinion, Markazi sought to shield its frozen foreign reserves from victims of terrorism—including the judgment creditors in this litigation—who were zeroing in on Iranian assets held abroad. Once Markazi learned that its Luxembourg assets were in the crosshairs, Markazi preemptively filed suit against Clearstream in Luxembourg seeking to restrain Clearstream from transferring any of the Assets to the United States. Markazi's efforts to thwart enforcement, to date, have been remarkably successful. On April 30, 2021, the Luxembourg District Court prohibited Clearstream from complying with any order of this Court directing transfer of the Assets to the United

States unless that order is first recognized in Luxembourg. (Arendt Mem. ¶ 20.)

Clearstream, to its credit, appealed the Luxembourg injunction on June 18, 2021. (Id. ¶ 21.) For reasons that the Court can only imagine are peculiar to Luxembourg law, that appeal has not yet been resolved. Clearstream has steadily advised the Court of repeated delays in the Luxembourg appeal, which was initially set for June 16, 2026, adjourned to September 22, 2026 (Kaminetzky Decl. ¶ 3), again adjourned to October 7, 2026, because of internal organizational changes at the Court of Appeal (July 22 Ltr.), delayed to October 14, 2026, at the request of Markazi's counsel (Sept. 28 Ltr.), and was then calendared for November 9, 2026 (Oct. 22 Ltr.).

The Court has received no updates since. According to Clearstream's counsel, the Luxembourg Court of Appeal will typically issue a decision within two to three months after argument, which is in turn subject to further review by Luxembourg's highest court. (Tr. 24.) However, the repeated adjournments described above give reason to doubt that schedule.

Separately from the Luxembourg appeal, Clearstream must clear another hurdle in obtaining authorization from the applicable European Union regulators to transfer what are otherwise sanctioned assets. (Clearstream Obj. at 4; Kaminetzky Decl. ¶ 2; Tr. 7.) However, Clearstream has since advised that the Luxembourg

Minister of Finance did not act on Clearstream's application by the July 29, 2026 deadline, which under Luxembourg administrative law is deemed a denial. (Aug. 3 Ltr. at 1.) The Court understands that Clearstream may challenge that decision in the Luxembourg courts or renew its application on an alternative legal basis. (Id.) At present, however, the timetable for EU sanctions approval appears equally uncertain.

**DISCUSSION**

As the parties' joint letter reflects, Clearstream and Plaintiffs are generally aligned on the proposed mechanics of the transfer (Joint Ltr. at 2-5), although Clearstream has independently asked that the Court condition the judgment on approval in Luxembourg. Markazi, in turn, has raised several jurisdictional objections to the form of the judgment proposed by Plaintiffs.

With respect to Markazi, the Court rejects all such jurisdictional objections. Plaintiffs and Clearstream have correctly identified that the Court may issue the proposed judgment under New York law and the Terrorism Risk Insurance Act of 2002 ("TRIA"). As to Clearstream's request to condition judgment, the Court strikes a compromise. The Court will stay the judgment pending appeal, provided that Markazi and Clearstream each agree to any reasonable measures designed to avoid further delays

(including, if Plaintiffs request, a stipulation to expedite any appeals).[2]

**A. Markazi's Jurisdictional Objections**

**i. The Court of Appeals' Mandate Does Not Foreclose the Protective Provisions Requested By Clearstream**

Markazi contends that the Court of Appeals' holding that this Court lacks jurisdiction over Markazi forecloses any other basis for jurisdiction over it. (Markazi Reply at 4-5.) The mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court." United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001) (emphasis and internal quotation marks omitted); see Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 762 F.3d 165, 175 (2d Cir. 2014). But "the law of the case does not extend to issues an appellate court did not address." Sompo, 762 F.3d at 176 (internal quotation marks omitted).

Here, the Court of Appeals held that Section 8772 abrogates only the execution immunity of the Assets, not Markazi's jurisdictional immunity, and thus that this Court lacks subject matter jurisdiction over Plaintiffs' turnover claim against Markazi. See Peterson 2024, 121 F.4th at 996, 1011. However, the

[2] Because the Court resolves Markazi's objections on these grounds, the Court need not and does not reach Clearstream's alternative arguments that the FSIA's commercial activity exception supplies jurisdiction over Markazi or that Markazi's objections are barred by unclean hands. (See Clearstream Obj. at 16-19; Clearstream Reply at 10-14.)

provisions Markazi challenges adjudicate no turnover claim against Markazi. Rather, the proposed provisions merely protect the garnishee (Clearstream) and the judgment entered against it.

In addition, a close reading of the Court of Appeals' opinion indicates that the TRIA can, in fact, supply an alternate basis for jurisdiction over Markazi. In Peterson 2024, the Court of Appeals explained that TRIA was "presently inapplicable" because Executive Order 13599 blocks Iranian property only when it is in the United States or within the possession or control of a United States person, id. at 997 n.4 (emphasis added), implying that the TRIA may well apply at a later stage in this case. And the TRIA will plainly apply after the Assets arrive in New York, which, as the Court explains below, can be accomplished without jurisdiction over Markazi given that the Assets are held by Clearstream.

### ii. Clearstream's Requested Discharge Order Does Not Require In Personam Jurisdiction Over Markazi

Separately, Markazi argues that the Court cannot issue a discharge order shielding Clearstream from future claims brought by Markazi without in personam jurisdiction over Markazi. (Markazi Obj. at 11-12; Markazi Reply at 2-3.) For three reasons, the Court finds Markazi's argument to be meritless.

First, Markazi's argument is impossible to square with New York turnover procedure and the Court of Appeals' prior opinion.

The Court of Appeals has already held that the Court has personal jurisdiction over Clearstream such that Clearstream can be compelled to bring the Assets to New York and deliver them to the judgment creditors in this case. Peterson 2024, 121 F.4th at 996, 1002-07 ("It is therefore unnecessary for a court to exercise jurisdiction over a foreign sovereign to accomplish the turnover contemplated by Section 8772. This is because New York law, which governs the proceedings targeted by Section 8772, allows a court to order turnover of a judgment debtor's property by exercising jurisdiction only over a garnishee custodian of the property, like Clearstream."). And that same New York law already expressly provides that any garnishee who delivers property in these circumstances—as Clearstream is poised to do here—automatically receives a discharge order:

> Discharge of garnishee's obligation. A person who, pursuant to an execution or order, pays or delivers, to the judgment creditor or a sheriff or receiver, money or other personal property in which a judgment debtor has or will have an interest, or so pays a debt he owes the judgment debtor, is discharged from his obligation to the judgment debtor to the extent of the payment or delivery.

NY CPLR 5209 (emphasis added); see also Jonas v. Citibank, N.A., 414 F. Supp. 2d 411, 417 (S.D.N.Y. 2006) (explaining that CPLR 5209 has been understood "to bar a judgment debtor's claim made against a garnishee for payment of a debt or delivery of property pursuant to an execution"). Without a discharge order, the

judgment debtor would be free to pursue the garnishee to reclaim the assets in a more favorable jurisdiction, thus ensuring endless litigation and penalizing garnishees for good-faith compliance with turnover orders. Here, the Court of Appeals has already recognized that this Court may order turnover "by exercising jurisdiction only over a garnishee custodian of the property, like Clearstream," Peterson 2024, 121 F.4th at 996, consistent with settled New York law, Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533, 541 (2009). That jurisdiction over Clearstream must cut both ways: if Clearstream is subject to a turnover order under New York law, then it is also entitled to a discharge order that CPLR § 5209 provides. Markazi's efforts to divorce the two are unavailing.

Second, to the extent that it is even relevant to the inquiry here, the Court agrees with Clearstream that it has in rem jurisdiction to issue the discharge.[3] The discharge at issue will operate on the Assets, over which the Court currently exercises constructive control and will have actual control when the Assets arrive in New York. At that point, "[a] judgment in rem affects the interests of all persons in designated property." Hanson v.

[3] Markazi's objection erroneously implies that, absent personal jurisdiction over Markazi, the Court's authority to issue the discharge must rest on in rem jurisdiction over the Assets. (See Markazi Reply at 2-3.) But the New York Court of Appeals has rejected that very argument. Koehler, 12 N.Y.3d at 540. So long as the court has personal jurisdiction over the garnishee (here, Clearstream) in post-judgment enforcement, "in rem jurisdiction is not required." Id. at 541. The Court's in rem jurisdiction, discussed below, is thus an alternative ground for jurisdiction rather than a required one.

Denckla, 357 U.S. 235, 246 n.12 (1958). And where, as here, a court has in rem jurisdiction over an asset, the court "ordinarily has the power to decide the case insofar as it affects those rights [in the property at issue], irrespective of whether there are sufficient contacts to confer on the court in personam jurisdiction over the party," meaning that any owner of the property who declines to defend the action "will be bound by the outcome of the litigation as to his or her interest in the property in question." Johnston v. Arbitrium (Cayman Is.) Handels AG, 198 F.3d 342, 348–49 (2d Cir. 1999). Thus, even if the Court lacks jurisdiction over Markazi, it can nonetheless bind Markazi through a discharge order that operates on the Assets.[4]

Markazi responds that the Assets are currently in Luxembourg and that a court cannot create in rem jurisdiction where none otherwise exists. (Markazi Reply at 2-3.) That argument is a red herring, however, because the Court does not require in rem jurisdiction to compel Clearstream to deliver the Assets to New York. On the contrary, the Court will be relying on the same in personam jurisdiction over Clearstream that the Court of Appeals has endorsed and which Congress has expressly contemplated through Section 8772. But even if the Court did require in rem jurisdiction at all times in this lawsuit, so-called "constructive

[4] Independently, the Court will have jurisdiction over Markazi through the TRIA after the Assets have arrived in New York.

control of the res" at the onset of the lawsuit can supply in rem jurisdiction, even if the asset is held outside of the Court's geographic jurisdiction. See Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 87 (1992) (in rem forfeiture action). Moreover, a court may exercise constructive control over funds held abroad. See United States v. All Funds on Deposit in Any Accts. Maintained in Names of Meza or De Castro, 63 F.3d 148, 153–54 (2d Cir. 1995) (funds in London restrained by British authorities at the request of the United States). Here, Plaintiffs served restraining notices on Clearstream in this very District (Turnover Op. at 10–11), and Clearstream has been subject to this Court's personal jurisdiction throughout this litigation, see Peterson 2024, 121 F.4th at 1002-07. Accordingly, the Court would nonetheless have constructive control over the Assets for in rem purposes.

Finally, Markazi's constitutional arguments are unavailing. As to in rem jurisdiction, due process gives an absent claimant the right to decline to appear, not the right to avoid being bound as to its interest in the property. Johnston, 198 F.3d at 349. Moreover, in commenting on analogous statutes directed at foreign terrorist groups, the Supreme Court has observed that the Fifth Amendment "permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign

authority." Fuld v. Pal. Liberation Org., 606 U.S. 1, 16 (2025).[5] Thus, the Court discerns no constitutional violations in the judgment proposed by Plaintiffs and Clearstream.

Accordingly, Markazi's objection to the discharge provisions of the Partial Judgment is OVERRULED.

### iii. The TRIA Supplies An Alternative Basis For Jurisdiction Over Markazi After the Assets Arrive in New York

Nor do Markazi's objections to the proposed antisuit injunction hold water. Federal courts have "inherent power to protect their own judgments from being undermined or vitiated by vexatious litigation in other jurisdictions." Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 124 (2d Cir. 2007) (emphasis omitted). Indeed, the Court of Appeals relied on that power in affirming a similar antisuit injunction entered against Markazi in the related action concerning assets held at Citibank, although Markazi had consented to its terms there. Peterson v. Islamic Republic of Iran, 758 F.3d 185, 193 (2d Cir. 2014) (holding that Markazi's challenge did "not involve jurisdictional concerns"), aff'd sub nom. Bank Markazi v. Peterson, 578 U.S. 212 (2016). The All Writs Act

[5] Markazi's reliance on Republic of Philippines v. Pimentel, 553 U.S. 851, 870-71 (2008), is misplaced. (Markazi Reply at 2.) Pimentel addressed whether an action could proceed in a sovereign's absence under Rule 19(b), a question the Court has already resolved. (Turnover Op. at 14-22.) And Pimentel itself recognized that "[t]he balance of equities may change in due course." 553 U.S. at 873.

likewise authorizes writs "necessary or appropriate in aid of" the Court's jurisdiction, 28 U.S.C. § 1651(a), and that power reaches persons "in a position to frustrate the implementation of a court order," United States v. N.Y. Tel. Co., 434 U.S. 159, 174 (1977).

To be sure, none of these powers supplies jurisdiction over a foreign sovereign. See Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 33 (2002) (holding that the All Writs Act is not an independent source of jurisdiction). But the TRIA will supply that jurisdiction at the moment the injunction takes effect. The TRIA provides that, "[n]otwithstanding any other provision of law," the blocked assets of a terrorist party, "including the blocked assets of any agency or instrumentality of that terrorist party," are subject to execution to satisfy a terrorism judgment. Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610 note). On that score, the Court of Appeals has held that § 201(a) is "an independent grant of jurisdiction over the agencies and instrumentalities" of a terrorist party, Weinstein v. Islamic Republic of Iran, 609 F.3d 43, 49 (2d Cir. 2010), and confers "subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment," id. at 50. Furthermore, an entity "owned, controlled, or directed by the terrorist party" is an agency or instrumentality under the TRIA.

Kirschenbaum v. 650 Fifth Ave. & Related Props., 830 F.3d 107, 135 (2d Cir. 2016), abrogated in part on other grounds by Rubin v. Islamic Republic of Iran, 583 U.S. 202 (2018). Markazi, which describes itself as "wholly owned by the Iranian government" (Markazi Obj. at 11), plainly qualifies as such an agency or instrumentality. And once in New York, the Assets will indisputably be "blocked assets" that confer jurisdiction under the TRIA, because Executive Order 13599 blocks property of the Central Bank of Iran that comes within the United States. Exec. Order No. 13599, § 1(a), 77 Fed. Reg. 6659, 6659 (Feb. 5, 2012).

Markazi's remaining efforts to resist application of the TRIA also fail. First, it is of no import that the TRIA does not explicitly mention discharges or antisuit injunctions. (See Markazi Reply at 5.) The TRIA authorizes jurisdiction over the enforcement proceeding, from which the Court's power to protect any resulting judgment necessarily follows. Second, Markazi argues that 28 U.S.C. § 1330(b) confines personal jurisdiction over a foreign state to claims within §§ 1605-1607, which do not include TRIA. (Markazi Reply at 5-6.) That is merely a recycled version of the "placement" argument that Weinstein rejected in holding that "the plain language of the [TRIA] statute cannot be overcome by its placement in the statutory scheme." 609 F.3d at 49. The TRIA's "notwithstanding" clause must be read "to supersede all other laws." Id. at 53 (quoting Cisneros v. Alpine Ridge Grp.,

508 U.S. 10, 18 (1993)). The remaining constitutional arguments Markazi invokes are meritless for the reasons discussed above.

Furthermore, Clearstream's requested antisuit injunction also satisfies the test the Court of Appeals applies to injunctions against foreign litigation, which requires that the parties be the same in both matters and that resolution of the case before the enjoining court be dispositive of the action to be enjoined. See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004). Markazi and Clearstream are parties in this action and in Luxembourg. And this case resolves the claims to be enjoined regarding the Assets. Certainly, Markazi's continued pursuit of those claims in foreign courts would frustrate the policy Congress expressed in Section 8772 and threaten this Court's judgment.

To the extent that the Court's antisuit injunction may conflict with Markazi's rights under Luxembourg law, where a court has already reached judgment, "considerations of comity have diminished force." Paramedics, 369 F.3d at 655. In any event, Congress has directed that turnover proceed "without regard to concerns relating to international comity," 22 U.S.C. § 8772(a)(1), which should also extend to the discharge order and antisuit injunction necessary to accomplish turnover.

Finally, because the injunction will take effect only upon transfer of the Assets to New York, which the Court will stay

pending the outcome of proceedings in the Court of Appeals and in Luxembourg, nothing in this Order or the Partial Judgment restrains any party from litigating the appeal now pending before the Luxembourg Court of Appeal. Accordingly, Markazi's objection to the antisuit provisions of the Partial Judgment is OVERRULED.

**B. The Court Cannot Condition the Partial Judgment on Approval in Luxembourg**

As the chips currently fall, Clearstream faces an obvious conflict between this Court's orders and those of Luxembourg. If Clearstream transfers the Assets pursuant to this Court's order, it will violate the Luxembourg injunction. If Clearstream refuses to do so, it will violate this Court's turnover order. In the normal case, the Court would undertake a comity analysis and determine how best to accommodate the apparently conflicting judgments. This, however, is no such normal case. Through Section 8772, Congress has mandated that the Assets at issue "shall be subject to execution or attachment . . . without regard to concerns relating to international comity." 22 U.S.C. § 8772(a)(1). Thus, Section 8772 does not permit the Court to condition the Partial Judgment on recognition in Luxembourg or on an EU sanctions authorization in the way that Clearstream requests. (Clearstream Obj. at 4-8; Tr. 19-22; Joint Ltr. at 2.)

To date, the Court has sought to avoid creating an unnecessary conflict by allowing Clearstream time to obtain the blessing of

European and Luxembourg judicial and regulatory authorities. After nearly seven months of inaction from those bodies, however, the Court concludes that it is unfair to Plaintiffs to delay judgment any longer. The simple fact is that the Luxembourg appeal, at least as represented by Clearstream, has now dragged on for five years, and the EU regulatory authorities appear to be no closer to authorizing Clearstream to transfer the Assets. Indeed, the Court is particularly concerned that at least some of these delays appear attributable to Markazi. Delaying judgment indefinitely would incentivize Markazi to prolong what is already a Kafkaesque bureaucratic nightmare for Plaintiffs—and all while the number of living victims and surviving families from the 1983 bombings steadily dwindles. For that reason, the Court deems it appropriate to enter a stayed final judgment with the sincere hope that Luxembourg and EU authorities will permit Clearstream to comply with the order.

Those European authorities should know that the Court does not take this decision lightly. In a normal case, the Court would be deeply sensitive to the concerns of comity and risk of conflicting judgments that are threatened here. And this Court has great reverence for the centuries-old civil law of the "old and famous States" who have shaped the Law of Nations at the heart

of our transatlantic alliance.[6] Thus, the Court understands the Luxembourg court's reluctance to authorize a turnover of sovereign assets that may not have precedent in customary international law, even as a growing chorus of European policymakers have identified arguments to the contrary.[7] And as for the EU sanctions at issue, the irony is not lost on the Court that those sanctions were imposed at the request of the United States in the first place. (See Tr. 7-9.)

At the same time, the Court would hope its continental counterparts will appreciate that, in this instance, the Court's hands would appear to be tied by Congress and Section 8772's abrogation of traditional doctrines of comity. Barring some diplomatic solution, this Court will have no discretion to spare Clearstream from the consequences of the law that Congress has created. As the Court of Appeals previously recognized, Clearstream assumed the risk of exactly this scenario when it chose to conduct business in New York, as "[t]he possibility that it could be subject to competing suits in multiple countries is a risk inherent in this type of international financial arrangement." Peterson 2024, 121 F.4th at 1007. Having

---

[6] Winston Churchill, Speech Before the House of Commons (June 4, 1940), in 361 Parl. Deb. H.C. (5th ser.) (1940) col. 796.

[7] See, e.g., Philippa Webb, European Parliamentary Research Service, Legal Options for Confiscation of Russian State Assets to Support the Reconstruction of Ukraine (Feb. 2024), https://www.europarl.europa.eu/RegData/etudes/STUD/2024/759602/EPRS_STU(2024)759602_EN.pdf.

"purposefully availed itself of the laws of New York, it would be unfair to allow it to evade jurisdiction in the state simply because it could be subject to double liability, a risk that is assumed under well-established principles of New York law." Id. Thus, it will fall on Luxembourg and the European Union to authorize transfer of the Assets in order to comply with U.S. law and avoid the looming prospect of double liability.

Accordingly, Clearstream's requests to condition the Partial Judgment on recognition in Luxembourg or on an EU sanctions authorization are DENIED.

### C. Enforcement of the Partial Judgment Is Stayed Pending Appeal or Approval of Transfer

The Court understands that Clearstream will wish to appeal the denial of its request to condition transfer on recognition in Luxembourg and an EU sanctions authorization. That is no doubt a difficult question, and the Court intends that Clearstream should be able to present it to the Court of Appeals. Therefore, instead of conditioning judgment, the Court will enter the Partial Judgment and stay its enforcement, so that the Court of Appeals may decide whether the judgment should be enforced notwithstanding the Luxembourg order and the delay in permitting enforcement.

Under its inherent power to stay proceedings and the traditional factors considered, see Nken v. Holder, 556 U.S. 418,

434 (2009), the Court is inclined to stay enforcement through all appeals. Absent a stay, Clearstream would have to choose between this Court's judgment and the Luxembourg order, and Clearstream and its directors and employees could face liability in Luxembourg. (See Arendt Mem. ¶ 20.) A stay, by contrast, costs Plaintiffs little, since the Assets would not be distributed pending appeal regardless of where they are held. (Tr. 24-25.) The Court likewise stayed its 2023 turnover ruling pending the last appeal. (See Dkt. 347 at 37; Dkt. 350.)

At the same time, the Court's stay will not be without conditions. The Court expects that Clearstream and Markazi will agree to reasonable measures requested by Plaintiffs to mitigate the prejudice of the stay, such as by agreeing to expedite the appeal if Plaintiffs so request. Similarly, the Court expects that Clearstream will pursue all measures possible to expedite its appeals in Luxembourg regarding the injunction and sanctions authorization. If Clearstream fails to do so, the Court will entertain a request from Plaintiffs to modify or dissolve the stay.

Accordingly, enforcement of the Partial Judgment is STAYED on the terms set out below.

## CONCLUSION

Naturally, the Court sincerely hopes that its transatlantic counterparts will permit Clearstream to comply with this Court's

order and deliver the sanctioned Assets to New York. At this stage, however, the Court cannot justify postponing entry of judgment given the prejudice it would inflict on the aging victims of the 1983 bombings. For the foregoing reasons, Markazi's objections to the Partial Judgment are OVERRULED, and Clearstream's request to condition entry of final judgment on European approval is DENIED.[8] Within seven days of this Order, Clearstream and Plaintiffs shall confer and file (i) a proposed final judgment consistent with this Order that incorporates any revisions that Clearstream and Plaintiffs require; and (ii) a proposed stipulation setting out the conditions for a stay pending appeal, including any expedited appeal schedules to the extent they accord with the Court of Appeals' procedure.[9]

If the parties cannot agree, they shall so advise the Court by joint letter and the stay shall remain in effect until the Court rules on that letter.

[8] To the extent that UBAE has raised objections, the Court overrules them for the same reasons articulated above.

[9] The Court expresses no view on how an expedited appeal would accord with the Court of Appeals' request that any forthcoming appeal be assigned to the same panel of judges that decided Peterson 2024.

The Clerk of Court shall close Dkt. 430.

**SO ORDERED.**

Dated: New York, New York
November 13, 2026



______________________________
LORETTA A. PRESKA
Senior United States District Judge